1  Jefferson A. McGee
2  8105 Cottonmill Circle
   Sacramento, CA 95828
3  (916) 247-2413
   Aros.mcgee@gmail.com



FILED

JAN _ 2 2024

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
          DEPUTY CLERK



7  ### IN THE UNITED SATES DISTRICT COURT

8  ### FOR THE EASTERN DISTRICT OF CALIFORNIA

9  ### SACRAMENTO DIVISION

10  JEFFERSON A. McGEE,                      Case No
        Plaintiff,
11                                          2:24 - CV 0 0 1 2 - TLN AC PS
12  v.                                      COMPLAINT AND DEMAND FOR JURY
                                            TRIAL FOR VIOLATION OF TITLE 42
13  THE STATE OF CALIFORNIA,                U.S.C. §§ 1981, 1982, 1983, 1985, 1986,
    THE GOVERNOR OF CALIFORNIA,             2000a, and 2000d; TITLE 18 U.S.C. §§
14  ARNOLD SCHWARZENEGGER,                  1961 and 1962; AND CALIFORNIA CIVIL
    GRAY DAVIS, PETE WILSON,                CODE §§ 51 and 52.
15  EDMOND BROWN, THE ATTORNEY
    GENERAL OF CALIFORNIA,
16  BILL LOCKYEAR, DANIEL LUNGREN,
    JERRY MEYER, INVESTIGATOR FREITAS,
17  INVESTIGATOR SUTTON, REBA CHASTAIN,
    DEAN LEAUDER, DANIELA PETOUKA,
18  BOSTON WHITLEY, DIANA FOUTS,
    CALIFORNIA STATE SENATE, CALIFORNIA
19  STATE ASSEMBLY, DONALD PERATA,
    FABIAN NUNEZ, DARRELL STEINBERG,
20  JACOB APPLESMITH, STACEY EURIE,
    TAMARA MORGAN, GERALDINE REYES,
21  BARBRA OSBORNE, PENNY SANDBORN,
    NANCY GUTIERREZ, GORDON PIPER,
22  THE COUNTY OF SACRAMENTO, JAN SCULLY,
    AL LOCHER, KELLEY CHANDLER, JOSEPH
23  ALEXANDER, CURTIS FIORINI, DEBORAH
    LOBRE, PAULINO DURAN, SHELIA RAMOS,
24  KENNETH ROSENFELD, GLENN POWELL,
    ROBERT DENHAM, CHRISTINE HESS, GARY
25  CHERIS, RICHARD TWILLING, HUZAR, DEPUTY
    ATKINS, CRAIG GONCALVES, NICK GONCALVES,
26  JEFFERY NELSON, DEPUTY PAPINEAU,
    DEPUTY KARVONEN, GEYSER, RANDAZZO,
27  LEARY, ROBERT RYAN, ANTHONY WRIGHT,
    THE CITY OF CITRUS HEIGHTS, JULIE HOWARD,
28  JOHN HILDEBRAND,LONGYEAR O'DEA & LAVRA

McGEE COMPLAINT 2023                                                    I

LIST OF DEFENDANTS

THE STATE OF CALIFORNIA,
THE GOVERNOR OF CALIFORNIA,
ARNOLD SCHWARZENEGGER,
GRAY DAVIS, PETE WILSON,
EDMOND BROWN, THE ATTORNEY
GENERAL OF CALIFORNIA,
BILL LOCKYEAR, DANIEL LUNGREN,
JERRY MEYER, INVESTIGATOR FREITAS,
INVESTIGATOR SUTTON, REBA CHASTAIN,
DEAN LEAUDER, DANIELA PETOUKA,
BOSTON WHITLEY, DIANA FOUTS,
CALIFORNIA STATE SENATE, CALIFORNIA
STATE ASSEMBLY, DONALD PERATA,
FABIAN NUNEZ, DARRELL STEINBERG,
JACOB APPLESMITH, STACEY EURIE,
TAMARA MORGAN, GERALDINE REYES,
BARBRA OSBORNE, PENNY SANDBORN,
NANCY GUTIERREZ, GORDON PIPER,
THE COUNTY OF SACRAMENTO, JAN SCULLY,
AL LOCHER, KELLEY CHANDLER, JOSEPH
ALEXANDER, CURTIS FIORINI, DEBORAH
LOBRE, PAULINO DURAN, SHELIA RAMOS,
KENNETH ROSENFELD, GLENN POWELL,
ROBERT DENHAM, CHRISTINE HESS, GARY
CHERIS, RICHARD TWILLING, HUZAR, DEPUTY
ATKINS, CRAIG GONCALVES, NICK GONCALVES,
JEFFERY NELSON, DEPUTY PAPINEAU,
DEPUTY KARVONEN, GEYSER, RANDAZZO,
LEARY, ROBERT RYAN, ANTHONY WRIGHT,
THE CITY OF CITRUS HEIGHTS, JULIE HOWARD,
JOHN HILDEBRAND, LONGYEAR O'DEA & LAVRA
LLP, JOHN LAVRA, ALISON SANDMAN, RANDOLFF
CREAGER & CHALFANT LLP, FLORIN LITTLE LEAGUE
BASEBALL INC., HARVEY WOODS, AL SMITH,
MICHELE MILES, SILVIA ROBERTS, EILEEN MAZA,
GORDON STEVENS, BILLY MILES, ANNE
JOHNSON, LORIE WHITMAN, DENNIS O'FLAHERTY,
ROBERT BARTOSH, MARTIN ANDREWS, MIKE
CROSBY, TONY FLINT, ANTHONY LEUDERER,
TRACY CONTRERAS, CHUCK KING, LEE THOMAS,
ELK GROVE UNIFIED SCHOOL DISTRICT, OFFICER
JONES, OFFICER LOZANO, ELK GROVE UNIFIED
SCHOOL DISTRICT POLICE DEPARTMENT,
THE CITY OF ELK GROVE, ED FLINT, JAMES
COOPER, SOPHIA SHERMAN, DAN BRIGGS,
RICK SOARES, MIKE LEARY, DETECTIVE
REBECA ROBERTS, LT. BRAVOS, AUTO FINANCE,
AL STOLER, BEST RECOVERY, MATHEW ANDERSON,
THE CITY OF SACRAMENTO POLICE DEPARTMENT,
HEATHER FARGO, ROBBIE WATERS, BONNIE

PANNELL, LAURA HAMMOND, ROBERT FONG,
ARTURO VENEGAS, ALBERT, NAJAERA, EILEEN
TEICHERT, JOSEPH RUSSELL, DON CASHMERE,
ROBERT THOMAS, KEVIN JOHNSON, OFFICER BAILEY,
OFFICER PEACE, JAMES STINSON, DOUBLETREE/HILTON,
MMDD SACRAMENTO PROJECT, MEL DISALVO,
JOHN LAWRENCE TINER, WILLIE RICHARDSON,
JOHN BENEJAMIN TINER, EDWARD BRENNER,
THOMAS HOGAN, ELLEN CLAIRE ARABIAN,
JERRY DUNCAN, GURNEE AND DANIELS LLP,
SACRAMENTO DELTA PROPERTY MANAGEMENT INC.,
GARY L. LINK, LAW OFFICES OF GARY L. LINK,
THOMAS MCGEE, MARK MCGEE, RICHARD McGEE JR,
DETECTIVE MARK BEAROR, DEPUTY KELLER,
DEPUTY KAWAMOTO, DEPUTY K. BALL, DEPUTY
REBECCA ROBERT, LT. BRAVOS, FORD MOTOR CREDIT,
RAY TRETHEWAY, KEVIN JOHNSON,
ANGELIQUE ASHBY, ALLEN WARREN, STEVE HANSEN,
DARRELL FONG, STEVE COHEN, SANDY SHEEDY,
DAVE JONES, GAYLORD MANN, JULIE HOWARD,
ROBERT CHALFANT, DON NOTTOLI; SUSAN PETERS;
JIMMIE YEE; ILLA COLLINS; RODGER DICKERSON,
SACRAMENTO BOARD OF SUPERVISORS, BRIDGEPORT
HOMEOWNERS ASSOCIATION, ASSOCIA OF NORTHERN
CALIFORNIA, SACRAMENTO ELITE SECURITY, GARY
SWARTHOUT, SEAN SWARTHOUT, AIRPORT LITTLE
LEAGUE BASEBALL INC., ENRIQUE HERNANDEZ,
DOES 1 THOUGH DOES 7, LEXINGTON INSURANCE
COMPANY, THE CITY OF SACRAMENTO, SUSANA
ALCALA WOODS, CHANCE LOUIS TRIMM, HOWARD CHAN,
CAITY MAPLES, KARINA TALAMONTES, SEAN LOLEE,
ERIC GURRERA, RICK JENNINGS, WILSON ESLER MOSKOWITZ
ELDERMAN & DICKER LLP, ANDREW STEWART,
MICHELLE DEMIAO, AND BENSON GARRETT

1   LLP, JOHN LAVRA,ALISON SANDMAN, RANDOLFF
    CREAGER & CHALFANT LLP, FLORIN LITTLE LEAGUE
2   BASEBALL INC., HARVEY WOODS, AL SMITH,
    MICHELE MILES, SILVIA ROBERTS, EILEEN MAZA,
3   GORDON STEVENS, BILLY MILES, ANNE
    JOHNSON, LORIE WHITMAN, DENNIS O'FLAHERTY,
4   ROBERT BARTOSH, MARTIN ANDREWS, MIKE
    CROSBY, TONY FLINT, ANTHONY LEUDERER,
5   TRACY CONTRERAS, CHUCK KING, LEE THOMAS,
    ELK GROVE UNIFIED SCHOOL DISTRICT, OFFICER
6   JONES, OFFICER LOZANO, ELK GROVE UNIFIED
    SCHOOL DISTRICT POLICE DEPARTMENT,
7   THE CITY OF ELK GROVE, ED FLINT, JAMES
    COOPER, SOPHIA SHERMAN, DAN BRIGGS,
8   RICK SOARES, MIKE LEARY, DETECTIVE
    REBECA ROBERTS, LT. BRAVOS, AUTO FINANCE,
9   AL STOLER, BEST RECOVERY, MATHEW ANDERSON,
    THE CITY OF SACRAMENTO POLICE DEPARTMENT,
10  HEATHER FARGO, ROBBIE WATERS, BONNIE
    PANNELL, LAURA HAMMOND, ROBERT FONG,
11  ARTURO VENEGAS, ALBERT, NAJAERA, EILEEN
    TEICHERT, JOSEPH RUSSELL, DON CASHMERE,
12  ROBERT THOMAS, KEVIN JOHNSON, OFFICER BAILEY,
    OFFICER PEACE, JAMES STINSON, DOUBLETREE/HILTON,
13  MMDD SACRAMENTO PROJECT, MEL DISALVO,
    JOHN LAWRENCE TINER, WILLIE RICHARDSON,
14  JOHN BENEJAMIN TINER, EDWARD BRENNER,
    THOMAS HOGAN, ELLEN CLAIRE ARABIAN,
15  JERRY DUNCAN, GURNEE AND DANIELS LLP,
    SACRAMENTO DELTA PROPERTY MANAGEMENT INC.,
16  GARY L. LINK, LAW OFFICES OF GARY L. LINK,
    THOMAS MCGEE, MARK MCGEE, RICHARD McGEE JR,
17  DETECTIVE MARK BEAROR, DEPUTY KELLER,
    DEPUTY KAWAMOTO, DEPUTY K. BALL, DEPUTY
18  REBECCA ROBERT, LT. BRAVOS, FORD MOTOR CREDIT,
    RAY TRETHEWAY, KEVIN JOHNSON,
19  ANGELIQUE ASHBY, ALLEN WARREN, STEVE HANSEN,
    DARRELL FONG, STEVE COHEN, SANDY SHEEDY,
20  DAVE JONES, GAYLORD MANN, JULIE HOWARD,
    ROBERT CHALFANT, DON NOTTOLI; SUSAN PETERS;
21  JIMMIE YEE; ILLA COLLINS; RODGER DICKERSON,
    SACRAMENTO BOARD OF SUPERVISORS, BRIDGEPORT
22  HOMEOWNERS ASSOCIATION, ASSOCIA OF NORTHERN
    CALIFORNIA, SACRAMENTO ELITE SECURITY, GARY
23  SWARTHOUT, SEAN SWARTHOUT, AIRPORT LITTLE
    LEAGUE BASEBALL INC., ENRIQUE HERNANDEZ,
24  DOES 1 THOUGH DOES 7, LEXINGTON INSURANCE
    COMPANY, THE CITY OF SACRAMENTO, SUSANA
25  ALCALA WOODS, CHANCE LOUIS TRIMM, HOWARD CHAN,
    CAITY MAPLES, KARINA TALAMONTES, SEAN LOLEE,
26  ERIC GURRERA, RICK JENNINGS,WILSON ESLER MOSKOWITZ
    ELDERMAN & DICKER LLP, ANDREW STEWART,
27  MICHELLE DEMIAO, AND BENSON GARRETT
    _____/

28

McGEE'S COMPLAINT                                                II

1

**TABLE OF CONTENTS**

2

INTRODUCTION………………………………………………………………………...1

PARTIES………………………………………………………………………………….4

STATEMENT OF JURISDICTION AND VENUE………………………………………16

HISTORY OF THE CONSPIRACY ……………………………………………………17

ALLEGATIONS RELATING TO LITTLE LEAGUE DEFENDANTS…………………..24

INJUNCTION……………………………………………………………………………56

    a.  Plaintiff is Likely to Prevail on the Merits of His Claims…………………………56

    b.  Plaintiff will Suffer Irreparable Harm if the Temporary Restraining Order or Preliminary

        Injunction is not Granted………………………………………………………57

    c.  The State Defendants, the County Defendants, the City of Sacramento Defendants and

        the MMDD Defendants…………………………………………………………..62

    d.   The Balance of Equities Tips in Plaintiff's Favor…………………………………68

    e.   Public importance………………………………………………………………71

DAMAGES………………………………………………………………………………72

CAUSE OF ACTIONS…………………………………………………………………...73

    FIRST CAUSE OF ACTION………………………………………………………73

    SECOND CAUSE OF ACTION……………………………………………………78

    THIRD CAUSE OF ACTION………………………………………………………81

    FOURTH CAUSE OF ACTION……………………………………………………84

    FIFTH CAUSE OF ACTION………………………………………………………86

    SIXTH CAUSE OF ACTION………………………………………………………92

    SEVENTH CAUSE OF ACTION…………………………………………………94

    EIGHTH CAUSE OF ………………………………………………………………96

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

NINTH CAUSE OF ACTION.......................................................................99

TENTH CAUSE OF ACTION....................................................................101

ELEVENTH CAUSE OF ACTION............................................................104

TWELFTH CAUSE OF ACTION..............................................................106

THIRTEENTH CAUSE OF ACTION.........................................................127

INTIMIDATION AND RETALIATION AGAINST PLAINTIFF FOR SEEKING TO SECURE

PLAINTIFF'S RIGHTS.................................................................................130

PUNITIVE DAMAGES...............................................................................131

PRAYER.....................................................................................................131

VERIFICATION.............................................................................................V

**VERIFIED COMPLAINT OF JEFFERSON A. McGEE**

**INTRODUCTION**

Plaintiff alleges:

1.  State of California (the State), County of Sacramento (the County), City of Sacramento (the City), City of Elk Grove (Elk Grove), City of Citrus Heights (Citrus Heights), Elk Grove Unified School District (EGUSD), Elk Grove Unified School District Police Department (EGUSD) Southgate Recreation and Park District (SGRPD), their officers, legislative bodies, political subdivisions, municipalities, and agencies have adopted, implemented, maintained, promulgated, and executed a Policy of Discriminating Against African Americans on the Grounds of their Race in Law Enforcement Programs and Activities (the Policy). Defendants are executing the Policy while using programs and activities receiving financial assistance from the United States Department of Justice (DOJ). From December 1993 until the present EGUSD and each Defendant listed in this Complaint have been engaged in a vast racially motivated conspiracy to deprive Plaintiff and others of their rights secured by the Fourteenth Amendment to the United States Constitution (Fourteenth Amendment) Title 42 U.S.C. §§1981, 1982, 2000a, 2000d, and Ca. Civ. Code §51,(civil rights) on the grounds of their race and color and solely on the account they are African American (the racially motivated conspiracy), in violation of Title 42 U.S.C. §§1983, 1985, 1986, Title 18 U.S.C. §§ 1961 through 1968, and Cal. Civ. Code §§ 51 and 52, causing Plaintiff to lose income.

2.  In furtherance of "the racially motivated conspiracy" set out above Airport Little League Baseball Inc. (APLL); Enrique Hernandez (Hernandez); DOES 1 through DOES 7; the Law Offices of Wislon Esler Moskowitz Edelman & Dicker LLP (WEMED); attorney Ian Stewart; attorney Michelle DiMaio; attorney Garrett Benson; Lexington Insurance Company (LIC);

Little League Baseball Inc. (LLBB) (hereinafter referred to collecti vely as the Little League Defendants); City of Sacramento (the City); Howard Chan (Chan);  Susana Alcala Woods; Chance Trimm, Matthew Day; Caity Maple, Karina Talamantes, Lisa Kaplan, Sean Loloee, Eric Guerra, Rick Jenning DOES 14; (hereinafter referred to collectively as the City Defendants) conspired to deprive Plaintiff and other African Americans of the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of Little League Baseball Inc., Airport Little League Baseball Inc., and the sports arena owned by the City located at 6395 Hogan Drive Sacramento, California 95822 (6395 Hogan Drive) on the grounds of their race and color and solely on account that they are African American.

3.      On October 4, 2021, Plaintiff notified the City Defendants that the Little League Defendants and others were using property owned by the City to deprive Plaintiff and his family of their civil rights. In furtherance of "the racially motivated conspiracy" set out above, the City Defendants refused and neglected to prevent the Little League Defendants from using property owned by the City to deprive Plaintiff of his civil rights, and intimidated and retaliated against Plaintiff because Plaintiff had taken action and participated in actions against the City in the United States District Court for the Eastern District of California in the cases of *McGee v. State* No. 09-cv-0740-GED-EFD-PS Cal. Dec. 7, 2010 *McGee v. California* 2:14-cv-0823-JAM-KJM-PS (ED. Cal, May 15, 2014) and *McGee v. California* 2:16-cv-1796-JAM-EFB-PS to secure Plaintiff's civil rights.

4.      On October 1, 2023, in furtherance of the conspiracy set forth above the County sent Plaintiff a "Account Summary" demanded Plaintiff pay the County $7,517.00 to punish Plaintiff for  taking, action and participating in the action entitled *McGee v. Wilson* case no. Civ- S-98-1026-FCD-PAN-PS (*McGee v. Wilson et. al.*) in District Court to secure Plaintiff's

civil rights. The account summary was sent to Plaintiff through the United States general mail. The County of Sacramento is demanding $7,517.00 from Plaintiff to punish because, Plaintiff acted and participated in the action *McGee v. Wilson et. al.* to secure Plaintiff's civil rights. The County actions are intimidating Plaintiff and is retaliation against Plaintiff for participating in *McGee v. Wilson et. al.*

5.     On November 1, 2023, the County sent another "Account Summary" to Plaintiff through the United States mail again demanding that Plaintiff pay the County $7,517.00 that  intimidate Plaintiff and retaliated against Plaintiff. The second Account Summary intimidated Plaintiff as revenge for Plaintiff, taking action and participating in an action against the County in the District Court action entitled *McGee v. Wilson et. al.*  to secure Plaintiff's civil rights.

6.     On December 1, 2023 the County sent another letter through the United States mail stamped **URGENT** demanding $7,517.00. The letter again intimidated and retaliated against Plaintiff for taking ction and participating in the case *McGee v. Wilson*. Plaintiff felted intimidated because he knew the County was punishing him for taking action against and participating in the action McGee v. Wilson the County in the District Court.

7.     Plaintiff is frightened and it is hard for Plaintiff to concentrate on his work because Plaintiff does not know what the County and other Defendants will do to collect the $7,517.00. The County and other Defendants in this action have a history of using racketeering and criminal activities to intimidate and retaliate against Plaintiff for attempting to secure his civil rights. Plaintiff needs help from the United States District Court to protect him and his family and make them feel secure.

8.      Plaintiff has tried to protect his civil rights and now the County and other Defendants are punishing him for attempting to secure his civil rights in the District Court case entitled *McGee v. Wilson et. al.* .

9.      Each Defendant listed in this Complaint is using law enforcement programs and activities receiving federal financial assistance from the United States to intimidate and retaliate against Plaintiff for taking action in the United Sates District Court and participating in other actions in the same Court. Each Defendants did all acts alleged in this Complaint while acting under color of state law.

10. This is an action brought pursuant Fourteenth Amendment, United States Civil Rights Statutes Title 42 U.S.C. §§ 1981, 1982, 1983, 1985, 1986, 2000, the United States Racketeering statutes Title 18 U.S.C. §§ 1961 and 1962, and California Civil Rights Statutes *Cal. Civil Code §§51 and 52.*

11.      Plaintiff seeks injunctive relief, declaratory relief, compensatory relief, compensatory damages, statutory damages, punitive damages, and litigation expenses remedies for the Defendant's violation of his Federal and State statutory law as well as common law rights.

12.      The government agencies, departments, programs, governmental officials, and people that discriminated against Plaintiff and committed crimes against Plaintiff are set forth below and are referred collectively in this Complaint as the Defendants:

## PARTIES

13.      At all times mentioned in this Complaint, Plaintiff is Jefferson A McGee and Plaintiff is an African American citizen residing in the County of Sacramento, State of California, and a member of Airport Little League Baseball Inc. Plaintiff is also a member of a protected class pursuant to the Federal Civil Right Statutes.

14. At all times mentioned in this Complaint Defendants State of California is a member of the several sovereign states of the United States.

15. At all timed mentioned in this Complaint Defendants California Governor is the Chief Executive of the State of California.

16. At all times mentioned in the Complaint Defendants: Gray Davis, Arnold Schwarzenegger, Pete Wilson, and Edmund G. Brown[1] are governors of the State of California. All wrongs alleged against Defendants are alleged in their official and unofficial capacities. Defendants did all acts alleged in this Complaint while acting under the color of state law.

17. At all times mentioned in this Complaint Defendants California Attorney General is the Chief law enforcement officer for the State of California.

18. At all times mentioned in this Complaint Defendants: Bill Lockyear, Daniel Lungren, and Edmund G. Brown are the California Attorney General. All wrongs alleged against Defendants are being done in their official and unofficial capacities. Defendants did all acts alleged in this Complaint while acting under the color of state law.

19. At all times mentioned in the Complaint Defendants: Jerry Meyer, Investigator Freitas, Investigator Sutton, Reba Chastain, Dean Leuder, Daniela Petouka, Boston Whitley, and Diana Fouts are directors, employees, and/or agents of the California Department of Alcohol Beverage Control. Defendants did all wrongs alleged in this Complaint were committed in their official and unofficial capacities, and while acting under the color of state law.

20. At all times mentioned in this Complaint Defendants: California State Senate and California State Assembly are bodies of the California Legislature.

---

[1] Edmund G. Brown is also California Attorney General.

21. At all times mentioned in this Complaint Defendants Darrell Steinberg[2], John A. Perez, Donald Perata and Fabian Nunez are members of the California State Senate and the California State Assembly. All wrongs alleged in this complaint against Defendants acted in their official and unofficial capacities. Defendants did all acts alleged in this Complaint while acting under the color of state law.

22. At all times mentioned in this Complaint Defendants: Jacob Applesmith, Stacy Eurie, and Tamara Morgan are Deputy Attorney General, or employees of the Attorney General's Office. Defendants did all wrongs alleged in this complaint in their official and unofficial capacities. Defendants did all acts alleged in this Complaint while acting under the color of state law.

23. At all times mentioned in this Complaint Defendants: Geraldine Reyes, Barbara Osborne, Penny Sanborn, Nancy Gutierrez, and Gordon Piper are directors and/or employees of California Department of Fair Employment and Housing (CDFEH). Defendants did all acts alleged in this Complaint in their official and unofficial capacities. Defendants did all acts alleged in the Complaint while acting under the color of state law.

24. At all times mentioned in this Complaint Defendants Sacramento Board of Supervisors is the governing body of the County of Sacramento. The board is impowered to adopt, implement, and promulgate policies for the County of Sacramento.

25. At all times mentioned in this Complaint Defendants: Don Nottoli; Susan Peters; Jimmie Yee; Illa Collins; and Rodger Dickerson are elected members of the Sacramento Board of Supervisors. I am complaining against these Defendants in their official and unofficial

---

[2] Darrell Steinberg is also Mayor of the City of Sacramento. The Complaint is against Steinberg in his official capacities as a member of the State legislature and as a member of Sacramento City Council.

capacities. Defendants did all acts alleged in this Complaint while acting under the color of state law.

26.     At all times mentioned in this Complaint Defendant, the County of Sacramento is a political subdivision or municipality of the State of California and did all wrongs complained of while acting under color of state law.

27.     At all times mentioned in this Complaint Defendant Jan Scully is the District Attorney of the County of Sacramento. Defendant has done all wrongs mentioned in this Complaint in her official and unofficial capacity, and while acting under the color of state law.

28.     At all times mentioned in this Complaint Defendants: Kelley Chandler, Al Locher, Joseph Alexander, Curtis Fiorini, Deborah Lobre, are Deputy district attorneys for the County of Sacramento. Defendants have done all wrongs mentioned in this Complaint in their official and unofficial capacities, and while acting under color of state law.

29.     At all times mentioned in this Complaint Defendants Paulino Duran, Shelia Ramos, and Kenneth Rosenfeld are attorneys or panel attorneys for the Sacramento County Public Defender's Office. Defendants did all wrongs set out in this Compliant in their official and unofficial capacities, and while acting under the color of state law.

30.     At all timed mentioned in the Complaint the County of Sacramento Sheriff is the chief law enforcement official in the County of Sacramento, and is required by law to see to it the law is uniformly and faithfully executed in the County of Sacramento. Defendants did all wrongs mentioned of under color of State Law.

31.     At all times mentioned in this Complaint Glenn Craig, Lou Blanas, John McGuiness, Scott Jones are the Sheriffs of Sacramento County. Defendants did all wrongs mentioned in this

1    Complaint in their official and unofficial capacities, and while acting under the color of state
2    law.

3    32.    At all times mentioned in the Complaint Defendants: Glenn Powell, Robert Denham,
4    Christine, Hess, Gary Cheris, Richard Twilling, Huzar, Deputy Atkins, Craig Gonclaves, Nick
5    Gonclaves, Jeffrey Nelson, Deputy Ladas, Deputy Karvonen, Deputy Santin, K. Papineau,
6
     Geyser, Randazzo, and Mike Leary are Deputy Sheriff of the County of Sacramento.
7
8    Defendants did all wrongs alleged in this Complaint in their official and unofficial capacities,
9    and while acting under the color of state law.

10   33.    At all times mentioned in this Complaint Defendants: Robert Ryan and Anthony Wright
11   are the County Counsel and/or attorneys for the County of Sacramento. Defendants did all
12   wrongs in this Complaint in their official and unofficial capacities, and while acting under the
13   color of state law.

14
     34.    At all times mentioned in this Complaint Defendant the City of Citrus Heights is a political
15
     subdivision or municipality of the State of California, and did all wrongs alleged in this
16
17   Complaint under the color of State Law.

18   35.    At all times mentioned in this Complaint Defendant: Julie Howard is an employee of the
19   Elk Grove Laguna Neighbors, a local newspaper affiliated with the Sacramento Bee.
20   Defendant did all wrongs alleged in her official and unofficial capacities, and while acting
21   under the color of state law.
22
23   36.    At all times mentioned in this Complaint Defendant John Hildebrand is a private citizen
24   residing in the County of Sacramento and Gaylord Mann is his attorney doing business in the
25   County of Sacramento. Defendants did all acts alleged in this Complaint while acting under
26   the color of state law.

27

28

37.     At all times mentioned in this Complaint Defendant, Longyear O'Dea Lavra LLP is a law firm doing business in the Courts of California and are representing the County of Sacramento. Defendants did all acts alleged in the Complaint while acting under the color of state law.

38.     At all times mentioned in this Complaint Defendants: John Lavra and Allison Sandman are attorneys employed by Longyear, O'Dea and Lavra LLP representing the County of Sacramento in the Courts of California. Defendants did all acts alleged in this Complaint while acting under the color of state law.

39.     At all times mentioned in this Complaint Defendants, Randolf Creeger Chalfant LLP is a law firm doing business in the Courts of California, representing the County of Sacramento. Defendants did all acts alleged in this Complaint while acting under the color of state law.

40.     At all times mentioned in this Complaint Defendant Robert Chalfant is an attorney practicing in the Courts of California employed by Randolfe Creeger and Chalfant LLP. Defendant did all acts alleged in this Complaint while acting under the color of state law.

41.     At all times mentioned in this Complaint Defendants: Florin Little League Baseball Inc (FLLB) is a youth baseball and softball organization part of Little League Baseball Inc. (LLBB) doing business in the County of Sacramento. FLLB did all acts alleged in this Compliant while acting under the color of state law.

42.     At all times mentioned in this Complaint Defendants: Harvey Woods, Al Smith, Michelle Miles, Silvia Roberts, Eileen Maza, Gordon Stevens, Billy Miles, Anne Johnson, Lorie Whitman, Dennis O'Flaherty, Robert Bartosh, Martin Andrews, Mike Crosby, Tony Flint, Anthony Lederer, Tracy Contreras, Chuck King, and Lee Thomas are members of FLLB. Defendants did all acts alleged in this complaint while acting under the color of state law.

43. At all times mentioned in this Complaint Defendant, Elk Grove Unified School District (EGUSD) is a municipality or political subdivision of the State of California. Defendants did all wrongs alleged in this Complaint while acting under the color of State Law.

44. At all times mentioned in this Complaint Defendants Officer Jones and Officer Lozano are officers of the EGUSD Police Department, and did all acts alleged in the Complaint while acting under the color of State Law, and in their official and unofficial capacities.

45. At all times mentioned in this Complaint Defendants EGUSD Police Department is the police department for EGUSD and did all wrongs mentioned in this Complaint while acting under the color of state law.

46. At all times mentioned in this Complaint Defendant, the City of Elk Grove (Elk Grove) is a political subdivision or municipality of the State of California, and did all wrongs alleged under the color of state law.

47. At all times mentioned in this Complaint Defendant Ed Flint is the Chief of Police of the City of Elk Grove. Defendant Ed Flint did all wrongs alleged in this Complaint in his official and unofficial capacity, and while acting under the color of state law.

48. At all times mentioned in this Complaint Defendant Anthony Manzanetti is the City Attorney for the City of Elk Grove. Defendant Anthony Manzanetti did all wrongs alleged in this Complaint in his official and unofficial capacity, and while acting under the color of state law.

49. At all times mentioned in this Complaint Defendants: James Cooper, Sophia Sherman, Dan Briggs, Rick Soares, and Mike Leary are members of Elk Grove City Council and Jim Cooper and Mike Leary are also Deputy Sheriffs of the County of Sacramento Sheriff's Department.

*McGee's Complaint* 10

1    Defendants did all wrongs alleged in this Complaint in their official and unofficial capacities,

2    and while acting under color of state law.

3    50.    At all times mentioned in this Complaint Defendants: Detective Mark Bearor, Deputy

4    Keller, Deputy Kawamoto, Deputy K. Ball, Deputy Rebecca Robert, and Lt. Bravos are City

5    of Elk Grove police officers and Deputy Sheriffs of the County of Sacramento Sheriff's

6    Department. Defendants did all wrongs alleged in this Complaint in their official and unofficial

7    capacities, and while acting under the color of state law.

8

9    51.    At all times mentioned in this Complaint Ford Motor Credit is a finance company doing

10   business in the County of Sacramento. Defendant did all wrongs alleged in the Complaint while

11   acting under the color of state law.

12   52.    At all times mentioned in this Complaint Defendants Auto Finance, Al Stoler, Best

13   Recovery, and Mathew Anderson are private companies and/or employees of those companies'

14   doing business in the County of Sacramento.  Defendants did all wrongs alleged in this

15   Complaint while acting under the color of state law.

16

17   53.    At all times mentioned in this Complaint Defendant the City of Sacramento (the City) is a

18   political subdivision or municipality of the State of California, and did all wrongs alleged in

19   this Complaint while acting under the color of State Law.

20   54.    At all times mentioned in this Complaint Defendant City of Sacramento Police Department

21   (SPD) is the law enforcement agency of the City of Sacramento, and did all wrongs alleged in

22   this Complaint while acting under the color of State Law.

23

24   55.    At all times mentioned in this Complaint Defendants: Heather Fargo, Robbie Waters,

25   Bonnie Pannell, Laura Hammond, Ray Tretheway, Robert Fong, Kevin Johnson, Angelique

26   Ashby, Allen Warren, Steve Hansen, Darrell Fong, Steve Cohen, Sandy Sheedy, Dave Jones,

27

28

and Darrell Steinberg are members of the Sacramento City Council. Defendants did all wrongs alleged in this Complaint in their official and unofficial capacities, and while acting under the color of state law.

56.    At all times mentioned in this Complaint Defendants Arturo Venegas and Albert Najaera are the Chief of Police for the City of Sacramento. Defendants did all wrongs alleged in this Complaint in their official and unofficial capacities, and while acting under the color of state law.

57.    At all times mentioned in this Complaint Defendants Eileen Teichert, Joseph Russell, Susana Alcala Woods, Chance Louis Trimm, and Matthew Day are attorneys and/or employees of the City of Sacramento. Defendants did all wrongs alleged in this Complaint in their official and unofficial capacities, and while acting under the color of state law.

58.    At all times mentioned in this Complaint Defendants: Don Cashmere, Robert Thomas, and Kevin Johnson are officers and/or employees of the City of Sacramento. Defendants did all acts alleged in this Complaint in their official and unofficial capacities, and while acting under the color of state law.

59.    At all times mentioned in this Complaint Defendants Officer Bailey and Officer Peace are officers of the City of Sacramento Police Department. Defendants did all acts alleged in this Complaint in their official and unofficial capacities and while acting under the color of state law.

60.    At all times mentioned in this Complaint Defendant James Stinson is a private citizen residing in the County of Sacramento. James Stinson did all acts alleged in this Complaint while acting under the color of state law.

61.    At all times mentioned in this Complaint Defendant DoubleTree/Hilton is a corporation

1    operating a hotel in the County of Sacramento. Defendants did all acts alleged in this Complaint

2    while acting under the color of state law.

3    62.    At all times mentioned in this Complaint Defendant MMDD Sacramento Project is a

4    corporation or a limited liability company doing business in the City of Sacramento. Defendant

5    did all wrongs alleged in this Complaint while acting under the color of state law.

6    63.    At all times mentioned in this Complaint Defendants: Mel DiSalvo, John Lawrence Tiner,

7    Willie Richardson, John Benjamin Tiner are property managers, partners, or employees of

8    MMDD Sacramento Project. Defendants did all wrongs alleged in this Complaint while acting

9    under the color of state law.

10

11   64.    At all times mentioned in this Complaint Defendants: Edward Brenner, Thomas Hogan,

12   Ellen Claire Arabian, and Jerry Duncan are attorneys licensed to practice law in the State of

13   California representing MMDD Sacramento Project in the Courts of Sacramento County.

14   Defendants did all wrongs alleged in this Complaint while acting under the color of state law.

15   65.    At all times mentioned in this Complaint Defendant Gurnee Daniels LLP is a law firm

16   doing business in the County of Sacramento. Defendants did all wrongs alleged in this

17   Complaint while acting under the color of state law.

18

19   66.    At all times mentioned in this Complaint Defendant Sacramento Delta Property

20   Management Inc. is a property management company doing business in the County of

21   Sacramento. Defendant did all wrongs alleged in this Complaint while acting under the color

22   of state law.

23

24   67.    At all times mentioned in this Complaint Defendant John T. White was an officer or

25   employee of Sacramento Delta Property Management Inc. doing business in the County of

26   Sacramento. Defendant did all wrongs alleged in this Complaint while acting under the color

27

28

1

of state law.

2   68.    At all times mentioned in this Complaint Defendant Law Offices of Gary L. Link LLP is a

3        law firm doing business in the County of Sacramento. Defendant did all wrongs alleged in this

4        Complaint while acting under the color of state law.

5   69.    At all times mentioned in this Complaint Defendant Gary L. Link is an attorney licensed

6        to practice law in the State of California doing business in the County of Sacramento.

7
        Defendant did all wrongs alleged in this Complaint while acting under the color of state law.
8

9   70.    At all times mentioned in this Complaint Defendants Thomas McGee, Mark McGee, and

10       Richard McGee Jr. are citizens of the United States residing in the County. Defendants did all

11       wrongs alleged in this Complaint while acting under the color of state law.

12  71.    At all times mentioned in this Complaint Defendant Lexington Insurance Company is an

13       insurance company insuring LLBB, APLL, and Hernandez in the case *McGee v. Airport Little*

14       *League et. al.* 2:21-cv-1654-DAD-Db-PS (*McGee v. Airport Little League et. al.*) Defendants

15
        did all wrongs alleged in this Complaint while acting under the color of state law.
16

17  72.    At all times mentioned in this Complaint Defendants Wilson Esler Moskowitz Edelman &

18       Dicker LLP is a law firm doing business in the State of California. Defendants did all wrongs

19       alleged in this Complaint while acting under the color of state law.

20  73.    At all times relevant to the facts set out in this Complaint, Airport Little League Baseball

21       Inc., (APLL) is a youth baseball and softball organization doing business in the County and is

22
        one of the several leagues of Little League Baseball Inc (LLBB). APLL, Hernandez, DOES 1
23

24       through DOES 7 operated APLL, while having actual knowledge that APLL corporation was

25       in a suspended status with the California Secretary of State. Defendants did all wrongs alleged

26       in this Complaint while acting under the color of state law.

27

28

74.     At all times mentioned in this Complaint attorney Ian Stewart, attorney Michelle DiMaio, and attorney Garrett Benson are attorneys employed with Wilson Esler Moskowitz Edelman & Dicker representing APLL, Hernandez, LLBB, and Lexington Insurance Company, in the case *McGee v. Airport Little League et. al.*

75.     At all times mentioned in this Complaint Bridgeport Home Owners Association (BHOA) is an association of home owners in the Bridgeport Condominium Complex (BCC) located in the City of Sacramento. BHOA is the governing body for BCC. Defendants did all wrongs alleged in this Complaint while acting under the color of state law.

76.     At all times mentioned in this Complaint Defendants Associa of Northern California is a property management firm hired by BHOA to manage the Bridgeport Condominium Complex. Defendants did all wrongs alleged in this Complaint while acting under the color of state law.

77.     At all timed mentioned in this Complaint Defendants Sacramento Elite Security is a security company responsible for security at the Bridgeport Condominium Complex. Defendants did all wrongs alleged in this Complaint while acting under the color of state law.

78.     At all timed mentioned in this Complaint Defendants Gary Swarthout and Sean Swarthout are owners or residents of a unit inside the Bridgeport Condominium complex. Defendants Gary Swarthout and Sean Swarthout did all wrongs alleged in this Complaint while acting under the color of state law.

79.     At all times mentioned in this Complaint, Enrique Hernandez (Hernandez) is President of APLL, and DOES 1 through DOES 7, are members of APLL and resided in the County of Sacramento. Defendants listed in this paragraph committed all wrongs alleged in this Complaint while acting under the color of State law.

80. At all times mentioned in this Complaint the City of Sacramento (the City) is a political subdivision or municipality of the State of California and is receiving federal financial assistance for its law enforcement programs and activities. The City did all wrongs mentioned in this Complaint pursuant to the City of Sacramento's Policy of Discriminate Against African Americans in Law Enforcement Programs (the City's policy). Defendants did all wrongs alleged in this Complaint while acting under color of State Law.

81. At all times mentioned in this Complaint the City did all wrongs alleged in this Complaint in furtherance of "the "vast racially motivated conspiracy" to deprive me of my civil rights.

82. At all times mentioned in the Complaint Defendants Howard Chan (Chan) is the City Manager for the City of Sacramento and a policy maker for the City and DOES 8 through 14 are officials of the City of Sacramento. Defendants did all wrongs complained of in their official and unofficial capacities and while acting under the color of State law.

83. At all times mentioned in this Complaint Little League Baseball Inc. (LLBB) is a federally chartered corporation created by a special act of congress doing business in the County of Sacramento California. LLBB operates a youth baseball and softball league on public property. LLBB did all wrongs alleged in this Complaint while acting under the color of state law.

## STATEMENT OF JURISDICTION AND VENUE

84. Jurisdiction of this court is evoked under the provisions of Title 28 U.S.C. §§ 1331, 1343(3), 1367(a); and Title 18 U.S.C. §§ 1961 and 1962; Title 42 U.S.C. §§ 1981, 1982, 1983, 1985, 1986, and 2000. This Court has supplemental jurisdiction over the related state law claims pursuant to Article III of the United States Constitution. Plaintiff's state law claims share all common operative facts with his federal claims and a single action serves the interest of judicial economy, convenience, consistency, and fairness to the parties.

1    85.    The venue is proper in that, Defendants are subject to the personal jurisdiction of this Court

2          because Defendants maintain facilities and business operations in this District, and all or most

3          of the events giving rise to this action occurred in this District. 28 U.S.C. § 1391(b).

4    86.    Pursuant to *Local Rule 120* of this District, assignment to the Sacramento Division of this

5          Court is proper because all or most of the events giving rise to Plaintiff's claims occurred in

6          Sacramento County.

7

8                                **HISTORY OF THE CONSPIRACY**

9    87.    Plaintiff alleges:

10   88.    Plaintiff has frequented this court on numerous occasions with his *pro se* litigation. A

11         review of the court's dockets indicates that plaintiff has filed over ten complaints, including

12
     several complaints alleging the same conspiracy to violate plaintiff's civil rights against several
13
     of the same defendants. *See* 2:98-mc-00124-FCD-PAN, *McGee v. Craig, et al.*; 2:98-mc-
14
15   00125-GEB-DAD *McGee v. Craig, et al.* (converted to 2:98-cv-1026); 2:98-mc-00321-DFL-

16   PAN, *People of the State v. McGee, et al.*; 2:98-cv-01026-FCD-PAN, *McGee, et al. v. Craig,*

17   *et al.*, Dckt. No. 216 ("In a 188-page complaint filed June 3, 1998, plaintiffs complain that

18
     more than 200 defendants, including the Governor of the State of California, the State Attorney
19
     General, the Sacramento District Attorney, a newspaper, a school district, little league baseball,
20
21   and officers of state and local agencies, among others, conspired to deny plaintiffs' civil

22   rights.");    2:00-mc-00205-GEB-DAD, *Hildebrand    v.    McGee*;    2:00-cv-01578-GEB-

23   DAD, *Hildebrand v. McGee*; 2:01-mc-00179-LKK-PAN, *McGee, et al. v. Davis*; 2:04-cv-

24   00283-GEB-KJM, *McGee v. People of the State of California*; 2:04-cv-02598-LKK-

25   DAD, *McGee v. Schwarzenegger*, Dckt. No. 133 ("The amended complaint contains

26   allegations such as defendants have `refused to protect plaintiff's property'; refused to enforce

27

28

*McGee's Complaint*                                                                              17

a restraining order of the Superior Court of California'; `unlawfully tak[en] plaintiff's property'; `denied [plaintiff] equal rights in licensing, and interfered with his business relationships'; and `refused to provide for the health, safety, peace, comfort, and convenience of plaintiff's person, property, customers, and employees on the same and equal basis that they provide for white citizens', for example. Moreover, the amended complaint refers to an array of statutory provisions including [42] U.S.C. §§ 1981, 1982, 1983, 1985, 1986, 1988 as well as 42 U.S.C. § 2000, in reference to Title VII of the Civil Rights Act of 1964. Finally, the amended complaint contains wide-ranging allegations of conspiracy and violations of plaintiff's constitutional rights and prays for hundreds of millions of dollars in monetary relief."); 2:05-cv-00134-FCD-PAN, *MMDD Sacramento Project v. McGee*; 2:05-cv-00339-WBS-DAD, *McGee v. MMDD Sacramento Project, et al.*; 2:05-cv-02632-GEB-EFB, *McGee v. CA State Senate, et al.*, Dckt. No. 86 ("The complaint, which is eighty pages in length and names over thirty defendants, consists of allegations regarding an alleged racially-motivated conspiracy to violate plaintiff's civil rights."); 2:06-cv-00495-MCE-GGH, *McGee et al. v. Seagraves et al.*, Dckt. No. 12 ("Petitioners allege that respondents have violated their civil rights under 42 U.S.C. §§ 1981, 1982 and 2000 through discrimination against African Americans."); 2:10-cv-00137-KJM, *McGee v. Attorney General State of California.*

89.        On September 23, 2010, Plaintiff filed a fourth amended complaint in *McGee v. California* No. 09-cv-S-0074-GEB-EFB-PS. Dckt. No. 19. "The 36-page Complaint names 153 defendants and alleges 25 causes of action. *Id.* The fourth amended complaint still challenges "the State of California's Policy of Discriminating Against African Americans in Law Enforcement Programs and Activities," and alleges causes of action pursuant to 42 U.S.C. §§ 1981 (claims 1, 2, 3, 4, 5, and 6), § 1982 (claims 7, 8, 9, 10, 11, and 12), § 1983 (claims 13,

1
2

14, and 15), § 1985 (claim 16), § 1986 (claim 17), and § 2000a (claims 18, 19, 20, 21, 22, and 23), and California Civil Code sections 51 and 52 (claims 24 and 25). *Id.*

3  90.     Additionally, many of the 153 defendants named in the fourth amended complaint have

4     been named in one or more of plaintiff's previous actions before this court. Specifically, the

5     fourth amended complaint asserts claims against the following defendants:

6

7
8     **Claims 1, 7, 13, 16, 17, 18, 24, 25:** State of California; Arnold Schwarzenegger, also named in

9     04-cv-2598, 05-cv-2632; Gray Davis, Pete Wilson, Edmund G. Brown; Bill Lockyer, 98-cv-1026,

10    01-mc-179, 04-cv-2598, 05-cv-2632; Daniel Lungren, Jerry Meyer, 04-cv-2598, 05-cv-2632;

11    Investigator Freitas, 05-cv-2632; Investigator Sutton, 05-cv-2632; Reba Chastain, 05-cv-2632;

12    Dean Leuder, 05-cv-2632; Daniela Petouka, 05-cv-2632; Boston Whitney, 05-cv-2632; Diana

13    Fouts, 05-cv-2632; CA State Senate, 05-cv-2632; CA State Assembly, 05-cv-2632; Donald Perata,

14
15    05-cv-2632; Fabian Nunez, 05-cv-2632; Jacob Applesmith; Stacy Eurie; Tamara Morgan;

16    Geraldine Reyes, 98-cv-1026 (not claim 1); Barbra Osborne, 98-cv-1026, 01-mc-179 (not claim

17    1); Penny Sandborne, 98-cv-1026, 01-mc-179 (not claim 1); Nancy Gutierrez, 98-cv-1026, 01-mc-

18    179 (not claim 1); Gordon Piper (not claim 1)

19

20    **Claims 2, 8, 16, 17, 19, 24, 25:** Sacramento County, 98-cv-1026, 01-mc-179, 04-cv-2598, 05-cv-

21    2632; Jan Scully, 98-cv-1026, 01-mc-179, 04-cv-2598, 05-cv-2632; Al Locher, 01-mc-179, 04-

22
23    cv-2598, 05-cv-2632; Kelley Chandler; Joseph Alexander, 01-mc-179; Curtis Fiorini; Deborah

24    Lobre, 05-cv-2632; Paulino Duran; Sheila Ramos, 01-mc-179; Kenneth Rosenfeld, 01-mc-179

25    (not claim 19); Glen Craig, Lou Blanas, 98-cv-1026, 01-mc-179, 04-cv-2598, 05-cv-2632; John

26    McGuiness; Glenn Powell, Robert Denham, Christine Hess, Gary Cheris, 01-mc-179; Richard

27
28

*McGee's Complaint*                                                                                          19

Twilling, Huzar, 01-mc-179; Deputy Atkins, Craig Goncalves, 01-mc-179; Nick Goncalves, Jeffery Nelson, Deputy Ladas, Deputy Karvonen, Deputy Baugh, Deputy Peterson, Deputy Hutchinson, Deputy Santin, 01-mc-179; K. Papineau, Geyser, 01-mc-179; Randazzo, 01-mc-179; Leary; Robert Ryan, 01-mc-179; Anthony Wright, 01-mc-179; City of Citrus Heights; Julie Howard, John Hildebrand, 01-mc-179; Gaylord Mann, 01-mc-179; Longyear O'Dea Lavara LLP; John Lavara; Alison Sandman; Randolfe Creeger Chalfant LLP; Robert Chalfant

**Claims 3, 9, 14, 16, 17, 20, 24, 25:** Little League Baseball Inc., Florin Little League Baseball Inc., Harvey Woods, Al Smith, Silvia Roberts, 01-mc-179; Eileen Maza; Gordon Stevens, 01-mc-179; Billy Miles, 01-mc-179; Michelle Miles; Anne Johnson, 01-mc-179; Lorie Wittman, 01-mc-179; Dennis O'Flaherty, Robert Bartosh, Martin Andrews, Mike Crosby, Tony Flint, 01-mc-179; Anthony Lederer, 01-mc-179; Tracy Contreras, Chuck King, 01-mc-179; Lee Thomas, Elk Grove Unified School District, 98-cv-1026, 01-mc-179; Officer Gary Jones, Officer Lozzano, Southgate Recreation and Park District; Elk Grove Unified School District Police Department (not claims 3, 9, 20)

**Claims 4, 10, 16, 17, 21, 24, 25:** City of Elk Grove, 01-mc-179; Ed Flint, 05-cv-2632; James Cooper, 01-mc-179; Sophia Sherman, 01-mc-179; Dan Briggs, 01-mc-179; Rick Soares, 01-mc-179; Mike Leary, 01-mc-179; Anthony Manzanetti, 01-mc-179; Detective Mark Bearor, 05-cv-2632; Deputy Keller, 05-cv-2632; Deputy Kawamoto, 05-cv-2632; Deputy K. Ball; Deputy Rebecca Roberts, 01-mc-179; Lt. Bravos, 05-cv-2632; Auto Finance; Al Stoler; Best Recovery; Matthew Anderson

**Claims 5, 11, 16, 17, 22, 24, 25:** City of Sacramento, 01-mc-179, 04-cv-2598, 05-cv-2632; City of Sacramento Police Department, Heather Fargo, 01-mc-179, 04-cv-2598, 05-cv-2632; Robbie Waters, 04-cv-2598, 05-cv-2632; Bonnie Pannell, 04-cv-2598, 05-cv-2632; Laura Hammond; Ray Trethway; Robert Fong; Arturo Venegas, 01-mc-179; Albert Najera, 04-cv-2598, 05-cv-2632; Eileen Teichert; Don Cashmiere, 01-mc-179; Joseph Russell; Robert Thomas, 01-mc-179; Officer Bailey, 04-cv-2598, 05-cv-2632; Kevin Johnson, 01-mc-179; Officer Peace, 05-cv-2632; James Stinson, 04-cv-2598, 05-cv-2632 (not claim 22); Doubletree Hotel/Hilton, 01-mc-179 (not claims 5, 11)

**Claims 6, 12, 15, 16, 17, 23, 24, 25:** MMDD Sacramento Project, 05-cv-2632; Mel Di Salvo, 05-cv-2632; Asset Investment Managers, Inc., 05-cv-2632; John Lawrence Tiner, 05-cv-2632; Willie Richardson, 05-cv-2632; John Benjamin Tiner, 05-cv-2632; Edward Brenner, 05-cv-2632; Thomas Hogan, 05-cv-2632; Gurnee Daniels LLP; Ellen Claire Arabian; Jerry Duncan; Sacramento Delta Property Management, Inc.; John T. White; Law Offices of Gary L. Link, LLP; Gary L. Link; Mark McGee; Thomas McGee; Barbra McGee; Golden Valley Financial Inc.

91. Defendants at all times here in after mentioned in this Complaint are referred to collectively in Claims 1, 7, 13, 16, 17, 18, 24, and 25 as "the State Defendants"; in Claims 2, 8, 16, 17, 19, 24, and 25 as "the County Defendants"; in Claims 3, 9, 14, 16, 17, 20, 24, and 25 as "the Florin Little League Defendants"; Claims 4, 10, 16, 17, 24, and 25 as "the Elk Grove Defendants"; in Claims 5, 11, 16, 17, 22, 24, and 25 as "the City of Sacramento Defendants"; and Claims 6, 12, 15, 16, 17, 23, 24, and 25 as "the MMDD Defendants."

92.     In furtherance of the conspiracy set out in this Complaint on December 12, 2023, Defendants: Sacramento City Council members Caity Maple, Karina Talamantes, Sean Lolee,

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Eric Gurrera, and Rick Jennings while having actual knowledge that the City manager, Howard Chan and the Sacramento City Attorney Susana Alcala Woods, were conspiring to violate Plaintiff's civil rights, and were promulgating and executing the City's policy of discriminating against African Americans, unlawfully voted to raise Chan and Woods salary to benefit and encourage them for executing the City's policy of discriminating against African Americans.

93.     In furtherance of the conspiracy set out above, Richard McGee Jr. filed documents in the Superior Court of California, County of Sacramento (the Superior Court) which contained false information on behalf of Sora L. McGee and used the false information to unlawfully evict Plaintiff and his family from 5617 Bonniemae Way Sacramento, CA.

94.     Plaintiff also filed the case of *McGee v. the State of California* No. 2:14-CV-JAM-KJM-PS "the 75-page complaint names approximately 69 defendants, including, *inter alia,* the State of California; the California Governor (as well as former California Governors); the California Attorney General (as well as former California Attorney Generals); the California State Senate; the California State Assembly; certain individual members of the California legislature; the County of Sacramento (as well as individual members of the Sacramento County Board of Supervisors); various cities in the Sacramento metropolitan area (including individual city council members); several sheriffs, sheriff deputies, and prosecutors; the Elk Grove Unified School District; the Southgate Recreation and Park District; certain creditors and/or property managers; a hotel; a few civic organizations; and multiple law firms..."

95.     Plaintiff alleges that each of the defendants "has used law enforcement programs and activities receiving financial assistance from the United States Government to discriminate against plaintiff on the grounds of his race and solely on account that plaintiff is African American." Plaintiff broadly claims that: government officials and some private citizens have

1   participated in a vast racially motivated conspiracy to violate plaintiff's and other persons [sic]

2   rights, including conspiring, or aiding or inciting others, to commit against plaintiff and other

3   persons: attempted murder; kidnap; torture; assault with a deadly weapon; assault; battery;

4   breaking and entering into plaintiff's property; obstruction of justice in the federal and state

5   courts; perjury; forgery; unlawful sexual conduct; and unlawful search and seizure of plaintiff's

6   property causing plaintiff to lose income…"

7
8   96.   "Plaintiff brings claims against each defendant for violation of 42 U.S.C. §§ 1981, 1982,

9   1983, 1985, 1986, & 2000, as well as violation of Cal. Civ. Code §§ 51 & 52. (Compl. ¶¶ 248-

10   257.) These claims are based on numerous different incidents that took place from

11   approximately 1993-2014, including, but not limited to, exclusion from participation in the

12   affairs of Florin Little League Baseball, various hostile encounters with different city and

13   county law enforcement agencies, plaintiff's eviction from multiple properties through

14   unlawful detainer actions, certain debt collection activities undertaken against plaintiff, the

15   prosecution of criminal actions against plaintiff, interference with plaintiff's businesses and

16   liquor licenses for those businesses, an incident of racial discrimination at a hotel, and failure

17   to protect plaintiff from a hostile neighbor. Plaintiff seeks declaratory relief, various forms of

18   injunctive relief, as well as different types of damages, including $2,000,000,000.00 in actual

19   damages, $2,000,000,000.00 in statutory damages, and $6,000,000,000.00 in punitive

20   damages. (Compl. at 67-70)…"

21
22   97.   In 2016, Plaintiff filed the case *McGee v. California* No. 2:16-CV-1796-JAM-EFB-PS in

23   this Court. The Complaint named the State of California, County of Sacramento, City of

24   Sacramento, Sacramento Elite Security, Bridgeport Homeowners Association, Associa of

25   Northern California, Sean Swarthout, and Gary Swarthout as defendants. (the Bridgeport

26

27

28

Defendants) Plaintiff alleged claims for violations of Title 42 U.S.C. §§1981, 1982, 1983, 1985, 1986, 2000 and Cal. Civ. Code §51 and 52 based on a conspiracy to discriminate against African Americans.

### ALLEGATIONS RELATING TO LITTLE LEAGUE DEFENDANTS.

98.    The City of Sacramento is a political subdivision or a municipality of the State of California and is the owner of the property located at 6395 Hogan Drive. Kings Field is part of the property located at 6395 Hogan Drive.

99.    The City of Sacramento has adopted, implemented, maintained, promulgated, and executed the City's Policy of Discriminating Against African Americans on the Grounds of their Race in Law Enforcement Programs and Activities for over 21 years.

100.    The City's receives federal financial assistance for their its enforcement programs and activities, from the United States Government.

101.    Little League Baseball, Inc. (LLBB) is a federally chartered corporation created by a special act of congress doing business in the County of Sacramento.

102.    LLBB and APLL operates Airport Little League on the sports arenas located at 6395 Hogan Drive.

103.    6395 Hogan Drive has three sports arenas, that regularly exhibit baseball games to the public and a snack bar that sells food and drink for consumption on the premise.

104.    6395 Hogan Drive is a public accommodation as defined by Title 42 U.S.C. 2000a.

105.    LLBB regularly holds tournaments that are televised before a national audience.

106.    The bats, balls, uniforms, chalk, and other equipment used in the operation of LLBB move through interstate commerce.

107.    LLBB players, managers, and coaches in several states compete for the privilege of playing baseball in the LLBB World Series.

108.    The LLBB World Series is an annual international championship tournament of LLBB held in Williamsport, PA. Teams and players from several states compete to win the LLBB championship. The event is televised on ESPN.

109.    LLBB is a public accommodation as defined by Title 42 U.S.C. § 2000a.

110.    APLL plays its games on the sports arenas located at 6395 Hogan Drive and operates a snack bar at that same location where the league sells food and drink for consumption on the premises.

111.    APLL is a public accommodation as defined by Title 42 U.S.C. § 2000a.

112.    Plaintiff is a real estate broker licensed by the State of California and a member of the National Association of Realtors; the California Association of Realtors; the Sacramento Association of Realtors; and several civic organizations in the State of California.

113.    Plaintiff is the owner of McGee & Associates. McGee & Associates has served the community of Northern California by helping its clients acquire and maintain an interest in real property since 1989.

114.    From 1989 until the present, Plaintiff has worked hard to establish goodwill for McGee & Associates, and a reputation in his community.

115.    A reputation of honesty, integrity, fairness, timeliness, competence, are essential to the success of Plaintiff's business, and his work in his community.

116.     Plaintiff has a property interest in the goodwill of McGee & Associates, and a property interest in his business reputation. Plaintiff also, has a liberty interest in pursuing his occupation and his hobbies.

117.     Plaintiff and his son are African Americans and have been participating in Florin Little League Baseball (FLLB) and APLL for approximately four years.

118.     Throughout the 2021 Little League season, Plaintiff and his son participated in APLL.

119.     Plaintiff paid a fee to LLBB and APLL in exchange for Plaintiff and his son being allowed to participate in the full and equal enjoyment of the goods, services, facilities, privilege, advantages, and accommodations, of LLBB, APLL, and the sports arenas located at 6395 Hogan Drive during the 2021 Little League season.

120.     In or around April 2021, the APLL Board of Directors selected the managers of the APLL major division. The Board of Directors selected Plaintiff (manager of the A's), Juan (DOES 1) (manager of the Rays), Tim (DOES 2) (manager of the Expos), and Steve, (manager of the Yankees).

121.     Plaintiff and Steve are African Americans.

122.     On April 10, 2021, APLL, scheduled a conditioning clinic for the players of APLL at 6395 Hogan Drive. The managers and coaches of APLL were allowed to evaluate players and prepare for the upcoming draft.

123.     On April 17, 2021, APLL held a tryout at 6395 Hogan Drive. The four managers of the APLL major division were given equal opportunity to evaluate players and to decide which players to select on their teams.

124.     On April 19, 2021, APLL held a draft in the snack bar located at 6395 Hogan Drive. All four major division managers attended the draft. President of APLL, Hernandez conducted the draft.

125.     Before the draft began Hernandez, the President of APLL stated, that the manager and coaches of the team that won the APLL major division championship, would have the privilege of being the manager and coaches of the APLL major division all-star team.

126.     APLL, Hernandez, Plaintiff, and the other managers mutually agreed that the manager, coaches of the team that won APLL's major division championship would have the privilege of being the APLL major division all-star manager and coaches.

127.     During the draft, APPL held a lottery to determine which team would be the first team to pick players in the draft. Plaintiff won the lottery and was granted the first pick in the draft.

128.     The draft was held on April 19, 2021. During the draft, all managers of APLL major division were given equal opportunity to select their teams.

129.     Also, on April 19, 2021, Hernandez and all four managers mutually agreed to a specific date for each team to practice on Kings Field.

130.     APLL, Hernandez, Plaintiff, DOES 1, DOES 2, and Steve mutually agreed that the A's would be allowed to practice on Kings Field on Thursday evening, and Kings Field would be available on the weekends on a first come first served basis until the season began.

131.     The major divisions A's team consisted of eight African Americans players, and four Latino players, a Latino coach, and an African American coach.

132.     Parents, relatives, and friends of the A's players, the manager, and coaches would regularly attend practices and games.

133.    No other team in APLL major division had more than two African American players.

134.    Plaintiff and his coaches explained to the A's players, and parents of the A's players that, if the A's won the championship for APLL major division, the manager and coaches of the A's would have the privilege of being the manager and coaches of the APLL major division all-star team.

135.    The A's players set a goal to win APLL major division championship.

136.    Plaintiff also informed the parents of the A's players, that practice was set for every Thursday from 5:30 p.m. to 7:30 p.m. until the season began.

137.    After the draft, APLL, Hernandez, DOE 1, DOE 2, and DOE 3 realized that Plaintiff had the team that would most likely win the major division championship.

138.    Defendants, Hernandez, DOE 1, DOE 2, and DOE 3 began working in concert to prevent Plaintiff and the A's players from practicing on Kings Field on the same and equal basis as DOE 1; the Rays players; DOE 2; and the Expos players, to ensure themselves that the A's would not win the major division championship, and to prevent Plaintiff and the A's coach from enjoying the privileges of managing the major division all-star team because of their race and color and solely on account that they are African Americans.

139.    From the day APLL, Hernandez, and the other managers agreed that the A's would have Kings Field on Thursday evenings to practice, the A's were never given the privilege to practice on Kings Field on Thursday evenings as agreed on by Hernandez and the other managers.

140.    During all of the APLL 2021 season, the A's were deprived of a set day or a schedule to practice on Kings Field.

141.    DOE 1 attended the A's first two practices. After watching the A's first two practices, DOE 1 became aware that the Rays and the Expos could not defeat the A's in a baseball game without cheating.

142.    In furtherance of the conspiracy set forth above, APLL, Hernandez, DOE 1, DOE 2, and DOE 3, began conspiring to prevent Plaintiff, and the A's players from enjoying the same privilege of practicing on Kings Field as they afforded to DOE 1; the Rays players; DOE 2; and the Expos players.

143.    In furtherance of the object of the conspiracy set out above, APLL, Hernandez, DOE 1, DOE 2, and DOE 3, allow the Expos to place at least two players on their team over 13 years old, against the rules of LLBB to help the Expos compete against the A's.

144.    DOE 1 called Plaintiff and told Plaintiff, that Kings Field was no longer available for the A's to practice on Thursday evening, and told Plaintiff to make other arrangements to practice on another day, or practice at a different location.

145.    APLL, Hernandez, and DOE 1 did not supply Plaintiff any reason why Plaintiff and the A's players could not practice on Thursday evenings on Kings Field.

146.    APLL, Hernandez, and DOE 1, never made any other arrangements for Plaintiff and the A's players to have a set day to practice on Kings Field during the 2021 Little League season.

147.    APLL, Hernandez and DOES 1 through DOES 7, prevented Plaintiff and the A's players from having a set day to practice on Kings Field, as agreed on by the President of APLL, and the other managers, to prevent the A's from winning the APLL major division championship, and deprive Plaintiff of the privilege of being the all-star manager because of Plaintiff's race and color and solely on account that Plaintiff is African American.

148.    After several phone calls, Plaintiff and DOES 1 agreed that the A's would be allowed to practice on Kings Field on Monday, April 26, 2021, from 5:30 p.m. to 7:30 p.m.

149.    On Monday, April 26, 2021, around 6:00 P.M., while Plaintiff was conducting practice DOE 1 arrived at Kings Field with the Yankees manager and players and told Plaintiff that the A's would have to split their practice time with the Yankees.

150.    APLL and DOE 1, allowed the A's to continue practicing on Kings Field until 6:30 P.M. DOE 1 then directed the A's to leave Kings Field so that the Yankees could practice instead.

151.    Plaintiff, his coach, and the A's players left Kings field at 6:30 p.m. on April 26, 2021, at the direction of DOES 1.

152.    Plaintiff had told the A's parents, that practice would last until 7:30 P.M., so some A's players had to call their parents to pick them up from Kings Field an hour early on April 26, 2021.

153.    The parents of the A's players were angered and/or annoyed because the practice scheduled on April 26th, 2021 was being cut short.

154.    The major division A's practice scheduled for Monday, April 26, 2021, at 5:30 P.M., had been scheduled several days in advance.

155.    The parents of the major division A's had made arrangements to drop their children off at practice for several hours, on April 26, 2021.

156.    APLL, Hernandez, and DOES 1, obstructed, hindered, and prevented Plaintiff, the A's players, and the families of the A's players, from the full and equal enjoyment, and privilege of practicing on Kings Field; LLB; and APLL, as was being afforded DOE 1, the Rays players, DOE 2, the Expos players, and the parents and families of the Rays and Expos players, to

prevent Plaintiff and the A's players,  from winning APLL major division championship, because of their race and color and solely on account that they are African American.

157.    Plaintiff and the manager of the Yankees are both African American.

158.    While the two African American managers were forced to split the A's and Yankees practice time on Kings Field, DOE 1, and DOE 2, were never forced to split practice time on Kings Field, or have their practice cut short during the 2021 season.

159.    On or about May 11, 2021, Plaintiff begged DOE 1 for any day to practice on Kings Field. DOES 1 stated, "As of now you got to find somewhere else." DOES 1 told Plaintiff to check with him tomorrow.

160.    DOES 1 had actual knowledge, that Kings Field was available that Friday for the A's to practice, but had Plaintiff to call him back the next day to further hinder, obstruct, and discourage Plaintiff, and the A's from practicing on Kings Field in furtherance of APLL's, Hernandez's DOE1's, DOE 2's, and DOE 3's conspiracy to prevent Plaintiff and the A's players from winning APLL major division's championship, because of their race and color and solely on account that they were African American.

161.    On or about May 12, 2021, Plaintiff called DOES 1 back and again asked DOES 1 if the A's could practice on Kings Field on Friday. DOES 1 agreed to allow the A's to practice on Friday evening.

162.    Plaintiff had to call the Friday, May 14, 2021, practice with one day notice to the parents.

163.    While Plaintiff, the A's players, and the A's players' families, were being prevented from having a regularly scheduled practice on Kings Field: DOE 1; the Rays players; DOE 2; and the Expos players, and their families were allowed to have regularly scheduled practices on Kings Field.

164. On or about May 21, 2021, the A's were scheduled to practice on Kings Field at 5:30 P.M.

165. DOES 1 called Plaintiff that same day and informed Plaintiff, that the A's could not practice on Kings Field on May 21, 2021.

166. The major division A's practice scheduled for May 21, 2021, had been scheduled in advance, Plaintiff, coaches, players, and parents had made arrangements to attend practice, but APLL and DOES 1 canceled the practice to further hinder, obstruct, and prevent Plaintiff and the A's players from practicing on Kings Field in furtherance of the conspiracy set out above.

167. The A's player's parents questioned, Plaintiff regarding his ability to schedule and hold practices and keep his word regarding practice dates.

168. Once again, APLL and DOES 1, denied Plaintiff and the A's players of the privilege of practicing on the sports facilities located at 6395 Hogan Drive, the same as white citizens.

169. APLL, Hernandez and DOES 1 prevented Plaintiff, the A's players, and the families of the A's players from the full enjoyment and privilege, of practicing on Kings Field; and the full and equal enjoyment of the goods, services facilities, privileges, advantages, and accommodations of LLBB; and APLL, because of their race and color and solely on account that they are African American.

170. DOE 1, Rays players; DOE 2; the Expos players, and their families, were free to practice on Kings Field without hindrance or obstruction from APLL during the 2021 season.

171. The May 21, 2021, practice was canceled for no legitimate reason the day before the A's were scheduled to play a game against the Rays and damaged Plaintiff's reputation.

172. On May 22, 2021, the A's played a baseball game against the Ray's at Kings Field. The A's defeated the Ray's by a score of 24-runs to 2-runs.

173. On or about, May 24, 2021, Plaintiff again asked APLL, if the A's could practice on Kings Field. APLL directed Plaintiff and the A's to use the softball field at Manuel Silva Park.

174. On May 28, 2021, the A's practiced on the softball field at Manuel Silva Park.

175. The softball field at Manuel Silva Park was an inferior facility for the A's to practice on, as compared to Kings Field because:

> (a) the pitcher's mound was designed for softball, not baseball;
>
> (b) the infield on the softball field was completely dirt as compared to Kings Field grass infield;
>
> (c) there were no bases on the field;
>
> (d) Kings Field had bases to use in practice;
>
> (e) after the practice, Plaintiff's shoes and pants were covered with dirt which never happens at Kings Field;
>
> (f) the parents were not familiar with the location of Manuel Silva Field; and
>
> (g) most of APLL major division games were played on Kings Field.

176. Less than half of the A's players showed up for practice at Manuel Silva Park on May 28, 2021.

177. APLL, Hernandez, and DOES 1 through DOES 7 provided Plaintiff and the A's players an inferior practice facility, as compared to the practice facilities used by: DOE 1; the Rays players; DOE 2; the Expos players; and their parents, in furtherance of the object of the racially motivated conspiracy set out above.

178. Plaintiff feared scheduling another practice because, APLL, Hernandez, and DOES 1 were arbitrarily canceling practice and hindering and obstructing the A's from using Kings Field.

179.    The arbitrarily cancellations of practices were causing damage to Plaintiff's business reputation by making Plaintiff appear dishonest, untimely, and incompetent.

180.    The A's parents were becoming angry and annoyed because of the inconsistency of the A's practice schedule.

181.    Plaintiff did not schedule another practice for the rest of the season because APLL and others were hindering and obstructing Plaintiff, and the A's players from conducting practice on Kings Field, by using their authority over 6395 Hogan Drive to intentionally discriminate against Plaintiff because of his race and to damage Plaintiff's reputation.

182.    Defendant, APLL, Hernandez, DOES 1, DOES 2, and DOES 3 damaged Plaintiff's reputation to punish him for attempting to enjoy Kings Field, LLBB, and APLL the same as white citizens.

183.    APLL's, Hernandez's, and DOES 1's, treatment of Plaintiff, the A' players, the family and friends of the A's players, was racial discrimination on its face, because it hindered, obstructed, and denied over two-third of the African American players and one hundred percent of African Americans managers and coaches of the APLL major division from enjoying the full and equal enjoyment of the goods, services, facilities privileges, advantages, and accommodation of LLBB, APLL, and Kings Field the same as are enjoyed by white citizens.

184.    APLL and Parkway Little League had an agreement that allowed the four APLL major division teams to play inter-league games with the Parkway Little League major division team.

185.    Each APLL major division team was scheduled to play four games against the Parkway Little League team.

186.    The A's were the only APLL major division team to defeat the Parkway Little League team during the APLL 2021 season.

187.    On June 5, 2021, the A's and Parkway Little League played a game on Kings Field. The A's defeated the Parkway team.

188.    On June 7, 2021, APLL, Hernandez, DOES 1, DOES 2, and DOES 3 began to fear that Plaintiff, the A's players, and the A's coaches would probably win APLL major division championship and that there was a high probability that an African American manager and an African American coach would be the all-star manager and coach for APLL.

189.    APLL, Hernandez, DOES 1, DOES 2, and DOES 3 began working in concert to change how the major division all-star manager and coaches would be selected, and to force Plaintiff out of LLBB and APLL.

190.    APLL's, Hernandez's, DOES 1's, DOES 2's, and DOES 3's, sole purposes for changing the all-star manager and coach selection procedure were to prevent, Plaintiff and his coach from enjoying the privilege of being the all-star manager and coach of APLL major division, because of their race and color and solely on account that Plaintiff and his coach were African American.

191.    Later, on June 7, 2021, Hernandez informed Plaintiff that he had decided to change the way APLL would select the major division all-star manager and coaches.

192.    Hernandez stated, "it's my prerogative," and informed Plaintiff that DOES 1 would be the all-star manager and DOES 2 would be the coach.

193.    APPL, Hernandez, and Plaintiff had mutually agreed on April 19, 2021, that if the A's won APLL's major division championship that Plaintiff and his coaches would be the all-star manager and coaches.

194. APLL, Hernandez, DOES 1, DOES 2, and DOES 3's selection of APLL major division all-star manager and coaches discriminated against Plaintiff and other African Americans because of their race and color on property owned by the City of Sacramento.

195. No African American manager or coach were selected to APLL major division all-star team during the 2021 season, because of their race and color and solely on account that they are African American.

196. While Plaintiff, his coach, and Steve (Yankee's manager) were being deprived the equal privilege of managing or coaching the all-star team on the grounds of their race and color and solely on account that they are African American, DOES 1, DOES 2 and the coach of the Expos was allowed the privilege of managing and coaching APLL major division all-star team.

197. Also, on June 7, 2021, in furtherance of the conspiracy set out above, APLL, Hernandez, DOES 1, DOES 2, and DOES 3 created an environment at APLL, and 6395 Hogan Drive that was hostile to Plaintiff, the A's players, and the A's coach to force Plaintiff and his coach to quit, or to incite a physical or verbal confrontation with Plaintiff or his coach so that APLL and Hernandez could call the City of Sacramento Police Department (SPD) and have SPD exclude Plaintiff from participating in LLBB and APLL on Kings Field.

198. After June 7, 2021, Plaintiff feared that if he verbally protested APLL and Hernandez's racial discrimination, Hernandez would call SPD and have Plaintiff put off the field, and further damaged Plaintiff's reputation.

199. Later, on June 7, 2021, Hernandez, DOES 1, DOES 2, and DOES 3 began calling A's players and parents to inform them about the all-star manager, coaches, and players selection to further humiliate, annoy, and anger Plaintiff, for the purpose of inciting Plaintiff into a verbal

1    or physical confrontation so that Defendants could call SPD and exclude Plaintiff from 6395
2    Hogan Drive.

3    200.    The phone calls were placed on June 7, 2021, distracted Plaintiff and the A's players before
4    they played the Expos the next day.

5    201.    On April 19, 2021, APLL and its President and Plaintiff had mutually agreed that if
6    Plaintiff, the coaches, and the A's players, won the APLL major division championship, that
7
     Plaintiff his coaches would have the privilege of being the APLL major division all-star
8
9    manager and coaches.

10   202.    APLL and its President made the agreement with Plaintiff on April 19, 2021, pertaining to
11   how the APLL major division managers and coaches would be selected to induce Plaintiff into
12   managing the APLL major division A's.

13   203.    Plaintiff would not have agreed to manage APLL major division A's during the 2021 Little
14   League baseball season, without APLL, and its President's promise made on April 19, 2021.
15
16   204.    Plaintiff agreed and accepted APLL's and its president's offer made on April 19, 2021, and
17   had a full expectation that APLL and its president would keep their promise.

18   205.    Plaintiff relied on APLL's and its president's promise and spent over one hundred unpaid
19   hours as manager of the A's instead of working at his business, spending time with his family,
20   or working on other important issues in his community.

21   206.    Plaintiff relied on APLL's and its president's promise made on April 19, 2021, and used
22   his resources to transport A's players to and from practices, and games, and to purchase snacks
23
     for the players.
24

25
26
27
28

207.    Plaintiff also relied on APLL's and its president's promise made on April 19, 2021, and told the A's players and their parents how APLL would choose the manager and coaches of the major division all-star team.

208.    APLL and its president and Plaintiff were all obligated to each other, with reciprocal rights to demand performance of what was promised to each other on April 19, 2021.

209.    APLL and its president were obligated by contract to perform their promise made to Plaintiff on April 19, 2021.

210.    APLL and its president breached the April 19, 2021 contract with Plaintiff when, they selected the major division all-star manager and coaches on June 7, 2021, before the APLL major division championship was decided.

211.    June 7, 2021, was not the only time that APLL and its president breached an agreement with Plaintiff during the 2021 season.

212.    APLL and Hernandez also breached the agreement with Plaintiff when they failed to: provide Plaintiff and his son with the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of LLBB, APLL, and the sports arenas located at 6395 Hogan Drive that Plaintiff and his son had paid a fee to enjoy; and keep their promise pertaining to the A's practicing on Kings Field during the 2021 Little League season.

213.    APLL and its president breached their contracts made with Plaintiff on June 7, 2021, and other days because of Plaintiff's race and color and solely on the grounds that Plaintiff is African American.

214.    Later, on June 7, 2021, APLL, Hernandez, DOES 1, DOES 2, and DOES 3 worked in concert to call some A's players and their parents with the intent to damage Plaintiff's reputation, in furtherance of the conspiracies set out above.

215.   When APLL, Hernandez, DOES 1, DOES 2, and DOES 3 conspired to call the A's players and their parents on June 7, 2021 and announced the all-star manager and coaches had been selected, APLL constructively breached the promise APLL and its president made to Plaintiff, on April 19, 2021.

216.   Plaintiff had told the A's players and parents the agreement APLL and its president had made with Plaintiff, on April 19, 2021.

217.   There was no way for A's parents to know whether Plaintiff lied to them regarding the all-star major division manager and coaches' selection, or if Plaintiff had committed some dastardly act that disqualified him from the APLL 2021 major league all-star manager position.

218.   The phone calls made to A's players, and their families on June 7, 2020, made Plaintiff appear to be dishonest, shady, and incompetent and thereby caused damage to Plaintiff's reputation.

219.   Plaintiff had not lied to the A's players and their parents about the agreement APLL and its president had made with Plaintiff on April 19, 2021, regarding the selection of managers and coaches for the APLL major division all-star team.

220.   Plaintiff had not committed any act which would disqualify him from being the APLL all-star manager for the 2021 Little League season.

221.   The calls made to the A's players, and their parents on June 7, 2021, directly contradicted the information that Plaintiff had given the players and parents of the A's and caused Plaintiff to feel humiliation, embarrassment, and anger.

222.   On June 7, 2021, APLL, Hernandez, DOES 1, DOES 2, and DOES 3 began conspiring to incite Plaintiff into a verbal or physical conflict so that they could call SPD and have SPD force, Plaintiff away from LLBB, APLL, and 6395 Hogan Drive.

223.    After, June 7, 2021, Plaintiff began to feel fear and anxiety every time he thought about LLBB, APLL or had to participate in a game on Kings field.

224.    Also, after June 7, 2021, Plaintiff feared for his safety every time he was at Kings Field, because of Hernandez, DOES 1, DOES 2, and DOES 3's contempt shown toward Plaintiff and his son, the contempt they were showing to the Federal and State Civil Rights statutes, and the contempt they were showing toward the rules of LLBB.

225.    Plaintiff felt intimidated because APLL, Hernandez, DOES 1, DOES 2, and DOES 3 were displaying total contempt for the United States and the State of California Civil Rights statutes and the rules of LLBB and Plaintiff feared that DOES 1 and DOES 3 may resort to violence.

226.    On June 8, 2021, the A's played a baseball game against the Expos at Kings Field.

227.    Plaintiff felt extreme humiliation and anxiety and did not want to be at Kings Field on June 8, 2021. Winning the game was not a high priority.

228.    The only reason Plaintiff put himself through the humiliation, anxiety, and anguish was his obligation to the A's players and their families and to protect his business reputation from Hernandez, DOE 1, DOE 2, and DOE 3 malicious attacks on Plaintiff's character.

229.    On June 8, 2021, the Expos play at least two players against the A's that were over the LLBB 13-year-old age limit in violation of the rules of LLBB.

230.    The two Expos players over 13 years old that played on June 8, 2021, were the only reason the Expos had defeated the A's in previous games during the 2021 season.

231.    The Expos defeated the A's on June 8, 2021, by one run.

232.    After the game on June 8, 2021, Plaintiff felt fear and humiliation when he left the dugout and wanted to get away from 6395 Hogan Drive as fast as possible.

233.    On June 13, 2021, the A's played the Yankee's on Kings Field. DOES 1 and DOES 3 (the vice president of APLL) were present at the game that day.

234.    In furtherance of the object of the conspiracy set forth in this complaint, DOES 1 and DOES 3 interjected themselves into the *A's Yankees* game to further intimidate and humiliate Plaintiff and his coach and to cause damage to Plaintiff's reputation.

235.    DOE 1, and DOE 2's directed anger and contempt towards Plaintiff's son (the catcher) and the pitcher (A's coach's son) to incite Plaintiff and his coach into a physical or verbal confrontation so that APLL could call the SPD and use violence, threats of violence, threats of arrest, and arrest to force Plaintiff off Kings Filed and out of the league.

236.    During the game between the A's and the Yankees on June 13, 2021, Plaintiff made a pitching change. DOES 1 and DOES 3 interjected themselves into the game and stopped the game.

237.    DOES 1 and DOES 3 then made the false claims that Plaintiff was cheating, when in fact the pitching change was within the rules.

238.    DOES 1 and DOES 3 were not participants in the game between the A's and the Yankees and according to LLBB rules they could not interfere with the game and question Plaintiff's decision to make a player change.

239.    DOES 1 and DOES 3 interjected themselves into the *A's vs. Yankees* game to harass, intimidate, annoy Plaintiff, and cause Plaintiff emotional distress in furtherance of the object of the conspiracy set out above.

240.    APLL, DOES 1, and DOE 3 interjecting themselves in the game between the A's and Yankees and caused, Plaintiff emotional distress and thereby prevented Plaintiff from enjoying

1    the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and

2    accommodations of LLBB, APLL, and Kings Field as is enjoyed by white citizens.

3    241.    At no time during the baseball season did the vice president of APLL and DOES 3 stop a

4    game and accuse the Expos of cheating by playing two players over the age of 13-years old in

5    violation of the rules of LLBB, or falsely accuse the Expos or the Rays of cheating.

6
7    242.    The false verbal statements made by DOES 1 and DOES 3 in front of players managers,

8    coaches, and spectators, combined with canceling practices without cause or reason and the

9    phone calls made June 7, 2021, to the A's players and their parents damaged Plaintiff's

10    reputation.

11    243.    On June 13, 2021, after holding up the game for approximately seven minutes, DOES 1

12    and DOES 3 admitted that the pitching change Plaintiff made was within the rules.

13    244.    Plaintiff no longer wanted to manage APLL games on Kings Field, because Plaintiff feared

14    for his safety.

15
16    245.    Also, during the time that, APLL, DOES 1, and the vice president of APLL were falsely

17    accusing Plaintiff of cheating. Plaintiff and the A's coaches, players, and the players' families

18    were being deprived of their rights; to the full and equal enjoyment of the goods, service,

19    facilities, advantages, and accommodation of LLBB, APLL, and Kings Field as are enjoyed

20    by white citizens; and to the full and equal accommodations, advantages, facilities, privileges,

21    and services in all business establishments of every kind whatsoever, in the State of California.

22    246.    After the A's and Yankees game, while Plaintiff and his 12-year-old son were driving home

23    Plaintiff's son asked Plaintiff, "Why do they hate us so much?" Plaintiff felt anger.

24
25    247.    On June 16, 2021, the A's had a scheduled game against the Rays at 5:30 p.m.

26
27
28

*McGee's Complaint*                                                                                      42

248.    On June 16, 2021, Plaintiff suffered anxiety from the time he woke up in the morning until it was time to drive to Kings Field at 4:30 p.m.

249.    On June 16, 2021, Plaintiff was unable to work at his business as a result of the anxiety and emotional distress he was experiencing as a result of APLL, Hernandez, DOES 1, DOES 2, and DOES 3 conspiracies to damage his reputation.

250.    After June 7, 2021, Plaintiff did not want to participate in APLL or be near 6395 Hogan Drive.

251.    Plaintiff felt obligated to the A's players and their families to participate in the game on June 16, 2021.

252.    Plaintiff also needed to protect his reputation in the community against APLL's, Hernandez's, DOE 1's, DOE 2's, and DOE 3's malicious attack on his reputation.

253.    Later, on June 16, 2021, while Plaintiff and his son were driving to the game, Plaintiff experienced extreme anxiety, fear, and emotional distress.

254.    On June 16, 2021, while Plaintiff was driving to 6395 Hogan Drive to play a game against the Rays, Plaintiff pulled his car over and told his son that they were going back home and that he was not going to participate anymore in APLL.

255.    Also on June 16, 2021, Plaintiff's son insisted that Plaintiff participated in the game between the A's and the Rays.

256.    Plaintiff agreed reluctantly with his son and decided to participate in the game between the A's and the Rays and they continued their way to 6395 Hogan Drive.

257.    Plaintiff and his son arrive at Kings Filed on June 16, 2021, at approximately 5:30 P.M. Plaintiff did not have any time to prepare the team before the game.

258.    The A's defeat the Rays on June 16, 2021, by a score of 15 runs to 2 runs.

259.   On June 20, 2021, the A's played the Expos in the last game of the season. If the Expos defeated the A's in the game, the Expos would win the APLL major division championships.

260.   During the game on June 20, 2021, the Expos played at least two players on their team over 13-years old in violation of LLBB rules.

261.   During the game on June 20, 2021, DOES 2 (the Expos manager) got angry because the A's were winning. DOES 2 became so belligerent toward the umpire that the umpire ejected him from the game.

262.   After being ejected from the game on June 20, 2021, DOES 2 left the dugout walked through the stands in front of the parents, spectators, and children complaining he was angry because he "wanted what was best for the kids". DOES 2 used the terms, "fuck" "shit" and "damn" several times in several tenses in front of parents, children, and other spectators.

263.   Also, on June 20, 2021, at Kings Field, the A's defeated the Expos.

264.   After the game on June 20, 2021, the President of APLL, the Vice President of APLL, DOES 1 and DOES 2, huddled up in front of the Expo's dugout for approximately 14 minutes conspiring on how to ensure themselves the Expos would win the APLL major division championship.

265.   Approximately 14 minutes later the President of APLL approached Plaintiff and his coaches and told Plaintiff that he had talked it over with the Vice President, DOES 1, and DOES 2 and they had decided that although by LLBB rule DOES 2 should be suspended for the next two playoff games for being ejected from the game, that they agreed that DOES 2 would manage the next playoff game from the inside dugout.

266. APLL, its president, its vice president, DOES 1 and DOES 2 deliberately violated LLBB rules and allowed DOE 2 to manage the next game on June 21, 2021, in furtherance of the object conspiracy set out above.

267. On June 21, 2021, the A's and Expos played a playoff game to determine the championship of the major division. If the A's beat the Expos there would be another playoff game.

268. The Expos played at least two players over 13-years old in violation of LLBB rules when they played the game against the A's on June 21, 2021.

269. DOES 2 managed the playoff game between the A's and the Expos from inside the dugout on June 21, 2021, in violation of LLBB rules.

270. On June 21, 2021, the Expos defeated the A's in extra innings by one run.

271. After June 21, 2021, Plaintiff did not want to be involved with APLL, Hernandez, DOES 1, DOES 2, and DOES 3 anymore.

272. On July 1, 2021, APLL held its closing ceremonies at 6395 Hogan Drive for players, managers, coaches, and parents.

273. Plaintiff notified all the A's players and parents of the time and date of the closing ceremonies and notified the parents to bring a side dish to the potluck.

274. Also, on July 1, 2021, Plaintiff notified A's parents that he would not attend the closing ceremonies.

275. On July 1, 2021, only two players from the major division A's attended APLL closing ceremonies.

276. No African American A's players or their parents attended APLL closing ceremonies on July 1, 2021.

277.   The reason Plaintiff did not attend APLL closing ceremonies on July 1, 2021, was because APLL, Hernandez, DOES 1, DOES 2, and DOES 3 had conspired to create a hostile environment at APLL that caused Plaintiff to feel intimidated, threatened humiliated, annoyed, and angry, when Plaintiff was at 6395 Hogan Drive, and Plaintiff did not want anything to do with LLBB, APLL, or 6395 Hogan Drive.

278.   Plaintiff wanted to avoid feeling intimidated, threatened humiliated, annoyed, and angry on July 1, 2021, at the closing ceremonies at 6395 Hogan Drive and therefore he chose not to go.

279.   APLL, Hernandez, DOES 1, DOES 2, and DOES 3 conspired to use intimidation to prevent Plaintiff from attending APLL closing ceremonies on July 1, 2021, and therefore deprived Plaintiff of the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of LLBB, APLL, and the property located at 6395 Hogan Drive because of his race and solely on the grounds that Plaintiff is African American.

280.   Later on, July 1, 2021, Plaintiff received a text message from a mother of the A's team which read, "How embarrassing only 2 kids."

281.   During the three prior years, Plaintiff had managed teams in APLL minor division, in which the mother that text Plaintiff on July 1, 2021, had two children and three of her grandchildren playing for Plaintiff.

282.   That same mother had also asked Plaintiff to have her son and daughter play with the major division A's for the 2021 season.

283.   As a direct result of the conspiracy set out above Plaintiff's reputation with that mother was damaged.

284.    On or around July 14, 2021, APLL major division all-star team participated in a tournament which was the first step on the course to the LLBB World Series.

285.    Plaintiff was deprived of his right to contract as the APLL major division all-star manager in the tournament because of his race and color and solely on account that his is African American.

286.    APLL, Hernandez, DOES 1, DOES 2, and DOES 3 used 6395 Hogan Drive to violated Plaintiff and other persons' civil rights during the 2021 APLL season.

287.    APLL, Hernandez, DOES 1, DOES 2 and DOES 3's racially motivated conspiracy placed Plaintiff in a situation to: (1) either protest Defendants' violation of his rights and have Defendants call SPD and subject himself to violence and threats of arrest and arrest; or (2) to quit APLL and LLBB before the end of the 2021 little league season and cause further damage to his reputation with the players, coaches, and parents of APLL.

288.    From April 2021, until July 1, 2021, Plaintiff was threatened, and coerced into not protesting the discriminatory treatment directed toward Plaintiff and the A's player by APLL, Hernandez, DOES 1, DOES 2, and DOES 3.

289.    APLL, Hernandez, DOES 1, DOES 2, and DOES 3 did not pay any money or any other consideration for Plaintiff's time and resources used to support LLBB and APLL during the 2021 little league season.

290.    LLBB and APLL used Plaintiff's time and resources without pay or consideration to aid themselves in putting on the Little League World Series while earning $25 million in a television contract.

291.    LLBB, APLL, Hernandez, DOES 1, DOES 2, and DOES 3 used intimidation and threats to Plaintiff's reputation to obtain Plaintiff's unpaid labor and to pursue their personal and business objective and to earn money from a $25,000,000.00 television deal.

292.    LLBB, APLL, Hernandez, DOES 1, DOES 2, and DOES 3's used fraud and the resources of the City of Sacramento to place Plaintiff in a state of involuntary servitude.

293.    APLL, Hernandez, DOES 1, DOES 2, and DOES 3's actions set forth above violated the Thirteenth Amendment to the United States Constitution and Plaintiff's rights secured to him by the Fourteenth Amendment to the United States Constitution.

294.    The June 7, 2021, breach of contract was not the only time Plaintiff experienced a local Little League breach of contract regarding the selection of an all-star manager and coach. FLLB treated Plaintiff in a similar manner in 2016.

295.    The reason APLL, Hernandez, DOES 1, DOES 2, DOES 3, and LLBB acted so recklessly as set out above, is because a person's only remedy to stop the unconstitutional conduct set out above is through the courts and most people participating in APLL have neither the time nor the resource to defend against the actions set forth above.

296.    APLL, Hernandez, DOES 1, DOES 2, DOES 3, and LLBB's conduct was likely criminal.

297.    APLL, Hernandez, DOES 1, DOES 2, and DOES 3 used the authority and power of the City of Sacramento to likely violate Title 18 U.S.C. §§241, 242, 245, and 1589, and to force Plaintiff to work without compensation.

298.    LLBB, APLL, and the City conspired to knowingly obtain the labor and services of Plaintiff by means of a scheme, plan and a pattern intended to cause Plaintiff to believe that if Plaintiff did not perform such labor or services that Plaintiff would suffer serious harm.

299.    Plaintiff was so intimidated by APLL, Hernandez, DOES 1, DOES 2, DOES 3's, and LLBB's ability to call SPD to 6395 Hogan Drive and their willingness to be dishonest that he chose not to protest against APLL's and LLBB's unconstitutional conduct.

300.    All APLL, Hernandez, and LLBB had to do was to call SPD and request that the SPD remove Plaintiff from the field and SPD would without question use threats of violence, violence, threats of arrest, and arrest to remove Plaintiff from 6395 Hogan Drive.

301.    APLL, Hernandez, DOES 1, DOES 2, and DOES 3 and other Little Leagues across the country will continue to use the unlawful tactics set out above because they can get away with it.

302.    APLL, Hernandez, DOES 1, DOES 2, DOES 3, and LLBB used properties owned and operated by the City of Sacramento and the officers, guns, batons, and other dangerous weapons of SPD to force Plaintiff to work and to use his resources without pay or any consideration for Plaintiff's time and resources.

303.    Plaintiff would not have paid a fee to APLL and LLBB, if Plaintiff knew that APLL, Hernandez, DOES 1, DOES 2, and DOES 3 would put Plaintiff and his son through the intimidation and humiliation as alleged above.

304.    At all times relative to the facts set out in this complaint, Hernandez, DOES 1 through DOES 7 operated Airport Little League Baseball Inc. (APLL) while having actual knowledge that APLL was in a suspended status with the California Secretary of State.

305.    APLL, LLBB, Hernandez, and DOES 1 through DOES 7 conspired to intentionally deceive Plaintiff to believe APLL was operating a legitimate California Corporation when in fact APLL, Hernandez, and DOES 1 through DOES 7 and LLBB were operating APLL illegally.

1  APLL, Hernandez, and DOES 1 through DOES 7 had actual knowledge that APLL was in a

2  suspended status with the California Secretary of State.

3  306.   Plaintiff paid a fee to APLL and LLBB because he believed that APLL and LLBB were

4  legitimate businesses operations when in fact they are not.

5  307.   On September 14, 2021, Plaintiff filed the original Complaint in this action, entitled *McGee*

6  *v. Airport Little League et. al.* No 2:21-cv-1645-DAD-DB-PS, alleging Defendants were

7  engaged in a conspiracy to deprive Plaintiff of his rights secured by the Fourteenth

8  Amendment, Title 42 U.S.C. §§1981, 1982, 2000a, 2000d, and Cal. Civ Code §51.

9

10  308.   On September 24, 2021, Plaintiff served Defendants APLL and Hernandez the summons

11  and complaint issued in this action.

12  309.   On October 4, 2021, Plaintiff filed a claim for personal injury with the City of Sacramento

13  pertaining to the allegations set forth above and attached a copy of the original Complaint filed

14  in *McGee v. Airport Little League et. al.*

15

16  310.   On October 18, 2021, APPL and Hernandez failed to respond to the summons as required

17  by Federal Rules of Civil Procedure, and Plaintiff requested the Clerk to enter a default against

18  the original Defendants.

19  311.   On October 19, 2021, the Clerk of this Court entered a default of APLL and Hernandez for

20  failure to respond to the summons in *McGee v. Airport Little League et. al.* Defendants APLL

21  and Hernandez are in default.

22  312.   On November 4, 2021, the City rejected the claim that Plaintiff field with the City on

23  October 4, 2021, as without merit.

24

25  313.   Defendants, the City, Chan, and DOES 8 through 17, received the copy of the original

26  complaint filed in *McGee v. Airport Little League et. al.* and read the complaint, and in

27

28

furtherance of the racially motivated conspiracy to violate Plaintiff's civil rights made the decision to aid and incite APLL, Hernandez, and DOES 1 through 7 to continue to use the property located at 6395 Hogan Drive to intentionally deprive Plaintiff of his federal constitutional rights.

314.    In furtherance of the object of "the racially motivated conspiracy," the City, Chan, and DOES 8 through 17 worked in concert with LLBB, APLL, Hernandez, DOES 1 though DOES 7 to use intimidation, threats to Plaintiff's reputation, threats of violence, and threats of arrest to exclude Plaintiff and his son from participating in LLBB and APLL Fall Ball Program during the months of September 2021 through November 2021.

315.    Also, the City and Chan executed the City's policy when they made the decision to aid and incite APLL, Hernandez, and LLBB to discriminate against Plaintiff in places of public accommodation.

316.    In furtherance of the object of the conspiracy, on January 20, 2023 LIC filed papers in this Court for the sole purpose of delaying the proceedings in the action entitled *McGee v. Airport Little League et. al.* and causing unnecessary cost to Plaintiff.

317.    If not restrained by this Court, Defendants APLL, LLBB, Hernandez, LIC, DOES 1 through 7, and DOES 8 through 14 and other defendants will continue to use terrorism, intimidation, threats to Plaintiff's reputation, threats of violence, and threats of arrest to exclude Plaintiff and his son from participation in APLL, LLBB, and from enjoying the sports arena located at 6395 Hogan Drive and other properties owned by the City on account of their race and color and solely on account that Plaintiff and other person are African American.

318.    The City, Chan, and DOES 8 through DOES 14 after having actual knowledge that LLBB, APLL, Hernandez, LIC, and DOES 1 through 7 were using the sports arenas located at 6395

Hogan Drive to intentionally deprive Plaintiff of his civil rights, on the grounds of his race and color, made a decision to allow LLBB, APLL, Hernandez, and DOES 1 though DOES 7 to continue to use the sports arenas located at 6395 Hogan Drive to deprive Plaintiff of his civil rights, in furtherance of the racially motivated conspiracy set out in prior action before this Court and to further execute the City's Policy.

319.    Plaintiff and his son had participated in LLBB and APLL Fall Ball Program for the previous 3 seasons but not in the year 2021, because LLBB, APLL and DOES 1 though DOES 7, the City, and Chan were conspiring to use intimidation, threats to Plaintiff's business reputation, threats of violence and threats of arrest to exclude them from the league, and the property located at 6395 Hogan Drive on the grounds of their race, and color, and solely on account that they are African American.

320.    The City, Chan, and DOES 8 through DOES 14 have actual knowledge that APLL, LLBB, Hernandez, DOES 1 though DOES 7 are to using intimidation, threats to Plaintiff's business reputation, threats of violence and threats of arrest to deprive Plaintiff and his son the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of Little League Baseball, Inc., Airport Little League Baseball, Inc., and the sports arena located at 6395 Hogan Drive on the grounds of their race, and color and solely on account that they are African American.

321.    The City, Chan, DOES 8 through 14 have actual knowledge that APLL, LLBB, Hernandez, and DOES 1 though DOES 7 are conspiring to use the property located at 6395 Hogan Drive to deprive Plaintiff of his right to: make and enforce contracts the same as white citizens; the full and equal benefit of all laws and proceedings for the security of his person and property as is enjoyed by white citizens; hold property the same as white citizens; and the full and equal

accommodations, advantages, facilities, privileges, and services of all business establishments in the State of California.

322.    The City, Chan and DOES 8 through DOES 14 had a duty to see that the laws were uniformly enforced in the City of Sacramento, and to prevent Defendants from depriving Plaintiff and other African Americans of their federal constitutional rights.

323.    Defendants the City, Chan, DOES 8 through 14 had the power to prevent the wrongful acts alleged in the Complaint from continually being committed but made the decision to neglect and refuse to do so, in furtherance of the object of the racially motivated conspiracy set out in this Court.

324.    Instead of seeing that the laws in the City of Sacramento are enforced in the City of Sacramento and investigating the racially motivated crimes Plaintiff alleged Defendants LLBB, APLL, Hernandez, LIC, and DOES 1 through DOES 7 were committing against Plaintiff, the City and Chan made the decision to continue using the property located at 6395 Hogan Drive to continue to deprive Plaintiff of his civil rights, in furtherance, of the racially motivated conspiracy.

325.    The City of Sacramento, Chan, and DOES 8 through 17, made the decision to adopt, implement, promulgate, and executed "the City's policy," and aided and incited LLBB, APLL, Hernandez, and DOES 1 through DOES 7 to continue to use the sports arenas located at 6395 Hogan Drive to deprive Plaintiff of his Civil Rights.

326.    The City and Chan neglected and refused to prevent the deprivations of Plaintiff's constitutional rights and the federal crimes being committed against Plaintiff or to investigate the crimes that Plaintiff alleged were being committed against him in *McGee v. Airport Little*

1
2

*League et. al.* in furtherance of the racially motivated conspiracy to violate Plaintiff's civil rights.

3   327.   The City of Sacramento, Chan, DOES 8 through 14, made the decision to conspire with,
4   LLBB, APLL, Hernandez, LIC, and DOES 1 through DOES 7 to use intimidation by threats
5   to Plaintiff's reputation, threats of violence, and threats of arrest to exclude Plaintiff and his
6
7   son from participating in the affairs of LLBB, APLL, and from enjoying the sports arenas
8   located at 6395 Hogan Drive on the grounds of his race and color and solely on account that
9   Plaintiff is African American and thereby deprived Plaintiff of his civil rights.

10   328.   LLBB, APLL, Hernandez, LIC, DOES 1 through DOES 7, the City, Chan, and DOES 8
11   through DOES 14 were acting under the color of state law when they made the decision
12   conspire to use intimidation by threats to Plaintiff's business reputation, threats of violence,
13   and threats of arrest to exclude Plaintiff and his son from participating in the affairs of LLBB,
14   and APLL, and excluded them from the sports arenas located at 6395 Hogan Drive on the
15   grounds of their race and color and solely on account that they are African American and
16   thereby deprived Plaintiff of his civil rights.
17

18   329.   The City's, Chan's and DOES 8 through DOES 14's decision to enter into APLL's
19   conspiracy and use intimidation by threats to Plaintiff's reputation, threats of violence, and
20   threats of arrest to exclude Plaintiff from participating in LLBB, and APLL and from enjoying
21   the sports arenas located at 6395 Hogan Drive on the grounds of his race; and to neglect and
22   refuse to prevent Defendants from committing the unconstitutional acts alleged in *McGee v.*
23   *Airport Little League et. al.* was made pursuant the City's policy, and represents a longstanding
24   practice and custom which constitutes the standard operating procedure of the City of
25   Sacramento.
26

27
28

330. The City's policy is deficient because the policy when implemented, violated Plaintiff's Fourteenth Amendment rights, and directly contradicted the public policy of the United States.

331.  The City's policy was a direct cause of Plaintiff and his son being excluded from participation in LLBB, APLL, and from enjoying the sports arenas located at 6395 Hogan Drive, and deprived Plaintiff and his family of their civil rights.

332.  When the City and Chan made the decision to execute the City's policy it was so obvious that a constitutional injury was likely to occur, because the City's policy is unconstitutional on its face, and in fact several constitutional injuries did occur.

333.  The City, Chan, and DOES 8 though DOES 14 decisions to, implement and execute the City's policy amounted to deliberate indifference to Plaintiff's civil rights, because the City's policy is unconstitutional on its face.

334.  The decisions to adopt, implement, promulgate, and execute the City's policy as set forth above likely violated Title 18 U.S.C. §§ 241, 242, and 245, and is likely criminal.

335.  Also, the City's policy and the City's failure to adopt clear policies and the failure to properly train the City Manager and other policy makers, was a direct and proximate cause of the constitutional deprivations suffered by Plaintiff and the damages he incurred.

336.  The need for a different course of action was so obvious that the City and the City Manager Howard Chan's adamant refusal to take action to prevent APLL, Hernandez, and LLBB from depriving Plaintiff of his civil rights amounted to deliberate indifference to Plaintiff's and his family's constitutional rights.

337.  Defendant Wood had actual knowledge that APLL, Hernandez, LLBB, the City, are conspiring to deprive Plaintiff of his civil rights and refused and neglected to certify this case

*McGee's Complaint*                                                                                  55

as of general public importance in furtherance of the racially motivated conspiracy to deprive Plaintiff of his civil rights.

338.    Instead of Woods advising the City and Chan to stop participating in the racially motivated conspiracy, Woods used the office of the City Attorney of Sacramento to aid and incite the City and Chan to continue to deprive Plaintiff of his civil rights.

339.    On November 16, 2021, December 17, 2021, February 16, 2022, April 22, 2022, July 25, 2022, and September 27, 2022 Defendants LIC, APLL, Hernandez, Wilson Elser Moskowitz Edelman & Decker LLP, Andrew Stewart, Michelle DeMiao, and Benson Garrett conspired to make appearances, file motions, replied to motions, made requests for APLL in *McGee v. Airport Little League et. al.* in violation of California Taxation Code §§23301 and 19719 for the purpose of delaying the administration of justice in that case and to increase the cost of litigating that case.

## INJUNCTION

340.    Plaintiff repeats and re-alleges paragraphs 1 through 339 the Complaint as paragraphs 1 through 339 of his requests for injunctive relief and hereby incorporates them as though fully set forth herein.

### a. *Plaintiff is Likely to Prevail on the Merits of His Claims.*

341.    Each Defendant named in this action was acting under the color of state law, participating in the vast racially motivated conspiracy, using programs and activities receiving federal financial assistance from the United States and used property owned by the State of California, its political subdivisions, and municipalities when they deprive Plaintiff and other African Americans of their rights to: make and enforce contracts the same as white citizens; the full and equal benefit of all laws and proceedings for the security of their person and

1    property as is enjoyed by white citizens; hold property the same as white citizens; the full and

2    equal accommodation, advantages, facilities, privileges and services of all business

3    establishment of any kind whatsoever in the State of California; and be free from intimidation

4    by threats of violence because of their race in all business establishments in the State of

5    California in violation of Title 42 U.S.C. §§ 1981, 1982, 1983, 1985, 1986, 2000a, 2000d, Title

6    18 U.S.C. §§ 1961 and 1962, and *Cal. Civil Code §§ 51 and 52*.

7

8    342.   As set out in this Complaint, Plaintiff is likely to prevail on the merits of his claims against

9    the State Defendants, the County Defendants, the Elk Grove Defendants, the Florin Little

10   League Defendants, the MMDD Defendants, the Bridgeport Defendants, the Little League

11   Defendants, and the City Defendants.

12   ## b.  Plaintiff will Suffer Irreparable Harm if the Temporary Restraining Order

13   ## or Preliminary Injunction is not Granted.

14   343.   October 1, 2023, in furtherance of the State Defendants, the County Defendants, the Florin

15   Little League Defendants, the Elk Grove Defendants, the City of Sacramento Defendants, the

16

17   MMDD Defendants, the Little League Defendants, the City Defendants conspiracy as set out

18   in this Complaint, the County sent Plaintiff a letter through the United States mail entitled

19   "Account Summary" requesting that Plaintiff pay the County $7,517.00 as a punish Plaintiff

20   for taking action and participating in the action entitled *McGee v. Wilson* in the District Court.

21   The action named the State Defendants, the County Defendants, the Elk Grove Defendants,

22   and the Florin Little League Defendants, as Defendants.

23

24   344.   On November 1, 2023, the County of Sacramento sent another "Account Summary"

25   through the United States mail meant to intimidate and retaliate against Plaintiff for

26   participating in *McGee v. Wilson*. The letter demanded Plaintiff pay the Conty $7,517.00, and

27

28

1    caused Plaintiff to feel intimidation. The November 1, 2023 letter from the County Defendants

2    was sent to exact revenge for Plaintiff filing *McGee v. Wilson* in the District Court. On

3    December 1, 2023 the County send Plaintiff another "Account Summary" meant to further

4    intimidate and retaliate against Plaintiff for taking action and participating in the action *McGee*

5    *v. Wilson* to secure Plaintiff's civil rights in the District Court.

6    345.    Plaintiff will continue to suffer irreparable harm if the temporary restraining order or

7    preliminary injunction is not granted. The Defendants are using the States,' the County's, the

8    EGUSD's, Elk Grove's, and Citrus Heights' officers, policies, and law enforcement programs

9    and activities to deprive Plaintiff of his rights secured by the Constitution and laws of the

10    United States and the State of California, specifically the Fourteenth Amendment to the United

11    States Constitution, Title 42 U.S.C. §§1981, 1982, 2000a, 2000d, and California Civil Code

12    §51. "The Defendants" are;

13        a.    intimidating and retaliating against Plaintiff for taking action and participating in

14            the action entitled *McGee v. Wilson* Civ.-S-98-1026-FCD-PAN-PS:

15        b.    searching, detaining, or harassing Plaintiff;

16        c.    withholding and interfering with Plaintiff's real and personal property;

17        d.    refusing to enter judgments in Plaintiff's favor in various unlawful detainer actions;

18        e.    maintaining false criminal records;

19        f.    interfering with Plaintiff's liquor license for his business;

20        g.    withholding Plaintiff's handgun implementing a general policy and conspiracy to
            discriminate against African Americans;

21        h.    using government entities and public monies to break the laws of the United States

i.  refusing and neglecting to see to it the laws of the United States and the State of California are faithfully executed and uniformly enforced in the State of California as they relate to Plaintiff and other African Americans;

j.  using property owned by the State of California, its political subdivisions, its municipalities, and other public property to discriminate against Plaintiff and other African Americans at "places of public accommodations" as defined by *Title 42 U.S.C. §2000a* and "business establishments" as defined by *Cal. Civ. Code §51* because of their race and color and solely on account that they are African American;

k.  using law enforcement programs and activities receiving federal financial assistance from the United States to discriminate against Plaintiff and other African Americans because of their race and color and solely on account that they are African Americans;

l.  executing the State's, the County's, Elk Grove's, Citrus Heights,' and the City of Sacramento's policy of Discriminating Against African Americans on the Grounds of their Race in Law Enforcement Programs and Activities as it related to Plaintiff and other African Americans;

m. refusing or neglecting to certify the case of *McGee v. Airport Little League et. al.* as and this case of general public importance as prescribed in Cal. Civ. Code §52(c) and (d);

n.  leasing, permitting, or otherwise allowing LLBB, APLL, and organizations affiliated with LLBB to use property owned and operated by the State of California,

1
2

its: political subdivisions, municipalities, and any other public property in the State

for practices, games, and other activities associated with LLBB.

3  346.  The State of California, it's political subdivisions, and municipalities have refused and

4  neglected to arrest and prosecute persons identified in the case of *McGee v. Airport Little*

5  *League et. al.* other actions in this Court who have likely committed crimes against Plaintiff.

6  347.  If "the Defendants'" conduct as set forth in this Complaint are not restrained Plaintiff will

7  continue to suffer irreparable injury. Plaintiff is entitled to a temporary restraining order or

8  preliminary injunction to enjoin the State of California, it's political subdivisions,

9

10  municipalities, and all persons working in concert with her from using the law enforcement

11  officers, policies, and law enforcement programs and activities to deprive Plaintiff of equal

12  protection under the law, and his civil rights.

13  Conspiracy

14  348.  Also, Plaintiff will suffer irreparable harm if the preliminary injunction or temporary

15  restraining order is not granted to enjoin "the Defendants" from directly or indirectly

16  participating in the racially motivated conspiracy and racketeering activities as set out in this

17  action. The Defendants are right now conspiring to deprive Plaintiff of his rights to:

18

19  i.  to be free from intimidation and retaliation for taking action and participating in the

20  action entitled *McGee v. Wilson et. al.* case no. Civ. S-98-1026-FCD-PAS-PS in the

21  District Court in violation of Title 42 U.S.C. § 2000 et seq.;

22  ii.  make and enforce contracts the same as white citizens in violation of the Fourteenth

23  Amendment and Title 42 U.S.C. §1981;

24

25

26

27

28

*McGee's Complaint*                                                                                           60

iii. the full and equal benefit of all laws and proceedings for the security of Plaintiff's person and property as are enjoyed by white citizens in violation of the Fourteenth Amendment and Title 42 U.S.C. §1981;

iv. the right to own property the same as white citizens in violation of Title 42 U.S.C. §1982;

v. the full and equal enjoyment of the goods, services, facilities, privileges, advantages, accommodations of Little League Baseball Inc., Airport Little League Baseball Inc., and the sports arenas owned by the City of Sacramento because of their race and color and solely on account that they are African American in violation of Title 42 U.S.C. §2000a;

vi. be free from discrimination on the basis of Plaintiff's and others race and color in programs and activities receiving federal financial assistance in violation of Title 42 U.S.C. §2000d; and

vii. the full and equal accommodations, advantages, facilities, privileges, and services of all business establishments in the State of California, without regard to race or color in violation of Cal. Civ. Code §51.

349. "The Defendants" also are conspiring to refused and neglect to arrest and prosecute the person identified in this Complaint who likely committed federal and state crimes to intimidate and retaliate against Plaintiff for taking action and participating in actions to secure Plaintiff's civil rights.

350. There is no remedy this Court can grant Plaintiff that would adequately compensate Plaintiff by monetary damages or any amount of damages that this Court could grant to adequately compensate Plaintiff for being the victim of the vast racially motivated conspiracy

set out in this Complaint and for the loss of his rights secured by the Fourteenth Amendment, Title 42 U.S.C. §§1981, 1982, 2000, and Cal. Civ. Code §51 that are being taken from him at this moment as the result of the Conspiracy.

351.   Plaintiff will continue to suffer irreparable harm. If this Court does not restrain "the Defendants" from continuing to participate in the vast racially motivated conspiracy that is depriving Plaintiff of his civil rights.

### c. The State Defendants, the County Defendants, the Elk Grove Defendants, and the Florin Little League Defendants.

352.   Plaintiff will suffer irreparable harm if a temporary restraining order is not granted to restrain the Defendants from continuing to intimidate and retaliate against Plaintiff by demanding $7,517.00 and attempting to take from Plaintiff $7,517.00 as a punishment for Plaintiff taking action and participating in the action entitled *McGee v. Wilson et. al.* the District Court. If the State of California, her political subdivisions, municipalities, and those working in concert with her are allowed to continue to intimidate and retaliate against Plaintiff by demanding $7,517.00 from Plaintiff, Plaintiff will continue to suffer mental anguish. Plaintiff's business operating budget could be wiped out, Plaintiff's credit rating could be damaged, Plaintiff will not be able to budget for the future, and Plaintiff will suffer mental anguish.

353.   Also, Plaintiff will continue to suffer irreparable harm if a temporary restraining order is not granted to restrain the Defendants from depriving Plaintiff and others of their rights to:

    i.   make and enforce contracts the same as white citizens in violation of the Fourteenth Amendment and Title 42 U.S.C. §1981;

ii. the full and equal benefit of all laws and proceedings for the security of Plaintiff's person and property as are enjoyed by white citizens in violation of the Fourteenth Amendment and Title 42 U.S.C. §1981;

iii. the right to own property the same as white citizens in violation of Title 42 U.S.C. §1982;

iv. the right to own a reputation the same as white citizens in violation of Title 42 U.S.C. §1982;

v. the full and equal enjoyment of the goods, services, facilities, privileges, advantages, accommodations of Little League Baseball Inc., Airport Little League Baseball Inc., and the sports arenas owned by the City of Sacramento in violation of Title 42 U.S.C. §2000a;

vi. be free from discrimination on the basis of Plaintiff's race and color in programs and activities receiving federal financial assistance from the United States in violation of Title 42 U.S.C. §2000d; and

vii. the full and equal accommodations, advantages, facilities, privileges, and services of all business establishments in the State of California without regard to race or color in violation of Cal. Civ. Code §51.

354. One of Plaintiff's hobby is participating in Little League Baseball Inc. with his children. Plaintiff has attempted to participate in LLBB since 1993. When Plaintiff was allowed to participate in Little League Baseball, Plaintiff's years went as follows, in January, Plaintiff began by signing up his son for the league communicating with other parents about the upcoming season and developing a strategy for the upcoming season. In February Plaintiff would start conditioning players and evaluating the players for the upcoming draft. In March,

Plaintiff would participate in a draft and started practicing with his teams. In April through May or June Plaintiff would participate in the Little League Baseball season. In August Plaintiff would take a break and start preparing for the Fall Ball program. In or around September, Plaintiff would start to practice and play Fall Ball and finish in or around November. In December Plaintiff would start preparing for the next season.

355.    Some days Plaintiff would spend hours of his day building strategies for the season, deciding who to choose in the draft and enjoy talking to his sons about strategies. Plaintiff had been on that schedule for 4 years (with exception of the pandemic year 2020) until the year 2021 when Little League Defendants and City Defendants conspired to prevent Plaintiff from enjoying his hobby of participation in LLBB and APLL on the 6395 Hogan Drive sports arena on the grounds of Plaintiff's race and color and solely on account that Plaintiff is African American.

356.    LLBB, the State, the County, EGUSD, FLLB, and the City have created an environment that is hostile to Plaintiff and other African Americans to force Plaintiff and other African Americans to quit LLBB or incite a physical or verbal confrontation with Plaintiff or others so that LLBB members can call local law enforcement and have local law enforcement exclude Plaintiff and others from participating in LLBB. Plaintiff is terrified and feels fear and anxiety when he thinks about participating in LLBB.

357.    As a direct result of "the Defendants'" conspiracy set out in this action, Plaintiff has been and continues to be prevented from enjoying his hobby of participating in LLBB with his family. Plaintiff is suffering irreparable harm by being excluded from enjoying his hobby of participating in LLBB with his son. Plaintiff's son will be too old to participate in LLBB in the

next several years. Every day that goes by that Plaintiff is prevented from participating with his son in LLBB is a loss to Plaintiff that Plaintiff can never get back.

358.     Plaintiff has a strong desire to participate in APLL, LLBB, and on property owned by the City but cannot because the State Defendants, the County Defendants, the EGUSD Defendants, the Florin Little League Defendants, the Little League Defendants, and the City Defendants are preventing it by use of terrorism, intimidation, threats to Plaintiff's business reputation, threats of arrest, arrests, and malicious prosecution.

359.     Plaintiff was too terrified to protest the Little League Defendants and the City Defendants unconstitutional conduct, because the last time Plaintiff protested a little league action, Plaintiff was chased away from a sports arena with threats of violence, arrested at Sheldon High School Sports arena (part of Elk Grove Unified School District), arrest at his place of business, assaulted with a deadly weapon, had false reports published about Plaintiff in a local newspaper, had a sheriff deputy attempt to break Plaintiff's thumb, run out of town and away from his family and business. Plaintiff's business was surrounded by Sheriff deputies and many patrol cars, Plaintiff's home and business was unlawfully searched and seized causing Plaintiff's 12-year-old daughter to vomit on the kitchen table, and Plaintiff was prosecuted for several years for exercising and asserting his federal constitutional rights, at a sports arena. Plaintiff is terrified of protesting LLBB's deprivations of his civil rights.

360.     Plaintiff is also in terrified of encountering the Sacramento Police Department (SPD). Plaintiff is terrified because Plaintiff has read in the Sacramento Bee and heard reports on local television stations about: SPD officers trying to run over an unarmed African American man with their patrol car  when they did not succeed they gunned him down and killed him; SPD's shooting and killing of an unarmed African American man in his grandmother's backyard for

1    holding a cell phone; SPD officers beating an African American man for jay walking; SPD

2    officers shooting a young African American man for hiding under a stairwell. Finally, in 2014,

3    Plaintiff was lawfully driving a car on the streets of the City of Sacramento when SPD and its

4    officers stalked Plaintiff, hunted Plaintiff down, aimed guns at Plaintiff's head, placed Plaintiff

5    in handcuffs, placed Plaintiff in the back of their patrol car, unlawfully searched Plaintiff's car,

6    and released Plaintiff for no legitimate purpose or lawful reason. Plaintiff had not committed

7    any crimes that day, there was no warrant for Plaintiff's arrest that day. Plaintiff had not

8    committed any traffic violations that day. Plaintiff was kidnapped at gun point and put into the

9    back seat of a police car for no lawful purpose. Plaintiff was terrified and feared for his life.

11   361.    A reasonable person standing in Plaintiff's shoes would have been terrorized, intimidated,

12   threatened, coerced into staying away from APLL, LLBB, and the sports arena belonging to

13   the City. The Little League Defendants and the City Defendants willingness to break the law

14   and the City's willingness to threaten to use deadly force on Plaintiff for no legitimate purpose

15   and APLL's and Hernandez's authority to use the SPD, caused Plaintiff to be terrified.

17   362.    Plaintiff has and continues to be terrorized, intimidated, threatened, coerced, and in fear

18   of further participating in the affairs of the Little League Baseball. Plaintiff is being excluded

19   from participating in LLBB and APLL on property owned by the City.

20   363.    It is now December 21, 2023, Plaintiff continues to be deprived of his rights secured by

21   Title 42 U.S.C. §§1981, 1982, 2000a, 2000d and Cal. Civ. Code §51 during the 2023 Little

22   League Baseball seasons. The State Defendants, the County Defendants, the Florin Little

23   League Defendants, the Elk Grove Defendants, and the Little League Defendants, have used

24   terrorism, intimidation, damage to Plaintiff's business reputation, threats to Plaintiff's business

25   reputation, threats of violence, violence, threats of arrest, and arrest to prevent Plaintiff from

1    participating in LLBB. Plaintiff did not participate in APLL's and LLBB's 2021 Fall Ball

2    program and LLBB 2022 and 2023 seasons on the property owned by the City, because

3    Plaintiff feared the Little League Defendant's racially motivated conspiracy could turn violent.

4    364.    Parents and their children, and volunteers in Sacramento California and throughout the

5    United States and its territories can enjoy LLBB, but Plaintiff cannot because Plaintiff is black

6    and solely on account that Plaintiff is African American. Plaintiff is being deprived of equal

7    protection under the law.

8

9    365.    If any persons in the United States and its territories are allowed to continue to participate

10   in LLBB, while LLBB and other Defendants continues to use terrorism, intimidation, threats

11   of violence, threats of arrest to exclude Plaintiff from participating in LLBB, it necessarily

12   deprives Plaintiff of his rights secured by the Fourteenth Amendment, Title 42 U.S.C. §§1981,

13   1982, 2000a, 2000d, and Cal. Civ. Code §51. Plaintiff continues to suffer irreparable harm.

14   Plaintiff and his family do not have equal rights as compared to the persons allowed to

15   participate in LLBB.

16

17   366.    Plaintiff has and continues to suffer irreparable injury. Plaintiff is entitled to a temporary

18   restraining order or preliminary injunction immediately restraining, Defendants Little League

19   Baseball Inc., its board of directors, its officers, attorneys, insurers, agents, regional offices,

20   district offices, leagues, teams, and all persons working in concert with LLBB from holding

21   any games, tournaments, practices, and conditioning sessions in the United States and its

22   territories until LLBB can ensure this Court and Plaintiff that LLBB has plans, procedures,

23   rules, and protocols in place and the right board of directors and officers in place to ensure

24   Plaintiff and other African Americans can enjoy the full and equal enjoyment of the goods,

25

26

27

28

1

2

services, facilities, privileges, advantages, and accommodations of Little League Baseball Inc., its leagues, and affiliates, in the United States and its territories and be safe while participating.

3   367.   There is no remedy this Court can grant Plaintiff that would adequately compensate

4   Plaintiff by monetary damages or any amount of damages that this Court could grant to

5   adequately compensate Plaintiff for being prevented from his rights to be free from

6   intimidation and retaliation for taking action and participating in the action of *McGee v. Wilson*

7

8   *et. al.* in the District Court to secure Plaintiff's civil rights, enjoying the full and equal

9   enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of

10   Little League Baseball Inc. with his family while white citizens similarly situated to Plaintiff

11   are allowed to enjoy LLBB. The conduct of the State Defendants, the County Defendants, the

12   Florin Little League Defendants, the Elk Grove Defendants, MMDD Defendants, the Little

13   League Defendants, and the City Defendants have been and continues to cause irreparable

14   harm to Plaintiff.

15

16   368.   Plaintiff has to sit and wait while the State Defendants, the Little League Defendants, and

17   the City Defendants to continue delaying justice in the case of *McGee v. Airport Little League*

18   *et. al.* by filing papers for the sole purpose of delaying the administration of justice in this case

19   in furtherance of the conspiracy to deprive Plaintiff of his civil rights. The conduct of "the

20   Defendants" must be restrained.

21   369.   As set out above Plaintiff is suffering irreparable harm. If the Defendants are not restrained

22   Plaintiff will continue to suffer irreparable injury.

23

24   **d.  The Balance of Equities Tips in Plaintiff's Favor**

25   370.   The balance of equities tips in Plaintiff's favor with regards to the State Defendants, the

26   County Defendants, the Elk Grove Defendants, and the Florin Little League Defendants

27

28

conspiracy to intimidate and retaliate against Plaintiff by unlawfully demanding and attempting to collect $7,517.00 from Plaintiff for taking action and participating in the action of *McGee v. Wilson et. al.* to secure Plaintiff's civil rights.

371.    The balance of equities tips in Plaintiff's favor with regards to the State of California, her political subdivisions, municipalities, and others working in concert with her because Plaintiff's interest in enforcing his rights secured by the Fourteenth Amendment, Title 42 U.S.C. §§1981, 1982, 2000a, 2000d, and Cal. Civ. Code §51 outweighs "the State's" interest in refusing to:

   i.    see to it the laws in the State of California are faithfully and uniformly enforced and executed as it pertains to Plaintiff and other African Americans;

   ii.   stop using property owned by the State of California, its political subdivisions, and municipalities to discriminate against Plaintiff and other African Americans at places of public accommodation as described by Title 42 U.S.C. §2000a;

   iii.  stop using law enforcement programs and activities receiving federal financial assistance from the United States to discriminate against Plaintiff and other African Americans because of their race and solely on account that they are African Americans in violation of Title 42 U.S.C. §2000d;

   iv.   stop executing the States Defendants, the County Defendants, the Elk Grove Defendants, the EGUSD Defendants, the City Defendants, and the Citrus Heights Defendants' policy of Discriminating Against African Americans On The Grounds Of Their Race In Law Enforcement Programs And Activities in violation of Title 42 U.S.C. §1981; and

v.    stop refusing or neglecting to certify the case of *McGee v. Airport Little League et.*

*al.* and this case as general pubic importance.

372.    Plaintiff's interest in enforcing his rights secured by Title 42 U.S.C. §§1981, 1982, 2000a,

2000d, and Cal. Civ. Code §51 outweigh the State of California and Little League Baseball

Inc.'s interest in working in concert to operating a youth baseball and softball league that

discriminates against African Americans on the grounds of race and color in places of public

accommodation, and knowingly participating in a scheme which is engaged in unlawfully

obtaining labor and services while knowing or with reckless disregard of the facts that the

Little League Defendants have engaged in obtaining labor or services by use of unlawful

means.

373.    The Little League Defendant's actions as set out in this case are likely criminal. *See Title*

*18 U.S.C. §1589*. If this is so, that would constitute LLBB, its board of directors, officers,

attorneys, insurers, agents, regional offices, district offices, and all person working in concert

with LLBB a criminal organization as described in Title 18 U.S.C. §§ 1961 and 1962.

374.    The public's interest including Plaintiff's interest in stopping racial discrimination in

places of public accommodation outweighs the State of California's and Little League nc.'s

interest in earning tens of millions of dollars from a television contract while discriminating

against Plaintiff and other African Americans on the grounds of their race and solely on

account that they are African Americans and using labor and services obtained by unlawful

means to earn tens of millions of dollars.

375.    Plaintiff's interest in enforcing his rights secured by the Fourteenth Amendment, Title 42

U.S.C. §§1981, 1982, 2000a, 2000d, and Cal. Civ. Code §51 outweighs the State of California

and Little League Baseball Inc.'s interest in working in concert to obstruct the administration

of justice in the case of *McGee v. Airport Little League et. al.* APLL, Hernandez filed their motion to set aside the clerk's entry of default in *McGee v. Airport Little League et. al.* nine months after the defaults were entered without lodging an answer to the complaint. Hernandez and the other Little League Defendants filed motions in the District Court case *McGee v. Airport Little League* while having actual knowledge the motions contained false information and were being made to obstruct the administration of justice in the District Court. Hernandez argues he acted diligently to have the default set aside nine months after the default was entered. Hernandez did not act diligently to have the default set aside. The State of California and Little League Baseball Inc.'s have actual knowledge that the statement Hernandez "acted diligently" to have the default set aside is false and was made for the sole purpose of delaying the administration of justice in this Court.

376.    The facts in this case clearly demonstrates Hernandez is not being truthful with this Court. The Little League Defendants are willing to deprive Plaintiff of his civil rights, and break the laws of the United States and the State of California in order to benefit themselves financially.

377.    The balance of equities clearly tips in Plaintiff's favor with regards to "the Defendants." The temporary restraining order or preliminary injunction should be granted against the Defendants, to aid Plaintiff in enforcing his rights set out above.

### e.  Public Importance

378.    The Fourteenth Amendment, Title 42 U.S.C. §§1981, 1982, 2000a, 2000d, and Cal. Civ. Code §51 forbids the Defendants conduct as set out in this action. *Title 18 U.S.C. §§241, 242, 245, and 1589* make the conduct set out in this action likely criminal. *California Civil Code §52(d)* states, "Whenever an action has been commenced in any court seeking relief from the denial of equal protection of laws under the Fourteenth Amendment on account of race and

color, the Attorney General or any district attorney or city attorney for or in the name of the people of the State of California may intervene in the action upon timely application, if the Attorney General or any district attorney, or city attorney certifies that the case is of general public importance."

379.    *McGee v. Airport Little League et. al.* is an action that has been commenced in this Court seeking relief from the denial of equal protection of the law under the Fourteenth Amendment on account of race and color. The Defendants did not deny any of the facts set out in *McGee v. Airport Little League et. al.* The facts set out in this case show that the Defendants are depriving Plaintiff and others of equal protection of the law under the Fourteenth Amendment on account of Plaintiff's race and color. This action is as a matter of law of public importance.

## DAMAGES

380.    "The Defendants acted as part of a "racially motivated conspiracy" and therefore at law are a party to every act previously done by others in pursuance of it. Conspiracy is not a cause of action, but a legal doctrine that imposes liability on all persons who, although, not actually committed a tort themselves, share with the immediate tortfeasor a common plan or design in its perpetration.

381.    By participating in a civil conspiracy, the conspirator effectively adopts as his own the tort of other conspirators within the ambit of the conspiracy. In this a conspirator incurs tort liability co-equal with the immediate tortfeasor." Title 42 U.S.C. §§1981, 1982, 1983, 1985, 1986, 2000 and Cal Civ. Code §§51, and 52 provides for damages occasioned by such injury or deprivation, against any or all the conspirators.

382.    For proving up damages Plaintiff is using California law *Cal Civ. Code §52(a)* $4,000.00 for each offence and in no case less than $4,000.00. According to the City's letter rejecting

Plaintiff's claim, April 1, 2021 was the date the claim started. The case of _McGee v. Airport Little League et. al._ was closed on or around May 22, 2023. There are seven-hundred-seventy-one days between April 1, 2021, and May 22, 2023. Defendants have interfered with Plaintiff's rights to participate in the affairs of APLL, LLBB, and his right to enjoy the sports arenas located at 6395 Hogan Drive the same as white citizens by threats, intimidation, and coercion in violation Title 42 U.S.C. §§1981, 1982, 1983, 1985, 1986, 2000a, 2000d, and Cal Civ. Code §§51 and 52. There are one-hundred-sixty-seven Defendants that have participated in the racially motivated conspiracy. One-hundred-sixty-seven (167) Defendants times seven-hundred-seventy-one (771) days is one hundred-twenty-eight-thousand-seven-hundred-fifty-seven (128,757) offences per public accommodation and per business establishment. By law each Defendant is liable to Plaintiff for all acts previously or subsequently done in furtherance of the racially motivated conspiracy set out in _McGee v. Airport Little League et. al._. Defendants are liable to Plaintiff as follows.

**CAUSE OF ACTIONS**

**FIRST CAUSE OF ACTION**

**Procedural Due Process/ Substantial Due Process**

**THE FOURTEENTH AMENDMENT**

COUNT ONE

Procedural Due Process

383.    Plaintiff repeats and re-alleges and incorporates by this reference the allegations set forth in paragraphs 1 through 381, of the injunction sought as paragraphs 1 through 381 of the first cause of action as inclusive as fully set forth.

384. Defendants violated Plaintiff's rights secured by the Procedural Due Process secured by the Fourteenth Amendment.

385. Plaintiff alleges:

    i.    The City Defendants made an intentional decision with respect to conditions the Little League Defendants were conspiring to deprive Plaintiff of his civil rights.

    ii.    Plaintiff has a constitutional protected property interest in his business' goodwill and business reputation and a constitutional protected liberty interest in pursuing his occupation and his hobby.

    iii.    The City and Chan deprived Plaintiff of his property interest and liberty interest when they conspired with the Little League Defendants to damage Plaintiff's property interest in the goodwill of his business, his reputation, and deprived him of his civil rights.

    iv.    The City and Chan deprived Plaintiff of his liberty interest of pursuing his occupation and hobby when they prevented Plaintiff and his son from participating in APLL and LLBB on the property owned by the City, and interfered with Plaintiff's status in his community.

    v.    The City and Chan deprived Plaintiff of his property and liberty without a hearing or any proceedings or due process of any kind.

    vi.    The City and Chan deprived Plaintiff of his property and liberty interests secured by the Constitution without due process of law when they made the decision to allow the Little League Defendants to use the property owned by the City to: discriminate against Plaintiff on the

1    grounds of his race and color; damage Plaintiff's goodwill and business

2    reputation; prevent Plaintiff from pursing his occupation and hobby; and

3    deprived Plaintiff of his civil rights.

4    386.    The City Defendants deprived Plaintiff of Procedural Due Process.

5    *Substantive Due Process*

6    387.    Plaintiff alleges the City Defendants violated Plaintiff's rights secured by the Substantive

7    Due Process Clause of the Fourteenth Amendment.

8

9    388.    Plaintiff alleges:

10           i.    The City's and Chan's decision not to prevent the Little League

11                 Defendants from depriving Plaintiff of his property interest, his liberty

12                 interest, and his civil rights was arbitrary and served no legitimate

13                 governmental purpose.

14           ii.   The City's and Chan's decision not to prevent the Little League

15                 Defendants from depriving Plaintiff of his property interest, liberty

16                 interest, and his civil rights put Plaintiff at substantial risk of continual

17                 constitutional injuries.

18

19           iii.  Defendants the City and Chan did not take reasonable available

20                 measures to abate the risk of constitutional injuries to Plaintiff, even

21                 though a reasonable city manager in the circumstances would have

22                 appreciated the high degree of risk involved constitutional injuries to

23                 Plaintiff, making the consequences of the City's and Chan's conduct

24                 obvious.

25

26

27

28

*McGee's Complaint*                                                                                    75

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

iv.        By not taking such measures to prevent the Little League Defendants from using property owned by the City to deprive Plaintiff of his liberty interests, property interest, and his civil rights, the City and Chan deprived Plaintiff of his rights to substantive due process.

v.        The City Defendants caused Plaintiff constitutional injuries.

vi.        The city manager Chan's decision to aid and incite the Little League Defendants to use property owned by the City to deprive Plaintiff of his property interest, liberty interest, and his civil rights was not related to: a legitimate government action; rationally related to a legitimate governmental action; rationally related to a legitimate governmental objective and; had no substantial relation to the public health, safety, morals or general welfare and was excessive in relation to that purpose.

vii.        The City and Chan had actual knowledge there was a substantial risk of serious harm to Plaintiff that the City and Chan could have eliminated through a reasonable available measure that the City and Chan did not take thus causing the Constitutional injuries and damages to Plaintiff, but refused to take such measures.

viii.        The City and Chan had actual knowledge that the Little League Defendants were depriving Plaintiff of his property interest, liberty interest, and his civil rights but aided and incited the City Defendants to deprived Plaintiff of those interests and his civil rights in violation of the due process clause of the Fourteenth Amendment.

*McGee's Complaint*        76

ix.      The City and Chan also have actual knowledge that there still is substantial risk of serious harm to Plaintiff that the City Defendants could eliminate through a reasonable available measure that the City and Chan have not taken thus causing continual constitutional injuries and damages to Plaintiff, but are refusing to take such measures.

x.      The action of the City and Chan as set out in this Complaint amounts to deliberate indifference to Plaintiff's constitutional rights.

xi.      Defendants the City and Chan are still depriving Plaintiff of his property interest, liberty interest, and his civil rights without due process.

xii.      In their discriminatory actions alleged above, Defendants the City and Chan have acted with malice or reckless indifference to the rights of Plaintiff, thereby entitling him to an award of punitive damages.

Damages Caused by Defendants Depriving Plaintiff Due Process of Law.

Airport Little League Baseball, Inc.

128,757 offences x $4,000.00……………………..............................................$515,028,000.00

Little League Baseball, Inc.

125,417 offences x $4,000.00……………………..............................................$515,028,000.00

Sports Arena Located at 6395 Hogan Drive

125,417 offences x $4,000.00……………………..............................................$515,028,000.00

The Business Airport Little League Baseball, Inc.

125,417 offences x $4,000.00……………………..............................................$515,028,000.00

The Business of Little League Baseball, Inc.

125,417 offences x $4,000.00……………………..............................................$515,028,000.00

TOTAL DAMAGES for the FIRST CAUSE OF ACTION...............….....…..$2,575,140,000.00

TOTAL PUNITIVE DAMAGES FOR COUNT ONE............................$100,000,000.00

### SECOND CAUSE OF ACTION VIOLATION OF 42 U.S.C. §1981

### COUNT TWO

389.    Plaintiff repeats and re-alleges and incorporates by reference paragraphs 1 through 387 of

Count One as paragraphs 1 through 387 of Count Two and hereby incorporates them as though

fully set forth herein.

390.    The City Defendants have deprived Plaintiff of his rights secured by Title 42 U.S.C. §1981.

391.    Plaintiff alleges:

      i.       Plaintiff: (1) applied for the position of APLL major division all-star manager; (2) Plaintiff was qualified for the available position of APLL major division all-star manager; (3) Plaintiff was rejected; (4) the position was filled with another person who is not African American.

      ii.      Plaintiff is African American and a member of a racial minority.

      iii.     The Little League Defendants refused to extend to Plaintiff the position of the manager of APLL's major division all-star team solely because Plaintiff is African American.

      iv.     The Little League Defendants had the intent to discriminate against Plaintiff on the bases of his race and color;

      v.      The discrimination alleged above concerned the making of a contract for Plaintiff to be APLL all-star manager.

vi.      Plaintiff was deprived of the same right to enter into the contract to be the APLL major division all-star manager as is enjoyed by white citizens.

vii.     The promotion to all-star manager of APLL major division would have raised to the level of an opportunity for a new and distinct level for a new and distinct relationship between Plaintiff, APLL, Hernandez, and LLBB.

viii.    By the conduct described in this case, Defendants APLL, Hernandez, DOES 1, DOES 2, DOES 3, and LLBB intentionally deprived Plaintiff the same right as enjoyed by white citizens to the creation, performance, enjoyment, and all benefits and privileges of the following contractual relationship with APLL and LLBB: (1) contracts to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations with APLL and LLBB for the years 2022 and 2023; (2) a contract to use King field on the same and equal basis as is enjoyed by white citizens in the years 2022 and 2023; (3) a contract to manage APLL major division all-star team in the year 2021; (4) a contract to manage a team in APLL and LLBB 2021 fall ball program; (5) a contract to manage a team in APLL and LLBB 2022 baseball season; (6) a contract to manage a team in APLL and LLBB 2023 season; and (7) a contract to compete for the opportunity to manage a team in LLBB's world series.

ix.    The Little League Defendants had intent to discriminate against Plaintiff in violation of the rights of Plaintiff afforded him by the Civil Rights Act of 1866, 42 U.S.C. §1981.

x.    As a result of the Little League Defendants conspiracy to discriminate against Plaintiff in violation of §1981, Plaintiff has been denied the enjoyment of practicing on Kings Field; being the manager of the APLL major division all-star team during the 2021 Little League season; the opportunity for Plaintiff and his son to participate in APLL's, and LLBB's 2021 Fall Ball Program and LLBB's and APLL's 2022 and 2023 seasons at 6395 Hogan Drive; and the opportunity to compete for the privilege of managing a team in the Little League World Series, opportunities providing substantial, enjoyment and benefits, and thereby entitles him equitable monetary relief and Plaintiff has and continues to suffer anguish, humiliation, distress, inconvenienced, and loss of enjoyment of life because of the Little League Defendants thereby entitling Plaintiff to actual and statutory damages.

xi.    In their discriminatory actions alleged above, The Little League Defendants have acted with malice or reckless indifference to the rights of Plaintiff, thereby entitling him to an award of punitive damages.

392.    Plaintiff is entitled to damages from "the Defendants" as set out below.

Damages Caused by Defendants Depriving Plaintiff the Same Right to Make and Enforce Contracts as are Enjoyed by White Citizens.

Airport Little League Baseball, Inc.

125,417 offences x $4,000.00…………………….................................................$515,028,000.00

Little League Baseball, Inc.

125,417 offences x $4,000.00…………………….................................................$515,028,000.00

Sports Arena Located at 6395 Hogan Drive

125,417 offences x $4,000.00…………………….................................................$515,028,000.00

The Business Airport Little League Baseball, Inc.

125,417 offences x $4,000.00……………………...............................................$515,028,000.00

The Business of Little League Baseball, Inc.

125,417 offences x $4,000.00……………..……...............................................$515,028,000.00

TOTAL DAMAGES for the SECOND CAUSE OF ACTION………….....…$2,575,140,000.00

TOTAL PUNITIVE DAMAGES FOR COUNT TWO…………………………$100,000,000.00

**THIRD CAUSE OF ACTION VIOLATION OF EQUAL PROTECTION UNDER**

**LAW; TITLE 42 U.S.C. §1981**

COUNT THREE

393.    Plaintiff repeats and realleges and incorporates by reference paragraphs 1 through 391 of Count Two as paragraphs 1 through 391 of Count Three and hereby incorporates them as though fully set forth herein.

394.    Plaintiff alleges:

         i.        Plaintiff is African American and a member of a racial minority.

ii.       The Little League Defendants and the City Defendants intentionally discriminated against Plaintiff on the basis of his race and color.

iii.      The City's and Chan's intentional racial discrimination prevented Plaintiff from the full and equal benefit of all laws and proceedings for the security of his person and property, as is enjoyed by white citizens.

iv.      The City Defendants had intent to discriminate against Plaintiff in violation of the rights of Plaintiff afforded him to equal protection of the law in violation of Title 42 U.S.C. §1981.

v.      On October 4, 2021, Plaintiff filed a claim with the City of Sacramento claiming the Little League Defendants were using property owned by the City to deprive him of his civil rights, because of his race and color and solely on account that Plaintiff is African American.

vi.      Plaintiff's claims qualified for immediate action on the part of the City, Chan, and the City's law enforcement programs and activities to prevent the conspiracy that was depriving Plaintiff of his civil rights from continuing.

vii.      On November 4, 2022, the City Defendants rejected Plaintiff's claim as without merit, and did nothing to prevent the City Defendants from continuing to deprive Plaintiff of his civil rights, on property owned by the City.

viii.       After rejecting Plaintiff's claim the City Defendants continued to use its law enforcement programs and activities to protect the rights of white citizens, including the Little League Defendants, in the City of Sacramento.

ix.        By the conduct described above, Defendants the City and Chan intentionally deprived Plaintiff of the full benefit of all laws and proceedings for the security of his person and property as is enjoyed by white citizens.

x.        The City and Chan did not take reasonable available measures to abate the risk to Plaintiff's constitutional rights, even though a reasonable city manager in the circumstances would have appreciated the high degree of risk involved to Plaintiff's rights making the consequences of the City's and Chan's conduct obvious.

xi.        The City's and Chan's decision not to prevent the Little League Defendants from continuing to deprive Plaintiff of his civil rights was not related to a legitimate governmental action, not rationally related to a legitimate governmental action; not rationally related to a legitimate governmental objective; and was not substantially related to the public health, safety, morals, or general welfare and was excessive to that purpose.

xii.        In their discriminatory actions alleged above, the City Defendants including Chan have acted with malice or reckless

indifference to the rights of Plaintiff, thereby entitling him to an award of punitive damages.

395.    Plaintiff is entitled to damages as follows:

Damages Caused by Defendants Depriving Plaintiff to the full and Equal Benefit to All Laws and Proceedings for the Security of Person and Property as are Enjoyed by White Citizens.

Airport Little League Baseball, Inc.

125,417 offences x $4,000.00…………………...................................$515,028,000.00

Little League Baseball, Inc.

125,417 offences x $4,000.00…………………...................................$515,028,000.00

Sports Arena Located at 6395 Hogan Drive

125,417 offences x $4,000.00…………………...................................$515,028,000.00

The Business Airport Little League Baseball, Inc.

125,417 offences x $4,000.00…………………...................................$515,028,000.00

The Business of Little League Baseball, Inc.

125,417 offences x $4,000.00…………………...................................$515,028,000.00

TOTAL DAMAGES for the THIRD CAUSE OF ACTION…………..………$2,575,140,000.00

TOTAL PUNITIVE DAMAGES FOR COUNT THREE………………………$100,000,000.00

## FOURTH CAUSE OF ACTION VIOLATION OF 42 U.S.C. §1982

### COUNT FOUR

396.    Plaintiff re-allege paragraphs 1 through 394 of Count Three as paragraphs 1 through 394 of Count Four and hereby incorporate them as though fully set forth herein.

397.    Plaintiff alleges:

i.     Plaintiff is African American; (2) had a property interest in the goodwill of his business and his reputation; (3) the Little League Defendants and the City Defendants damaged and diminished Plaintiff's property; (4) the Little League Defendants intentionally damaged and diminished Plaintiff's property interest in the goodwill of his business and his reputation because of his race and color; (5) Plaintiff's property interest was damaged causing Plaintiff to lose income and value in his property; and (6) while the Little League Defendants and the City Defendants were damaging Plaintiff's property under color of State law white citizens similarly situated to Plaintiff were allowed to keep their property free from any damages.

ii.    As a result of the Little League Defendants discrimination in violation of §1982, Plaintiff has been denied and will continue to be denied business opportunities providing substantial compensation and benefit, thereby entitles him to equitable monetary relief and Plaintiff has suffered anguish, humiliation, distress, inconvenienced, and loss of enjoyment of life because of the Little League Defendants and the City Defendants thereby entitling him to actual, compensatory, and statutory damages.

iii.   In their discriminatory actions alleged above, the Little League Defendants and the City Defendants have acted with malice or reckless indifference to the rights of Plaintiff, thereby entitling him to an award of punitive damages

398.    Plaintiff is entitled to damages as follows:

Damages Caused by Defendants Depriving Plaintiff His Right to a Reputation as are Enjoyed by
White Citizens.

Airport Little League Baseball, Inc.

125,417 offences x $4,000.00……………………..............................................$515,028,000.00

Little League Baseball, Inc.

125,417 offences x $4,000.00……………………..............................................$515,028,000.00

Sports Arena Located at 6395 Hogan Drive

125,417 offences x $4,000.00……………………..............................................$515,028,000.00

The Business Airport Little League Baseball, Inc.

125,417 offences x $4,000.00……………………..............................................$515,028,000.00

The Business of Little League Baseball, Inc.

125,417 offences x $4,000.00……………………..............................................$515,028,000.00

TOTAL DAMAGES for the FOURTH CAUSE OF ACTION…....……..……$2,575,140,000.00

TOTAL PUNITIVE DAMAGES FOR COUNT FOUR…..………………….$100,000,000.00

## FIFTH CAUSE OF ACTION VIOLATION OF 42 U.S.C. §1983

### COUNT FIVE

399.    Plaintiff re-alleges paragraphs 1 through 397 of Count Four as paragraphs 1 through 397
of Count Five and hereby incorporate them as though fully set forth herein.

400.    Plaintiff alleges:

        i.        The Little League Defendants and the City Defendants have

                deprived Plaintiff of his civil rights; under the color of state law in

                violation of Title 42 U.S.C. §1983.

*McGee's Complaint*                                                                                            86

ii.      The Little League Defendants and the City Defendants were acting under the color of state law, when they deprived Plaintiff of his civil rights.

iii.     Plaintiff possessed rights secured to him by the Fourteenth Amendment, Title 42 U.S.C.§§ 1981,1982, 2000 and Cal. Civil Code§ 51.

iv.      The Little League Defendants and the City Defendants have conspired to deprive Plaintiff of his rights to procedural and substantive due process of the law secured by the Fourteenth Amendment.

v.       The Little League Defendants and the City Defendants have conspired to deprive Plaintiff of his rights to make and enforced contracts the same as white citizens in violation of Title 42 U.S.C. §1981.

vi.      The Little League Defendants and the City Defendants have conspired to deprive Plaintiff of the full and equal benefit of all laws and proceedings for the security of his person and property as is enjoyed by white citizens in violation of Title 42 U.S.C. §1981.

vii.     The Little League Defendants and the City Defendants have conspired to deprive Plaintiff of his rights to own property (a reputation) the same as white citizens in violation of Title 42 U.S.C. §1982.

viii.      The Little League Defendants and the City Defendants have conspired to deprive Plaintiff of his rights to the full and equal enjoyment of the goods, services, facilities, privileges, accommodations of APLL, LLBB, and the sports arenas located at 6395 Hogan Drive because of Plaintiff's race and color and solely on account that Plaintiff is African American in violation of Title 42 U.S.C. §2000a.

ix.      The Little League Defendants and the City Defendants have conspired to use law enforcement programs and activities receiving federal financial assistance from the United States to discriminate against Plaintiff on the grounds of his race and color in violation of Title 42 U.S.C. §2000d.

x.      The Little League Defendants and the City Defendants have conspired to discriminate against Plaintiff at the business establishment of LLBB and APLL because of his race and color and solely on the grounds that Plaintiff is African American in violation of Cal. Civ. Code §51.

xi.      As a direct and proximate cause of The Little League Defendants and the City Defendants actions, Plaintiff was deprived his civil rights by Defendants while acting under the color of state law and Plaintiff has incurred damages as the result of the State Defendants, the Little League Defendants, and the City Defendants actions, in violation of Title 42 U.S.C. §1983.

xii.     Howard Chan is a City employee, and official with policy making authority for the City. Chan deprived Plaintiff of his civil rights.

xiii.    City manager Chan is acting pursuant to the City's longstanding 21-plus-year policy and customs of "Discriminating Against African Americans on the Grounds of their Race and Color in Law Enforcement Programs and Activities."

xiv.    The City's policy of "Discriminating Against African Americans on the Grounds of their Race and Color in Law Enforcement Programs and Activities." amounts to deliberate indifference to Plaintiff's civil rights because discriminating against African Americans in law enforcement programs and activities violates African Americans rights to equal protection under the law in violation of the Fourteenth Amendment.

xv.     The deficiency involved in the City's Policy of Discriminating Against African Americans on the Grounds of their Race and Color in Law Enforcement Programs and Activities was obvious that a Constitutional injury was likely to occur, and in fact constitutional injuries did occur.

xvi.    The City's and Chan's policy of "Discriminating Against African Americans on the Grounds of their Race and Color in Law Enforcement Programs and Activities" and their customs are the

moving force behind the City's and Chan's violations of Plaintiff's civil rights.

xvii.     Defendants the City and Chan  have failed to adopt clear policies and failed to properly train the city manager Chan and other employees as to their proper role in ensuring that: all citizens in the City are treated equally by their law enforcement programs and activities; the property owned by the City and the SPD would not be used to deprive Plaintiff and other persons of their civil rights; the City of Sacramento would not discriminate against African Americans on the grounds of race and color; and the City would not deprive any person of procedural and substantive due process of law in violation of the Fourteenth Amendment.

xviii.     Defendants the City's policy or customs, and its failure to adopt clear policies and failure to properly train its city manager Chan and other employees, was a direct and proximate cause of the constitutional deprivations suffered by Plaintiff and the damages he incurred.

xix.     The City's policy and customs represents a longstanding practice and custom of discriminating against Plaintiff and other African Americans in the law enforcement programs and activities which constitutes the standard operating procedure of the City of Sacramento.

xx.    The need for a different course of action as set out in this action was so obvious that the City and the city manager Howard Chan's adamant refusal to take action to prevent the Little League Defendants from depriving Plaintiff of his civil rights amounted to deliberate indifference to Plaintiff's constitutional rights.

xxi.    The Little League Defendants and the City Defendants acted with malice, reckless, and total and deliberate disregard for Plaintiff's rights secured by the Fourteenth Amendment, Title 42 U.S.C. §§1981, 1982, 2000a, 2000d, and Cal. Civ. Code §51.

401.    Plaintiff is entitled to damages as follows:

Damages Caused by Deprivation Under Color of Law

Procedural Due Process

125,417 offences x $4,000.00.........................................................$515,028,000.00

Substantial Due Process

125,417 offences x $4,000.00.........................................................$515,028,000.00

Airport Little League Baseball, Inc.

125,417 offences x $4,000.00.........................................................$515,028,000.00

Little League Baseball, Inc.

125,417 offences x $4,000.00.........................................................$515,028,000.00

Sports Arena Belonging to the City

125,417 offences x $4,000.00..............................................................$515,028,000.00

The Business of Airport Little League Baseball, Inc.

125,417 offences x 4,000.00..............................................................$515,028,000.00

The Business of Little League Baseball, Inc.

125,417 offences x 4,000.00………………………...............................................$515,028,000.00

TOTAL DAMAGES for the Fifth Cause of Action……………………....…\$3,605,196,000.00

TOTAL PUNITIVE DAMAGES FOR COUNT FIVE………………………\$100,000,000.00

## SIXTH CAUSE OF ACTION VIOLATION OF 42 U.S.C. §1985.

### COUNT SIX

402.   Plaintiff re-alleges paragraphs 1 through 400 of Count Five as paragraphs 1 through 400 of Count Six and hereby incorporate them as though fully set forth herein.

403.   Plaintiff alleges:

    i.   Plaintiff has stated a Title 42 U.S.C. §1983 claims against each Defendant in this action.

    ii.   The Little League Defendants and the City Defendants entered into "the vast racially motivated conspiracy" to deprived Plaintiff of the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of APLL, LLBB and the sports arena located at 6395 Hogan Drive on the grounds of his race and solely on account that Plaintiff is African American.

    iii.   The Little League Defendants and the City Defendants: (1) entered into "the vast racially motivated conspiracy" set out in this Complaint to deprive Plaintiff of his civil rights; (2) deprived Plaintiff of equal protection of the laws and equal privileges and immunities under the laws; injured Plaintiff in his person and property; and (3) committed acts in furtherance

of the Conspiracy set out above. Plaintiff was injured in his person and property and deprived of his civil rights.

    iv.    Plaintiff has been deprived of the privileges of a citizen of the United States, by the Little League Defendants and the City Defendants.

    v.    The State Defendants, the County Defendants, the Elk Grove Defendants, the Florin Little League Defendants, the City of Sacramento, the MMDD Defendants, the Bridgeport Defendants, the Little League Defendants, and the City Defendants are liable to Plaintiff under Title 42 U.S.C. §1985.

    vi.    The State Defendants, the County Defendants, the Elk Grove Defendants, the Florin Little League Defendants, the City of Sacramento Defendants, the MMDD Defendants, the Bridgeport Defendants, the Little League Defendants, the City of Sacramento, and the City Defendants acted with malice, reckless, and total and deliberate indifference to Plaintiff's Constitutional rights.

404.    Plaintiff is entitled to damages as follows:

Damages Caused by Conspiracy to Deprive Plaintiff's Civil Rights

Airport Little League Baseball, Inc.

125,417 offences x 4,000.00……………………….................................................$515,028,000.00

Little League Baseball, Inc.

185 offences x $4,000.00……………………………………………………...$515,028,000.00

Sports Arena Belonging to the City

125,417 offences x $4,000.00……………………….............................................$515,028,000.00

The Business of Airport Little League Baseball, Inc.

125,417 offences x $4,000.00.....................................................................$515,028,000.00

The Business of Little League Baseball, Inc.

125,417 offences x $4,000.00.....................................................................$515,028,000.00

TOTAL DAMAGES for the Sixth Cause of Action..................................$2,575,140,000.00

TOTAL PUNITIVE DAMAGES FOR COUNT SIX..................................$100,000,000.00

## SEVENTH CAUSE OF ACTION VIOLATION OF 42 U.S.C. §1986.

### COUNT SEVEN

405.    Plaintiff re-alleges paragraphs 1 through 403 of Count Six as paragraphs 1 through 403 of Count Seven and hereby incorporate them as though fully set forth herein.

406.    Plaintiff alleges:

    i.    Plaintiff states claims for which Plaintiff may recover damages under Title 42 U.S.C. §1985, against The State Defendants, the County Defendants, the Elk Grove Defendants, the Florin Little League Defendants, the City of Sacramento, the MMDD Defendants, the Bridgeport Defendants, the Little League Defendants, and the City Defendants

    ii.    The State Defendants, the County Defendants, the Elk Grove Defendants, the Florin Little League Defendants, the City of Sacramento Defendants, the MMDD Defendants, the Bridgeport Defendants, the Little League Defendants, and the City Defendants: had actual knowledge that the wrongs set out in this Complaint were about to be committed and had the power to prevent said wrongs from being committed but refused and neglected to prevent

said wrongs from being committed. Therefore, The State Defendants, the County Defendants, the Elk Grove Defendants, the Florin Little League Defendants, the MMDD Defendants, the City of Sacramento Defendants, the Bridgeport Defendants, the Little League Defendants, and the City Defendants are liable to Plaintiff under Title 42 U.S.C. §1986.

iii.      The State Defendants, the County Defendants, the Elk Grove Defendants, the Florin Little League Defendants, the MMDD Defendants, the City of Sacramento Defendants, the Bridgeport Defendants, the Little League Defendants, and the City Defendants acted with malice, reckless, and total and deliberate indifference to Plaintiff's Constitutional rights.

407.    Plaintiff is entitled to damages as follows:

<u>Damages Caused By Refusal and Neglect To Prevent Conspiracy</u>

<u>Airport Little League Baseball, Inc.</u>

125,417 offences x $4,000.00…………...................................................$515,028,000.00

<u>Little League Baseball, Inc.</u>

125,417 offences x $4,000.00…………………………………...…...…$515,028,000.00

<u>Sports Arena Belonging to the City</u>

125,417 offences x $4,000.00…………...................................................$515,028,000.00

<u>The Business of Airport Little League Baseball, Inc.</u>

125,417 offences x $4,000.00…………...................................................$515,028,000.00

<u>The Business of Little League Baseball, Inc.</u>

125,417 offences x $4,000.00……………….....................................................$515,028,000.00

TOTAL DAMAGES for the Seventh Cause of Action……………...…………$2,575,140,000.00

TOTAL PUNITIVE DAMAGES FOR COUNT SEVEN……………………….$100,000,000.00

**EIGHTH CAUSE OF ACTION VIOLATION OF 42 U.S.C. 42 § 2000**

COUNT EIGHT

408.    Plaintiff re-alleges paragraphs 1 through 406 of Count Seven paragraphs 1 through 406 of Count Eight and hereby incorporate them as though fully set forth herein.

409.    Plaintiff alleges:

i.            The State Defendants, the County Defendants, the Elk Grove Defendants, the Florin Little League Defendants, the MMDD Defendants, the Little League Defendants, and the City Defendants are conspiring to deprive Plaintiff the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of the following Public Accommodations: LLBB; FLLB, APLL, and the Sports Arenas located at 6395 Hogan Drive on the grounds of his race and color and solely on account that Plaintiff is African American and therefore are liable to plaintiff under Title 42 U.S.C. §2000a.

ii.           LLBB is a federally chartered corporation created by a special act of congress doing business in the County of Sacramento, California that operates a youth baseball and softball league on property owned by the City of Sacramento, the Elk Grove Unified School District, Southgate Recreation and Park District, and other public properties in the State of California.

iii.      LLBB and APLL operates Airport Little League on the sports arenas located at 6395 Hogan Drive.

iv.      6395 Hogan Drive has three sports arenas, that regularly exhibit baseball games to the public and a snack bar that sells food and drink for consumption on the premise.

v.      6395 Hogan Drive is a public accommodation as defined by Title 42 U.S.C. 2000a.

vi.      LLBB regularly holds tournaments that are televised before a national audience.

vii.      The bats, balls, uniforms, chalk, and other equipment used in the operation of LLBB move through interstate commerce.

viii.      LLBB players, managers, and coaches in the several states compete for the privilege of playing baseball in the LLBB World Series.

ix.      The LLBB World Series is an annual international championship tournament of LLBB held in Williamsport, PA. Teams and players from several states compete to win the LLBB championship. The event is televised on ESPN.

x.      LLBB is a public accommodation as defined by Title 42 U.S.C. § 2000a.

xi.      APLL plays its games on the sports arenas located at 6395 Hogan Drive and operates a snack bar at that same location where the league sells food and drink for consumption on the premises.

1

2

xii.        APLL is a public accommodation as defined by Title 42 U.S.C. § 2000a.

3

4

5

6

7

xiii.        The State Defendants, the County Defendants, the Elk Grove Defendants, the Little League Defendants, and the City Defendants are liable to Plaintiff for conspiring to deprive Plaintiff of his rights secured by Title 42 U.S.C. §2000a.

8

9

10

11

12

xiv.        The State Defendants, the County Defendants, the Elk Grove Defendants, the Florin Little League Defendants, the MMDD Defendants, the Little League Defendants, and the City Defendants acted with malice, reckless, and total and deliberate indifference to Plaintiff's constitutional rights.

13

410.    Plaintiff is entitled to damages as follows:

14

15

16

Damages Caused By Discriminating Against Plaintiff in Places of Public Accommodations

Airport Little League Baseball, Inc.

17

125,417 offences x $4,000.00……………………................................................$515,028,000.00

18

Little League Baseball, Inc.

19

125,417 offences x $4,000.00……………………………...……………....…$515,028,000.00

20

Sports Arena Belonging to the City

21

125,417 offences x $4,000.00……………………….................................................$515,028,000.00

22

23

The Business of Airport Little League Baseball, Inc.

24

125,417 offences x $4,000.00…………………….................................................$515,028,000.00

25

The Business of Little League Baseball, Inc.

26

125,417 offences x $4,000.00…………………….................................................$515,028,000.00

27

28

*McGee's Complaint*                                                                                    98

1   TOTAL DAMAGES for the Eighth Cause of Action.............................$2,575,140,000.00

2   TOTAL PUNITIVE DAMAGES FOR COUNT EIGHT..........................$100,000,000.00

3

4   **NINTH CAUSE OF ACTION VIOLATION OF TITLE 42 U.S.C. § 2000d**

5   COUNT NINE

6   411.    Plaintiff re-alleges paragraphs 1 through 409 of Count Eight as paragraphs 1 through 409

7   of Count Nine and hereby incorporate them as though fully set forth herein.

8   412.    Plaintiff alleges:

9        i.        Plaintiff is African American and a member of a racial minority.

10       ii.       Plaintiff is a person in the United States and has been excluded from

11                 participation in, denied the benefits of, or been subjected to discrimination

12                 under the State Defendants, the County Defendants, the Elk Grove Defendants,

13                 the Elk Grove Defendants and the City Defendants law enforcement program

14                 and activities receiving federal financial assistance on the grounds of his race

15                 and color.

16       iii.      The State Defendants, the County Defendants, the Elk Grove Defendants,

17                 the Florin Little League Defendants, the MMDD Defendants, the Little League

18                 Defendants, and the City Defendants intentionally discriminated against

19                 Plaintiff on the grounds of his race and solely on account that Plaintiff is

20                 African American.

21       iv.       The State Defendants, the County Defendants, the Elk Grove Defendants,

22                 the Citrus heights Defendants, and the City Defendants receives federal

23                 financial assistance from the federal government for its law enforcement

24                 programs and activities.

*McGee's Complaint*                                                                            99

v.       The State Defendants, the County Defendants, the Elk Grove Defendants, the Florin Little League Defendants, the MMDD Defendants, the Little League Defendants, and the City Defendants are using law enforcement programs and activities receiving federal financial assistance to intentionally discriminate against Plaintiff on the grounds of his race and color and solely on account that he is African American

vi.      The State Defendants, the County Defendants, the Elk Grove Defendants, the Florin Little League Defendants, the MMDD Defendants, the City of Sacramento Defendants, the Little League Defendants, and the City Defendants are liable to Plaintiff under Title 42 U.S.C. §2000d.

vii.     Therefore, the State Defendants, the County Defendants, the Elk Grove Defendants, the Florin Little League Defendants, the MMDD Defendants, the Little League Defendants, and the City Defendants are not immune under the Eleventh Amendment of the United States Constitution from this suit in this Court.

413.   Plaintiff is entitled to damages as follows:

Damages Caused by Discriminating Against Plaintiff in Law Enforcement Programs and Activities Receiving Federal Financial Assistance

Airport Little League Baseball, Inc.

125,417 offences x $4,000.00…………………….................................................$515,028,000.00

Little League Baseball, Inc.

125,417 offences x $4,000.00………………………………………………….$515,028,000.00

Sports Arena Belonging to the City

125,417 offences x $4,000.00...........................................................$515,028,000.00

The Business of Airport Little League Baseball, Inc.

125,417 offences x $4,000.00...........................................................$515,028,000.00

The Business of Little League Baseball, Inc.

125,417 offences x $4,000.00...........................................................$515,028,000.00

TOTAL DAMAGES for the Eighth Cause of Action...........................$2,575,140,000.00

TOTAL PUNITIVE DAMAGES FOR COUNT EIGHT..........................$100,000,000.00

### TENTH CAUSE OF ACTION VIOLATION OF CAL. CIV. CODE 51.

COUNT TEN

414.    Plaintiff re-alleges paragraphs 1 through 412 of Count Nine as paragraphs 1 through 412 of Count Ten and hereby incorporate them as though fully set forth herein.

415.    Plaintiff alleges:

  i.  FLLB and APLL are business establishments pursuant to Cal. Civ. Code §51.

  ii.  LLBB is a business establishment pursuant to Cal. Civ. Code §51.

  iii.  Plaintiff was denied equal treatment by FLLB, APLL and LLBB.

  iv.  Plaintiff was discriminated against by the Florin Little League Defendants and the Little League Defendants on the basis of his race and color.

  v.  The Defendants deprived Plaintiff of his right to be free from any violence, or intimidation by threats of violence, committed against his person or property because of his race and color, in the business establishments of FLLB, APLL and LLBB.

vi.     Plaintiff believed the Little League Defendants would use violence against Plaintiff because LLBB and FLLB had previously used violence against Plaintiff to exclude Plaintiff from participating in the affairs of LLBB and Florin Little League Baseball, Inc.

vii.    Plaintiff also believed that the racially motivated conspiracy would turn violent because SPD and its officers had terrorized Plaintiff by aiming guns at Plaintiff's head for no legitimate purpose.

viii.   Plaintiff perceived the Little League Defendants and the City Defendants willingness to break the law and the SPD willingness to terrorize Plaintiff by aiming guns at Plaintiff's head for no legitimate purpose could turn to violence, and maybe cause his death. Plaintiff also feared that the Sacramento County District Attorney would prosecute him for asserting his federally constituted rights.

ix.     A reasonable person standing in the shoes of Plaintiff would have been terrorized, intimidated, threatened, or coerced by Defendants' willingness to break the law and threatening to use deadly force on Plaintiff and other African Americans for no legitimate purpose.

x.      The State Defendants, the County Defendants, the Elk Grove Defendants, the Florin Little League Defendants, the MMDD Defendants, the Little League Defendants, and the City Defendants authority to use the SPD to do their bidding caused Plaintiff to feel terrorized and fear for his safety.

xi.    The State Defendants, the County Defendants, the Elk Grove Defendants, the Florin Little League Defendants, the City of Sacramento Defendants, the MMDD Defendants, the Little League Defendants, and the City Defendants are liable to plaintiffs under California Civil Code §§ 51.

xii.    The State Defendants, the County Defendants, the Elk Grove Defendants, the Florin Little League Defendants, the City of Sacramento Defendants, the MMDD Defendants, the Little League Defendants, and the City Defendants acted with malice, reckless, and total and deliberate indifference to Plaintiff's constitutional rights.

416.    Plaintiff is entitled to damages as follows:

Damages Caused By Discriminating Against Plaintiff in the Business Establishments.

Airport Little League Baseball, Inc.

125,417 offences x $4,000.00…………………...............................................$515,028,000.00

Little League Baseball, Inc.

125,417 offences x $4,000.00………………………………………….…..$515,028,000.00

Sports Arena Belonging to the City

125,417 offences x $4,000.00…………………...............................................$515,028,000.00

The Business of Airport Little League Baseball, Inc.

125,417 offences x $4,000.00…………………...............................................$515,028,000.00

The Business of Little League Baseball, Inc.

125,417 offences x $4,000.00…………………...............................................$515,028,000.00

TOTAL DAMAGES for the Ninth Cause of Action…………….………….$2,575,140,000.00

TOTAL PUNITIVE DAMAGES FOR COUNT NINE...............................$100,000,000.00

## ELEVENTH CAUSE OF ACTION

### COUNT ELEVEN

417.    Plaintiff re-alleges paragraphs 1 through 415 of Count Ten as paragraphs 1 through 415 of Count Eleven and hereby incorporate them as though fully set forth herein.

418.    California Civil Code § 52 provides:

(a) Whoever denies, aids or incites a denial, or makes any discrimination or distinction contrary to Section 51, 51.5, or 51.6, is liable for each and every offense for the actual damages, and any amount that may be determined by a jury, or a court sitting without a jury, up to a maximum of three times the amount of actual damage but in no case less than four thousand dollars ($4,000), and any attorney's fees that may be determined by the court in addition thereto, suffered by any person denied the rights provided in Section 51, 51.5, or 51.6.

(b) Whoever denies the right provided by Section 51.7 or 51.9, or aids, incites, or conspires in that denial, is liable for each and every offense for the actual damages suffered by any person denied that right and, in addition, the following:

(1) An amount to be determined by a jury, or a court sitting without a jury, for exemplary damages.

(2) A civil penalty of twenty-five thousand dollars ($25,000) to be awarded to the person denied the right provided by Section 51.7 in any action brought by the person denied the right, or by the Attorney General, a district attorney, or a city attorney. An action for that penalty brought pursuant to Section 51.7 shall be commenced within three years of the alleged practice.

*McGee's Complaint*                                                                                      104

(3) Attorney's fees as may be determined by the court.

(c) Whenever there is reasonable cause to believe that any person or group of persons is engaged in conduct of resistance to the full enjoyment of any of the rights described in this section, and that conduct is of that nature and is intended to deny the full exercise of those rights, the Attorney General, any district attorney or city attorney, or any person aggrieved by the conduct may bring a civil action in the appropriate court by filing with it a complaint. The complaint shall contain the following:

(1) The signature of the officer, or, in the officer's absence, the individual acting on behalf of the officer, or the signature of the person aggrieved.

(2) The facts pertaining to the conduct.

(3) A request for preventive relief, including an application for a permanent or temporary injunction, restraining order, or other order against the person or persons responsible for the conduct, as the complainant deems necessary to ensure the full enjoyment of the rights described in this section.

(d) Whenever an action has been commenced in any court seeking relief from the denial of equal protection of the laws under the Fourteenth Amendment to the Constitution of the United States on account of race, color, religion, sex, national origin, or disability, the Attorney General or any district attorney or city attorney for or in the name of the people of the State of California may intervene in the action upon timely application if the Attorney General or any district attorney or city attorney certifies that the case is of general public importance. In that action, the people of the State of California shall be entitled to the same relief as if it had instituted the action.

### TWELFTH CAUSE OF ACTION

### COUNT TWELVE

*Title 18 U.S.C. §§ 1961 and 1962*

419.    Plaintiff re-alleges paragraphs 1 through 417 of Count Eleven as paragraphs 1 through 417 of Count Twelve and hereby incorporate them as though fully set forth herein.

420.    Title 18 U.S.C. §1962(c) makes it unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate directly or indirectly, in conduct of such enterprise through a pattern of racketeering activities... Title 18 U.S.C. §1962(c).

421.    Each of: the State Defendants; the County Defendants; the Florin Little League Defendants; the Elk Grove Defendants; the City of Sacramento Defendants; the MMDD Defendants; the Little League Defendant; and the City Defendants; at all times mentioned in this Complaint, is and has been a "person" within the meaning of Title 18 U.S.C. §1962(c), because each Defendants is capable of holding "a legal or beneficial interest in real or personal property." Title 42 U.S.C. §1962(c).

422.    At all times hereto, beginning in or around December 1993 until present, each of: the State Defendants; the County Defendants; the Florin Little League Defendants; the Elk Grove Defendants; the City of Sacramento Defendants; the MMDD Defendants; the Little League Defendants, and the City Defendants; conducted and participated in the affairs of an enterprise of racketeering activities, in violation of Title 18 U.S.C. §1962(c).

423.    In or around, December 1993, the State Defendants, the County Defendants, the Florin Little League Defendants, the Elk Grove Defendants, the City of Sacramento Defendants, the MMDD Defendants, the Little League Defendants, and the City Defendants, formed an

1
2

association-in-fact Enterprise, described as the "people of California" (the People) within the meaning of Title 18 U.S.C. §1962(c).

3    424.    Title 18 U.S.C. §1961(1) provides that the term "Racketeering activity" includes conduct

4    of a person committed both before and after the person attains the age of 18 years, and means

5    to commit, to attempt to commit, to conspire to commit, or solicit, coerce or intimidate another

6    to commit, *i.e.* any conduct that constitutes a crime, as defined by Title 18 U.S.C. §1961(1)

7
8    which includes (A) any acts of wire fraud; mail fraud; tampering with witnesses; and retaliation

9    against witnesses, victims, or informants; attempted murder; kidnap; torture; assault with a

10   deadly weapon; assault; battery; breaking and entering into Plaintiff's property; obstruction of

11   justice in the federal and state courts; perjury; forgery; and unlawful sexual conduct as defined

12   by Title 18 U.S.C. §1961(1).

13   425.    The State Defendants, the County Defendants, the Florin Little League Defendants, the Elk

14   Grove Defendants, the City of Sacramento Defendants, the MMDD Defendants, the Little

15
16   League Defendants, and the City Defendants, activities and conduct as described in this

17   Complaint constitute a "pattern" of racketeering activities since December 1993 that have the

18   same or similar intents, results, accomplices, including a nexus of the same enterprise, and are

19   not isolated incidents. Title 18 U.S.C. §1962(c).

20   426.    These incidents have taken place from December 1993 until present.    A pattern of

21   racketeering activities was set out in the District Court's Findings and Recommendations in

22   *McGee v. Wilson et. al.* Civ. S-98-1026-FCD-PAN-PS. The District Court detailed a four- and

23   one-half year pattern of racketeering activities directed against Plaintiff, his family, his

24   associates, his employees, and his business enterprise to intimidate and retaliate against

25

26
27
28

1   Plaintiff and his business associates for taking action and participating in actions to secure their
2   civil rights.

3   427.   Plaintiff alleges:

4   428.   "Jefferson A. McGee, his business associates Ruby H. McDowell and Joseph Villaflor, his

5   brother Thomas McGee, and his wife Julia McGee. In 188-page complaint plaintiffs allege

6   defendants participated in a vast conspiracy to deny plaintiffs' civil rights during the period

7   from December 1993 through July 1998.

8   429.   Plaintiffs seek redress from 201[3] participants in the alleged conspiracy.

9

10  430.   Pete Wilson, Governor of California, Daniel Lungren, California Attorney General, DOES

11  76-100, Lungren's agents, Nancy Gutierrez, Director, California Department of Fair

12  Employment and Housing ("CDFEH") Barbara Osborne, Geraldine Reyes, and Penny

13  Sandborn, employees of CDFEH, Roland Candee, Judge of the Sacramento County Superior

14  Court,

15

16  431.   Glen Craig, Sacramento County Sheriff, DOES 17-75, Lou Blanas, Glenn Powell,

17  Christine Hess, Robert Denham, Richard G. Twilling, Deputy J. Sanchez, Deputy S. Budrow,

18  Deputy K. Papineau, Deputy J. Karvonen, Deputy Nelson, Deputy M. Atkins, Deputy N.

19  Gonclaves, Deputy Hutchinson, Deputy Peterson, Deputy Ladas, and Deputy Baugh, Craig's

20  agents, Sacramento County, DOES 101-125, Jan Scully, Sacramento County District Attorney,

21  DOES 126-150, Scully's agents, McClatchy Publishing, also known as The Sacramento Bee,

22  Julia Howard, the editor of the Sacramento Bee, DOES 151-155, Florin Little League Baseball

23  Inc., a California corporation, Dennis O'Flaherty, Robert Bartosh, Martin Andrews, Tracy

24

25

26  [3] Actually in the body of the complaint, 228 defendants are identified but only 179 allegedly did
27  anything to plaintiff.

28

Contreras, Janet Smith, and Mike Crosby, directors and officers of Florin Little League Baseball, Inc., Little League Baseball, Inc., a federally chartered corporation, Al Smith, and Harvey Woods, agents of Little League Baseball, Inc., Lee Thomas, a regular member of Florin Little League Baseball, Inc., Elk Grove Unified School District, a municipal corporation, DOES 156-175, Officer Gary Jones, and Officer Lozzano, Elk Grove Unified School District Police Department.

432.    Plaintiffs allege in this complaint following facts:

433.    On December 17, 1993, a disgruntled employee summoned the sheriff to McGee & Associates, a real estate business in Sacramento. Without cause, the two deputies who responded seized and searched the business. When McGee accused the deputies of racism because he is black and the employee was white, one of the deputies threatened McGee. He called 911 for protection which was denied. Without a warrant or probable cause McGee was arrested and handcuffed for 30 minutes but released without charges being filed.

434.    On February 22, 1995, deputy sheriff Twilling kicked in the door to McGee's office assaulted McGee and destroyed McGee's property under the pretext he had a warrant.

435.    On May 10, 1995, Twilling went to McGee's business in his absence, demanded McGee call him, and if McGee did not, threatened to repeat the episode of February 22.

436.    On February 7, 1996, Twilling stopped McGee in his car and harassed McGee by serving McGee with a notice to appear in court.

437.    On March 12, 1996, without a warrant, Twilling served McGee with a "civil notice" to Dynasty Upholstery, an enterprise in which McGee had been a partner. Twilling left but later returned and blocked McGee's car in the back of the business. Twilling asked for McGee at the reception desk and when McGee refused Twilling threatened to arrest him. When Twilling

1
2

left, the office door was locked behind him. Twilling them pounded on the doors and windows demanding entry and imprisoned McGee inside for one and one-half hours.

3   438.   On March 26, 1996, McGee filed a complaint with the California Department of Fair
4   Employment and Housing setting forth the foregoing events.[4] Deputy Denham called McGee
5   to instruct him about respecting sheriff deputies, but McGee refused to listen. The sheriff
6   closed its investigation and admonished McGee about California Penal Code §§148 (resisting
7   police officer) and 148.6 false report of police misconduct). Thus, the sheriff and other
8   defendants covered up the crimes committed against plaintiff.
9

10   439.   On November 18, 1996, plaintiff Villaflor was working at McGee & Associates when
11   Twilling called McGee and told Villaflor "If Jeff knows what is best for him, he will call me
12   back."

13   440.   Later, November 18 Twilling entered McGee & Associates and asked for McGee. When
14   Villaflor told Twilling that McGee was not present, Twilling yelled "You tell your boss he
15   can't run from the law."
16

17   441.   On November 29, 1996, Twilling again called for McGee. When Villaflor said McGee was
18   unavailable Twilling interrogated Villaflor and warned "If Jeff knows what is best for him, he
19   better call me." Villaflor hung up. Twilling called back and asked for Villaflor but he would
20   not take the call. Twilling called a third time and told another employee that Twilling would
21   arrest Villaflor if he hung up the phone again.
22

23   442.   On December 6, 1996, Twilling entered McGee & Associates and asked for McGee.
24   Twilling left when told McGee was unavailable and the doors were locked behind him.
25

26   [4] The California Department of Fair Employment and Housing receives and investigates
      complaints of violence and intimidation by threats of violence because of race. Cal. Govt. Code
27   §12930(f); Cal. Civil Code §51.7. The Department is obliged to make prompt investigation of
      any complaint alleging facts sufficient to constitute a violation. Cal. Govt. Code §12963.
28

Twilling then pounded on the door and kept McGee and Villaflor confined inside for three hours. From outside, Twilling called McGee & Associates and threatened Villaflor.

443.    On May 9, 1997, McGee went to the sheriff's department "to clear up any and all warrants that might be issued against his person" but was not arrested.

444.    On May 12, 1997, Twilling again entered McGee & Associates and asked for McGee. Told McGee was not in, Twilling left a business card and a note for McGee that stated, "Jeff we have a warrant for your arrest! Please respond to this card or you will be arrested and held in Sacramento County Jail!!! Thank you." No arrest warrant in fact had been issued. Back in his vehicle, Twilling formed his fingers into a gun that he aimed at Thomas McGee's head.

445.    On May 13, 1997, Twilling again sought out McGee at his business. When Villaflor told Twilling that McGee was not there, Twilling said, "I'm loving this! I have a file this thick on everybody in the office.: Twilling then went outside and copied the license plate numbers of all employees.

446.    On June 12, 1997, Twilling again asked for McGee and was told he was not available. Twilling left and the doors were locked behind him. Another deputy arrived and the two remained in front of the business, interrogating visitors, and imprisoning McGee an Villaflor. When plaintiff Ruby McDowell returned from lunch, she told the deputies she had no keys. Twilling said, "You are lying to me." Or "You better not be lying to me" and threatened to arrest McDowell, causing her to flee.

447.    On July 6, 1997, McGee was coaching a Little League Baseball game at the Sacramento Army Depot when Twilling and another deputy arrested him without a warrant to retaliate against McGee for filling written complaints against the sheriff's department.

448.    On October 8, 1997, Twilling pounded on the door of McGee's home on Iris Crest Way, falsely imprisoning and terrorizing Julia McGee, and her children. Twilling left a "threatening note" that stated: "Julia please respond to this card or further action will be taken!!! Thank you."

449.    On October 10, 1997, Twilling returned to the McGee home and again pounded on the door, terrorizing the McGee's their children and house guest.

450.    On October 15, 1997, McGee sued Twilling in Sacramento Superior Court. Judge Roland Candee denied McGee's request for a temporary restraining order but scheduled a hearing on October 31, 1997. On October 31, nine sheriff deputies were present in court to intimidate McGee not to testify freely and fully about Twilling's harassment of him. One, Glenn Powell, lunged at McGee without provocation saying "Do you want some of me?" One deputy ordered McGee to sit in the back of the courtroom. When the hearing began, Powell interjected himself in the proceedings and influenced the judge to deny plaintiff a hearing and award $200 to the sheriff's department against McGee for legal fees. After the hearing McGee examined the court file and saw opposing papers, including Twilling's affidavit, that McGee had before never seen.

451.    On October 15, 1997, plaintiff filed a "citizens complaint" with the sheriff itemizing the harassment of him.

452.    On October 31, Glenn Powell wrote a letter to McGee demanding payment of the $200 award on December 1 the sheriff and Powell mailed a second letter meant to intimidate, threaten, and punish plaintiff.

453.    On November 5, 1997, plaintiff received a letter from defendant Christine Hess of the internal affairs section of the sheriff's department. Hess advised that McGee's complaint has

1
2

been found to lack merit and "indicated" that Hess and Powell conspired to deny plaintiff equal protection of the law.

3   454.   On December 18, 1997, McGee was at his business when he noticed Twilling surveilling
4   the building. McGee called 911 because he feared Twilling would kill him because McGee
5   had filed suit against Twilling.

6   455.   Also on December 18, deputy Peterson entered McGee & Associates and told McGee that
7   he was under investigation. Peterson told the employees not to call 911 again and said "You
8   should think about what type of guy your [sic] working for."
9

10  456.   Deputy Hutchinson arrived and asked what the problem was. McGee complained that
11  Twilling had harassed him for two years Hutchinson called his supervisor. McGee returned to
12  his office to wait behind a sign that said "authorized personnel only." Hutchinson followed
13  without permission and searched the room.

14
15
457.   On January 17, 1998, deputies Atkins and Goncalves stalked McGee and Ruby McDowell
16  driving less than a car length behind plaintiff's vehicle with their high beam lights on. The
17  deputies finally stopped McGee's car without cause or warrant. Deputy Atkins dragged McGee
18  from his car and put him in the back of a patrol unit. Atkins chocked McGee and Goncalves
19  assaulted Ruby McDowell. No formal charges were ever made against McGee or McDowell.

20  458.   On January 27, 1998, McGee and McDowell delivered to defendant Barbara Obsborne at
21  the CDFEH seven separate complaints of police harassment. Neither Pete Wilson nor anyone
22  else at CDFEH would accept the complaints, which McGee then delivered to the California
23  Department of Justice but both CDFEH and defendant Lungren refused to protect McGee.
24

25
26
27
28

459.    On February 16, 1998 McGee and Villaflor attended a Florin Little League directors meeting. Defendant Dennis O'Flaherty attempted to intimidate Villaflor into resigning from the board of directors by threatening to send the sheriff to Villaflor's and McGee's homes.

460.    On April 22, 1998, McGee and Villaflor entered James Rutter Middle School to attend a Little League baseball board meeting. An unidentified uniformed deputy sheriff-DOE 22-threatened to arrest McGee and Villaflor if they did not cooperate with O'Flaherty and told McGee and Villaflor they were no longer board members. McGee and Villaflor ordered the deputy to leave the meeting. The deputy explained he was present "because Dennis O'Flaherty called me to keep things under control." The deputy left the meeting to wait outside but told O'Flaherty "Let me know if you need me." O'Flaherty then attacked McGee.

461.    Later, April 22, 1998, while leaving McGee & Associates, the deputy from the Little League meeting blocked McGee's and Michael Labrada's access to their vehicles. The deputy called for assistance. Then another deputy arrived the two deputies arrested McGee without warrant or cause and took him to the Sacramento County jail. They arrested Villaflor and Labrada and took them to Rio Cosumnes Correctional facility. The deputies threatened to tow McDowell's car if she did not leave the scene. On the way to jail, deputies heckled McGee, one said, "I can arrest and unarrest you anytime I want. So, I am a racist, because I arrested you. Sell me a house now!" McGee was detained for ten hours without bond or a phone call. Villaflor and Labrada were detained for about five hours without a phone call.

462.    Sheriff Glenn Craig then prepared a false arrest report accusing McGee of being drunk in public and gave the report to the Sacramento Bee. McClatchy Publishing and Julie Howard

published the false report, which contained many false statements, without regard for the truth and without inquiry about relevant law.[5]

463.    On April 29, 1998, McGee and Villaflor went to a community center to attend a Little League Board meeting. DOE 22 was present. McGee, Villaflor, and Labrada were arrested about three hours after the meeting.

464.    On April 30, 1998, McGee and Villaflor went to the sports arena at James Rutter to exercise their First Amendment rights. O'Flaherty and three others apparently associated with Little League ordered McGee and Villaflor to leave. Surrounded and fearing for their safety, McGee and Villaflor began to leave the school grounds with O'Flaherty and others following while threatening violence. O'Flaherty said, "Pussy! You guys are pussies!" and called Villaflor a "Bitch!" O'Flaherty had to be restrained by the others from attacking McGee and Villaflor. As they ran, O'Flaherty stated, "That's right you pussies, you better run!"

465.    On May 1, 1998, McGee went to Country Side Park to coach a Little League Baseball game. Deputy Doe 22, O'Flaherty, and three others threatened McGee with violence.

466.    On May 3, 1998, McGee who is black, and Villaflor who is Asian, went to Rutter Park to take pictures "with their baseball teams" but defendants Harvey Woods and Al Smith representatives of Little League, prevented it by threatening to have McGee and Villaflor arrested if they entered the park.

---

[5] On April 26, 1998, the Elk Grove "Neighbors" published in the "Police/Fire Report" sections an account of McGee's arrest at 1:20 a.m. Thursday on suspicion of being drunk in public. "Officers said he was standing outside a business holding an open container of alcohol when approached. He resisted orders and called officers derogatory names, refused to give his name and threatened officers, they said." The brief report was preceded by a statement that "Information in these briefs has been provided by official law enforcement and fire department reports."

467.    On May 4, 1998, deputy Doe 22, O'Flaherty, and some of the other Little League representatives went to Country Side Park looking for McGee. They told Little League members assembled there that if McGee showed up and entered the dugout he would be arrested.

468.    McGee went to James Rutter Middle School during the evening of May 4, 1998, to practice with "their baseball team" but O'Flaherty and Does 22 prevented it.

469.    On May 30, 1998, McGee and Villaflor attempted to "discharge their duties as elected officers of Florin Little League Baseball" by canceling a scheduled game at Sheldon High School sports arena, part of the Elk Grove Unified School District. McGee and Villaflor were arrested for violating Penal Code § 626.7 by refusing to leave the school grounds to punish them for exercising their federal constitutional rights. The arresting officers were Gary Jones of the Elk Grove Unified School District and deputy sheriffs Papineau, Karvonen, Nelson, and Doe 30. Defendant Doe 30 "grabbed plaintiff's thumb and attempted to break it." Defendants O'Flaherty and Crosby watched and supported defendant Lee Thomas assault McGee with a deadly weapon, that is he hit six baseballs with an aluminum bat at McGee saying, "I will take his fucking head off" and "[i]f he gets hit that is his problem." McGee was dragged to a patrol car. McGee was also charged with resisting arrest in violation of Penal Code §148. McGee and Villaflor were taken to the county jail and detained for five hours. At the jail the sheriff deputy Does 31 and 32 forced McGee and Villafor to sign the promises to appear under duress because defendants said they would not release them if they did not.

470.    Thereafter, the sheriff, Lou Blanas, Does 31 and 43 and other Doe defendants made a false crime report and sent it to the district attorney. When McGee and Villaflor appeared in court, the district attorney and 25 of her agents threatened them with time in jail. Also, the sheriff and

43 Doe defendants, McClatchy Publishing, and Julie Howard "conspired to further punish plaintiff[s] by publishing false reports in the Sacramento Bee, Elk Grove/Laguna Neighbors" and Julie Howard published the report on June 4, 1998, with reckless disregard of the truth.[6]

471.    On June 7, 1998, McClatchy Publishing and Julie Howard republished the report under the title "Little League Brouhaha Update."[7] At no other time had McClatchy Publishing and Julie Howard updated crime reports.

472.    The crime report sent to the district attorney stated that "Both Villaflor and McGee were handcuffed without incidence" but the district attorney charged them with resisting arrest to punish McGee and Villflor for asserting their rights.

473.    On July 15, 1998, McGee and Villflor protested by asking five deputy sheriffs to move their cars from the parking lot of the shopping center where McGee & Associates is located. The officers arrested McGee and Villaflor. Defendants' deputy Ladas and deputy Baugh swore out a complaint against McGee and Villaflor. The deputies took McGee and Villaflor to the Sheriff's Community Service Center on East Stockton Boulevard. The deputies kept McGee in the back of a police car with the windows and doors closed for over one- and one-half hours. From there, McGee and Villaflor were taken to the county jail and detained for 17 hours during which time they were only fed once.[8]

---

[6] On June 4 *Neighbors* published two articles about this incident. The first under the title "Refusal to Leave School Campus alleged" stated that Villaflor and McGee were arrested at 12:30 p.m. Saturday on suspension of refusal to leave a school campus at Sheldon High School and that McGee was also arrested on suspicion of resisting a peace officer.
[7] On June 7 *Neighbors* published an article under the title "Little League Brouhaha Update." It added to the June 4 article that deputies said that Villaflor and McGee allegedly disrupted a baseball game due to a dispute with the Florin Little League and that both men refused to leave after told to do so by school police and deputies.
[8] On Sunday, July 19, 1998, *Neighbors* published a brief article in the Police/Fire Report section under the title "Interfering with a Police Officer alleged." According to the article McGee and Villaflor were arrested at 11:09 p.m. Wednesday on suspicion of interfering with a police officer. "according to reports, deputies were parked and about to attempt a pick up when McGee and Villaflor approached and used abusive language in telling officers to leave."

*McGee's Complaint*                                                                                     117

474.  On June 16 (probably July 16) while detained at the jail, the sheriff deputy Doe 31 and 32 forced McGee and Villaflor to sign a promise to appear in court, which they signed under duress.

475.  Again, the sheriff and the deputies sent a false arrest report to the district attorney alleging that McGee was drunk in public and provided a copy to McClatchy Publishing and Julie Howard and Howard published it knowing it was false."

476.  The above Findings and Recommendations are evidence of the State Defendants, the County Defendants, the Florin Little League Defendants, the Elk Grove Defendants, the City of Sacramento Defendants, the MMDD Defendants, the Little League Defendants, and the City Defendants, pattern of racketeering activities.

477.  The State Defendants, the County Defendants, the Florin Little League Defendants, the Elk Grove Defendants, the City of Sacramento Defendants, the MMDD Defendants, the Little League Defendants, and the City Defendants actions alleged in this complaint and are part of a pattern of racketeering activities meant to terrorize, intimidate, retaliate, and threaten Plaintiff and other persons in the State of California and to maintain a hostile environment towards African Americans in the State of California which is: keeping Plaintiff and African Americans economically depressed, mentally sick, destroying their relationships with their families and friends, damaging their business and employment opportunities, limiting their housing opportunities, or otherwise placing Plaintiff and other African Americans in a condition of second-class citizens in the State of California.

478.  The State Defendants, the County Defendants, the Florin Little League Defendants, the Elk Grove Defendants, the City of Sacramento Defendants, the MMDD Defendants, the Little League Defendants, and the City Defendants are conspiring to intimidate, terrorize, threaten,

1   and retaliate against Plaintiff and others for taking action and participating in the case of

2   *McGee v. Wilson et. al.* and other cases filed in the District Court and the Superior Court of

3   California.

4   479.   Another such act of racketeering took place in September 2014, in furtherance of the State

5   Defendants, the County Defendants, the Florin Little League Defendants, the Elk Grove

6   Defendants, the City of Sacramento Defendants, the MMDD Defendants, the Little League

7   Defendants, and the City Defendants pattern of racketeering activities. "The People,"

8   kidnapped Plaintiff while holding guns aimed at his head. Plaintiff was lawfully driving a car

9   on the streets of the City of Sacramento California when the City, SPD and its officers stalked

10  Plaintiff, hunted Plaintiff down, aimed guns at Plaintiff's head, kidnapped Plaintiff, placed

11  Plaintiff in handcuffs, placed Plaintiff in the back seat of their patrol car, unlawfully searched

12  Plaintiff's car, and released Plaintiff. The State of California, the County, the City, and their

13  law enforcement officers had no lawful reason to stalk Plaintiff and threaten Plaintiff by aiming

14  guns at Plaintiff's head and kidnapping Plaintiff. There were no warrants issued for Plaintiff's

15  arrest that day. Plaintiff had not committed any crimes that day, and Plaintiff had not

16  committed any traffic infractions that day. Defendants stalked Plaintiff, aimed guns at

17  Plaintiff's head and kidnapped Plaintiff, in furthence of the activities, purpose, and scheme of

18  "the People" to discriminate, threaten, terrorize, and intimidate Plaintiff and other African

19  Americans on the grounds of their race with law enforcement programs and activities receiving

20  federal financial assistance. The State Defendants, the County Defendants, the Florin Little

21  League Defendants, the Elk Grove Defendants, the City of Sacramento Defendants, the

22  MMDD Defendants, the Little League Defendants, and the City Defendants, actions are part

23  of a pattern of racketeering activity meant to terrorize, intimidate, and threaten Plaintiff and

1   other African Americans in the State of California for the purpose of preventing them *from*

2   *succeeding economically, maintaining mental health, maintaining healthy relationships* with

3   family and others in their community, maintaining a profitable business and employment

4   opportunities in their community, and to intimidate and retaliate against Plaintiff for taking

5   action and participating in actions in the United States District Court and the Superior Court

6   of California to secure their civil rights.

7
8   480.    Defendants' actions also took place during the 2021 LLBB season when the City

9   Defendants and Little League Defendants conspired to use intimidation, threats to Plaintiff's

10   business reputation and used Plaintiff's labor, and assets to earn tens of millions of dollars on

11   a television contract without compensating Plaintiff for his work and resources.

12   481.    In April of 2021, the Little League Defendants while having actual knowledge that APLL

13   was in suspended status with the California Secretary of State operated APLL while having

14   actual knowledge that it was against the law to do so. The Little League Defendants and the

15   City Defendants conspired to run an illegal enterprise on property owned by the City, and used

16   the money earned from their illegal enterprise to invest their organizations pension funds and

17   retirement plans in houses, automobiles, political office, and other personal property.

18

19   482.    Plaintiff would not have paid APLL any money or purchased items from the snack bar if

20   Plaintiff was aware that APLL was in a suspended status with California Secretary of State.

21   Plaintiff was deceived into paying the Little League Defendants and City Defendants money

22   to participate in APLL.

23

24   483.    On October 1, 2023 and November 1, 2023 in furtherance of the scheme of "the People"

25   the County wrote letters to Plaintiff demanding payment of $7,517.00 to intimidate and

26   retaliate against Plaintiff for taking action and participating in the case of *McGee v. Wilson et.*

27

28

1

2

*al.* and mailed a third letter on December 1, 2023 to intimidate, retaliate, threaten, and punish Plaintiff, for taking action and participating in the action entitled *McGee v. Wilson et. al.*

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

484.    "The People" consists of "persons" including, *inter alia*, the State of California; the California Governor (as well as former California Governors); the California Attorney General (as well as former California Attorney Generals); the California Legislature; the County of Sacramento (as well as individual members of the California Legislature); the County of Sacramento (as well as individual members of the Sacramento County Board of Supervisors); the City of Sacramento; the City of Elk Grove; the City of Citrus Heights; (including individual City Council members); several Sheriff's Deputies; prosecutors; the Elk Grove Unified School District; Southgate Recreation and Park District; certain creditors; and/or property managers; a hotel; a few civic organizations; multiple law firms; and several private citizens of California; creating and conducting a scheme to maintain a hostile environment for African Americans in the State of California and preventing Plaintiff and other African Americans from succeeding economically, maintaining mental health, maintaining healthy relationships with family and others in their community, and maintaining profitable business relationship in their community and maintaining housing. Defendants are discriminating against Plaintiff and other persons on the grounds of their race by using a pattern of racketeering activities to deny Plaintiff and other African Americans equal rights as citizens of the United States.

21

22

23

24

25

26

485.    The State Defendants, the County Defendants, the Florin Little League Defendants, the Elk Grove Defendants, the City of Sacramento Defendants, the MMDD Defendants, the Bridgeport Defendants, the Little League Defendants, and the City Defendants, have participated in a vast racially motivated conspiracy to violate Plaintiff's and other persons civil rights, including conspiring, or aiding or inciting others, to commit against Plaintiff and other persons:

27

28

*McGee's Complaint*                                                                                    121

1   attempted murder; kidnap; torture; assault with a deadly weapon; assault; battery; breaking and

2   entering into Plaintiff's property; obstruction of justice in the Federal and State Courts; perjury;

3   forgery; unlawful sexual conduct; and unlawful search and seizure of Plaintiff's property

4   causing Plaintiff to lose income.

5   486.    "The People" is an ongoing organization that functions as a continual unit. "The People"

6   was created and used as a tool to effectuate Defendants' pattern of racketeering activity for the

7   purpose of discriminating against African Americans in law enforcement programs and

8   activities, and maintaining a hostile environment in the State of California toward Plaintiff and

9   other African Americans to prevent them from succeeding economically, maintaining mental

10   health, maintaining healthy relationships with family and others in our community,

11   maintaining profitable business and employment relationships, and maintaining housing in the

12   State of California. Defendants' actions as set out above were done on the grounds of Plaintiff

13   and other African Americans' race and color and solely on account that they are African

14   American.

15

16

17   487.    The State Defendants, the County Defendants, the Florin Little League Defendants, the Elk

18   Grove Defendants, the City of Sacramento Defendants, the MMDD Defendants, the Bridgeport

19   Defendants, the Little League Defendants, and the City Defendants, agreed and did conduct

20   and participate in the conduct of "the People's" affairs through a pattern of racketeering

21   activities.

22   488.    Defendants' conduct in furtherance of "the People" is based on a scheme developed and

23   carried out by "the People" wherein all Defendants listed in this Complaint, all agreed to

24   discriminate against African Americans.

25

26

27

28

489.    Defendants began conspiring to use a pattern of racketeering activities to discriminate against Plaintiff and other persons on the grounds of their race and color at places of public accommodation and in law enforcement programs and activities receiving federal financial assistance from the United States DOJ.

490.    The People's pattern of racketeering activities prevented Plaintiff from earning an income, caused Plaintiff to be evicted from several properties, caused Plaintiff to lose income, damaged Plaintiff's relationships with his family and his community, caused Plaintiff to lose many business relationships, caused Plaintiff severe depression, hurt Plaintiff's children, and have placed Plaintiff in the condition of an inferior citizen in the State of California.

491.    The State Defendants, the County Defendants, the Florin Little League Defendants, the Elk Grove Defendants, the City of Sacramento Defendants, the MMDD Defendants, the Bridgeport Defendants, the Little League Defendants, and the City Defendants, participated directly and indirectly in "the People's" scheme through a pattern of racketeering activities and intentionally committed the crimes alleged above with full knowledge of all relevant facts.

492.    The State Defendants, the County Defendants, the Florin Little League Defendants, the Elk Grove Defendants, the City of Sacramento Defendant the MMDD Defendants, the Bridgeport Defendants, the Little League Defendants, and the City Defendants, acts of engaging in the pattern of racketeering activities as set out in this case are criminal.

493.    The State Defendants, the County Defendants, the Florin Little League Defendants, the Elk Grove Defendants, the City of Sacramento, the MMDD Defendants, the Little League Defendants, and the City Defendants, directly and indirectly in furtherance of the activities, purpose, and scheme of "the People" filed motion in the United States District Court and the Superior Court of California County of Sacramento for the purpose of using the Courts to cover

1
2

up their pattern of racketeering activities and used electronic communication and the United States mail, to carry out their criminal scheme.

3    494.    The State Defendants, the County Defendants, the Florin Little League Defendants, the Elk
4    Grove Defendants, the City of Sacramento Defendants, the MMDD Defendants, the Bridgeport
5    Defendants, the Little League Defendants, and the City Defendants, conspired to use physical
6    force and threat of physical force against Plaintiff and other persons and to attempt to do so
7    with intent to influence, delay, or prevent the testimony of Plaintiff and other persons in an
8    official proceeding as defined as tampering with a witness and is criminal pursuant to Title 18
9
10    U.S.C. §1512.

11    495.    The State Defendants, the County Defendants, the Florin Little League Defendants, the Elk
12    Grove Defendants, the City of Sacramento Defendants, the MMDD Defendants, the Little
13    League Defendants, and the City Defendants, conspired to engage in the conduct above and
14    thereby cause damage to Plaintiff's real and personal property and threaten to do so, with intent
15    to retaliate against Plaintiff and other persons for attending as a witness and party in an official
16    proceeding and giving testimony on the record, documents, or other objects produced by
17    Plaintiff in an official proceeding is a retaliating crime pursuant to Title 18 U.S.C. §1513.
18

19    496.    The State Defendants, the County Defendants, the Florin Little League Defendants, the Elk
20    Grove Defendants, the City of Sacramento Defendants, the MMDD Defendants, the Little
21    League Defendants, and the City Defendants, conspired to devise a scheme to defraud the
22    Superior Court of California, and Plaintiff to acquire Plaintiff's property under false pretense
23    by use of electronic communication in interstate commerce. A crime in violation of Title 18
24    U.S.C. §1343.
25

26
27
28

497.   The State Defendants, the County Defendants, the Florin Little League Defendants, the Elk Grove Defendants, the City of Sacramento Defendants, the MMDD Defendants, the Little League Defendants, and the City Defendants, conspired to devise a scheme to defraud and to use the United States mail for the purpose of conspiring to cover up of their pattern of racketeering activities. Mail fraud is a crime in violation of Title 18 U.S.C. §1341.

498.   The State Defendants, the County Defendants, the Florin Little League Defendants, the Elk Grove Defendants, the City of Sacramento Defendants, the MMDD Defendants, the Little League Defendants, and the City Defendants, knowingly conspired to engage in conduct and thereby caused damage to Plaintiff's real and personal property for Plaintiff's attendance as a witness and a party in an official proceeding in the United States District Court and giving testimony, and records, documents, and other objects produced by Plaintiff as a witness in an official proceeding in the United Sates District Court.

499.   The State Defendants, the County Defendants, the Florin Little League Defendants, the Elk Grove Defendants the City of Sacramento Defendants, the MMDD Defendants, the Little League Defendants, and the City Defendants, knowingly conspired to commit: attempted murder in violation of Cal. Penal Code §664; kidnapping in violation of Cal Penal Code §207(a); torture in violation of Cal. Penal Code §206; assault with a deadly weapon in violation of Cal. Penal Code §242; breaking and entering into Plaintiff's property in violation of Cal. Penal Code §136.1; perjury in violation of Cal. Penal Code §118; and forgery in violation of Cal. Penal Code §132 in furtherance of the activities, purpose and scheme of "the People."

500.   To achieve their common goals, the State Defendants, the County Defendants, the Florin Little League Defendants, the Elk Grove Defendants, the City of Sacramento Defendants, the MMDD Defendants, the Little League Defendants, and the City Defendants, knowingly and

willfully filed motions and other papers in the District Court, and the Superior Court of California for an unlawful purpose and to cover up their pattern of racketeering activities and used electronics communication and the United States mail in interstate commerce to carry out their scheme.

501.    To achieve their common goals, the State Defendants, the County Defendants, the Florin Little League Defendants, the Elk Grove Defendants, the City of Sacramento Defendants, the MMDD Defendants, the Bridgeport Defendants, the Little League Defendants, and the City Defendants, conspired and aided and incited each other to use physical force and threats of physical force against Plaintiff and attempted to do so with the intent to influence, delay, and prevent the testimony of Plaintiff in an official proceeding in the United Sates District Court.

502.    To achieve their common goal, the State Defendants, the County Defendants, the Florin Little League Defendants, the Elk Grove Defendants, the City of Sacramento Defendants, the MMDD Defendants, the Bridgeport Defendants, the Little League Defendants, and the City Defendants, knowingly conspired to engage in conduct and thereby caused mental injury to Plaintiff and damaged Plaintiff's real and personal property for Plaintiff attending as a witness and a party in an official proceeding in the United States District Court and the Superior Court of California and giving testimony, records, documents, and other objects produced by Plaintiff as a witness in an official proceeding in the United Sates District Court and the Superior Court of California.

503.    To achieve their common goal, the State Defendants, the County Defendants, the Florin Little League Defendants, the Elk Grove Defendants, the City of Sacramento Defendants, the MMDD Defendants, the Bridgeport Defendants, the Little League Defendants, and the City Defendants, knowingly conspired to commit: attempted murder; kidnapping; torture; assault

1    with a deadly weapon; assault; battery; breaking and entering into Plaintiff's property;

2    obstruction of justice in the federal and state court; perjury; forgery; unlawful sexual assault;

3    and unlawful search and seizure of Plaintiff's property causing Plaintiff to lose income.

4    504.    Because the State Defendants, the County Defendants, the Florin Little League Defendants,

5    the Elk Grove Defendants, the City of Sacramento Defendants, the MMDD Defendants, the

6    Bridgeport Defendants, the Little League Defendants, and the City Defendants, violation of

7    Title 18 U.S.C. §1962(c) Defendants are liable to Plaintiff for three times the damages Plaintiff

8    
9    has sustained, plus the cost including reasonable attorney fees pursuant to Title 18 U.S.C.

10    §1964.

11    505.    For the reasons stated in the proceeding section, Plaintiff is entitled to punitive damages

12    from all Defendants and each of them. Title 18 U.S.C. §1964.

13    **THIRTEENTH CAUSE OF ACTION**

14    COUNT THIRTEEN

15    *Title 18 U.S.C. §1962*

16    
17    506.    Plaintiff re-alleges paragraphs 1 through 505 of Count Twelve as paragraphs 1 through 505

18    of Count Thirteen and hereby incorporate them as though fully set forth herein.

19    507.    Title 18 U.S.C. §1962 makes it "unlawful for any person who has knowingly received any

20    proceeds derived directly or indirectly from a pattern of racketeering activity... to use or invest,

21    whether directly or indirectly any part of such proceeds or the proceeds derived from the

22    investment or use threat of, in the acquisition of any title to, or any right, interest, or equity in

23    
24    real property, or in establishment or operation of any enterprise." Title 18 U.S.C. §1962.

25    508.    As alleged in the proceeding section each of: the State Defendants, the County Defendants,

26    the Florin Little League Defendants, the Elk Grove Defendants, the City of Sacramento

27    
28

Defendants, the MMDD Defendants, the Bridgeport Defendants, the Little League Defendants, and the City Defendants, at all relevant times, is and has been a "person" within the meaning of Title 18 U.S.C. §1961(3)

509. At all times relevant hereto, beginning in or arounds December 1993 and continuing until present, the State Defendants, the County Defendants, the Florin Little League Defendants, the Elk Grove Defendants, the City of Sacramento Defendants, the, MMDD Defendants, the Bridgeport Defendants, the Little League Defendants, and the City Defendants, received proceeds, and elected office derived from the pattern of racketeering activities to use or invest a part of such proceeds, and the proceeds derived from their investment or used thereof, in the acquisition of political offices; right, interest and equity in, real property; and in the establishment or operation and campaigns and other enterprise, in violation of Title 18 U.S.C. §1962(b)

510. As alleged in the proceeding section, the State Defendants, the County Defendants, the Florin Little League Defendants, the Elk Grove Defendants, the City of Sacramento Defendants, the   MMDD Defendants, the Bridgeport Defendants, the Little League Defendants, and the City Defendants, activity through "the People," constitutes a pattern of racketeering activities which includes: wire fraud; mail fraud; tampering with witness, victim, or informants; retaliation against witness, victim, or informant; kidnapping; robbery; false imprisonment; intimidating a witness; burglary; perjury; forgery; torture; attempted murder; assault with a deadly weapon;  battery; breaking and entering; obstruction of a business establishments; and criminal threats.

511. Each of: the State Defendants, the County Defendants, the Florin Little League Defendants, the Elk Grove Defendants, the City of Sacramento Defendants, the MMDD Defendants, the

1
2
3
4
5
6
7

Little League Defendants, and the City Defendants, agreed to and did receive proceeds derived from a pattern of racketeering activity including the crimes listed above as defined by Title 18 U.S.C. §1962(c), and used such proceedings in the establishment and operation of "the People's" affairs and used it to investments thereof in the acquisition of political offices, rights and interests and equity in real property, and the establishment of operations, campaigns, and other enterprises.

8
9
10
11
12

512. Each of: the State Defendants, the County Defendants, the Florin Little League Defendants, the Elk Grove Defendants the City of Sacramento Defendants, the MMDD Defendants, the Bridgeport Defendants, the Little League Defendants, and the City Defendants, conduct in furthence of conspiracies had a criminal purpose as alleged above, and constitute a violation of Title 18 U.S.C. §1962(c).

13
14
15
16
17
18
19
20

513. To achieve their common goals, each of: the State Defendants, the County Defendants, the Florin Little League Defendants, the Elk Grove Defendants, the City of Sacramento Defendants, the MMDD Defendants, the Bridgeport Defendants, the Little League Defendants, and the City Defendants, knowingly filed papers in the United States District Court and the Superior Court of California for the purpose of covering up their pattern of racketeering activities, which was committed at the instruction of, and through the Governor's and Attorney Generals of the State of California, and State and municipal agencies.

21
22
23
24
25
26
27

514. To achieve their common goal, the State Defendants, the County Defendants, the Florin Little League Defendants, the Elk Grove Defendants, the City of Sacramento Defendants, the MMDD Defendants, the Little League Defendants, and the City Defendants, conspired to commit the following crimes: wire fraud; mail fraud; tampering with a witness; retaliation against a witness; attempted murder; assault with a deadly weapon; assault; battery; breaking

28

1   and entering into Plaintiff's property; obstruction of justice in the federal and state, unlawful

2   sexual conduct; unlawful search and seizure of his property causing him to lose his potential

3   economic success, his family relationships and relationships with others in his community, and

4   business and employment opportunities, income, and housing opportunities in violation of

5   Plaintiff's civil rights.

6   515.    As a direct and proximate consequence of the conduct of the State Defendants, the County

7   Defendants, the Florin Little League Defendants, the Elk Grove Defendants, the City of

8   Sacramento Defendants, the MMDD Defendants, the Bridgeport Defendants, the Little League

9   Defendants, and the City Defendants, Plaintiff has been injured in his business and property,

10   causing Plaintiff to suffer monetary damages in the amount of not less than ten billion dollar,

11

12   said damages to be proven at the time of trial.

13   516.    Because of Defendants' violation of Title 18 U.S.C. §1962(c), the State Defendants, the

14   County Defendants, the Florin Little League Defendants, the Elk Grove Defendants, the City

15   of Sacramento Defendants, the MMDD Defendants, the Bridgeport Defendants, the Bridgeport

16   Defendants, the Little League Defendants, and the City Defendants, are liable to Plaintiff for

17   three times the damages Plaintiff has sustained, plus the cost of a suit, including reasonable

18   attorney fees. Title 18 U.S.C. §1964.

19

20   **INTIMIDATION AND RETALIATION AGAINST PLAINTIFF FOR SEEKING TO**

21   **SECURE PLAINTIFF'S RIGHTS**

22   517.    October 1, 2023, in furtherance of the State Defendants, the Florin Little League

23   Defendants, the Elk Grove Defendants, the City of Sacramento Defendants, the MMDD

24   Defendants, the Little League Defendants, the City Defendants conspiracy as set out in this

25   Complaint, the County sent Plaintiff a letter through the United States mail entitled "Account

26

27

28

*McGee's Complaint*                                                                                      130

Summary" demanding that Plaintiff pay the County $7,517.00. The County made the demand of $7,517.00 to punish Plaintiff for taking action and participating in the action entitled *McGee v. Wilson* Civ. S-98-1026-FCD-PAN-PS in the District Court. The actions of the State Defendants, the County Defendants, the Elk Grove Defendants, and the Florin Little League Defendants, as Defendants.

518.    On November 1, 2023, the County of Sacramento sent another "Account Summary" through the United States mail which intimidated and retaliated against Plaintiff for participating in *McGee v. Wilson*. The letter demanded Plaintiff pay the Conty $7,517.00, and caused Plaintiff to feel intimidation. The November 1, 2023 letter from the County Defendants was sent to exact revenge from Plaintiff taking action and participating in the case entitled *McGee v. Wilson*.

519.    On December 1, 2023 the County send Plaintiff another "Account Summary" through the United States mail which further intimidate and retaliate against Plaintiff for taking action and participating in the action *McGee v. Wilson*.

520.    For the reasons stated in the proceeding section, Plaintiff is entitled to punitive damages from Defendants and each of them.

## PUNITIVE DAMAGES

521.    An appropriate award of punitive damages should be granted to prevent the conduct set forth in this Complaint from ever happening to another person in the United States and to prevent elected officials in the State of California, City managers, state officials, municipal officials, and elected officials from continuing to participate in a pattern of racketeering activities, and continuing to adopt, implement, promulgate, and execute a policy like the policy set out above.

**PRAYER**

522.    WHEREFORE, Plaintiff prays as follows:

523.    Plaintiff will and here does respectfully request injunctive relief be granted enjoining Defendants from engaging in committing, or performing directly or indirectly, all the following acts:

      a.   intimidating and retaliation against Plaintiff for taking action and participating in the action entitled *McGee v. Wilson* Civ. S-98-1026-FCD-PAN-PS and other actions filed in the District Court to secure Plaintiff's civil rights;

      b.   searching, detaining, or harassing Plaintiff;

      c.   withholding and interfering with Plaintiff's real and personal property;

      d.   refusing to enter judgements in Plaintiff's favor in various unlawful detainer actions;

      e.   maintaining false criminal records on Plaintiff;

      f.   interfering with Plaintiff's liquor license for his business;

      g.   withholding Plaintiff's handgun; implementing a general policy and conspiracy to discriminate against Plaintiff and other African Americans;

      h.   using government entities and public monies to break the laws of the United States;

      i.   implementing a general policy and conspiracy to discriminate against African Americans;

      j.   further restraining Little League Baseball Inc., its board of directors, officers, attorneys, agents, regional offices, district offices, leagues, teams, and all those working in concert with LLBB to immediately stop holding any games,

tournaments, practices, or conditioning sessions in the United States, and its

territories until LLBB can ensure this Court and Plaintiff that LLBB has plans,

procedures, rules, and protocols in place, and the right board members and

officers in place to ensure Plaintiff and other African Americans can enjoy the full

and equal enjoyment of the goods, services, facilities, privileges, advantages, and

accommodations of Little League Baseball Inc. its regions, districts, leagues, and

affiliates in the United States and its territories and be safe while they are

participating in LLBB; and

k.  plaintiff further request damages in the amount of set forth below.

THREE TIMES THE TOTAL DAMAGES OF ALL CAUSES OF ACTION.................TBD

TOTAL DAMAGES FOR ALL CAUSES OF ACTION.......................$26,781,456,000.00

TOTAL PUNITIVE DAMAGES FOR ALL COUNTS............................$1,000,000,000.00

524.    I declare under penalty of perjury that the foregoing is true and correct.


Executed December 26, 2023



Jefferson A. McGee
Attorney Pro Se

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**VERIFICATION**

I, Jefferson A. McGee, declare as follows:

1.  I am a Plaintiff in the present case and a citizen of the United States of America. I am eligible to vote in an election for the office of the President of the United States.

2.  I have personal knowledge of myself, my activities, and my intentions, including those set out in the foregoing Verified Complaint, and if called on to testify I would competently testify as to the matters stated herein.

3.  I have personal knowledge of the State Defendants, the County Defendants, the Elk Grove Defendants, the Florin Little League Defendants, the City of Sacramento Defendants, the MMDD Defendants, the Bridgeport Defendants, the Little League Defendants, and the City Defendants their activities, and their intentions, including those set out in the foregoing Verified Complaint, and if called on to testify I would competently testify as to the matters stated herein.

4.  I declare under penalty of perjury under the laws of the United States of America that the factual statements in this Complaint concerning myself, my activities, and my intentions are true and correct, as are the factual statements concerning the State Defendants, the County Defendants, the Elk Grove Defendants, the Florin Little League Defendants, the City of Sacramento Defendants, the MMDD Defendants, the Bridgeport Defendants, the Little League Defendants, and the City Defendants their activities, and their intentions.

Executed on December 26, 2023

Jefferson A. McGee

McGEE'S COMPLAINT                                                                                  V

No. _____

Jefferson A. McGee, Plaintiff v. The State of California, Et. Al., Defendants

CERTIFICATE OF SERVICE

I, Jeffery A. Nasca, hereby certify that on this 27th day of December 2023, I caused PLAINTIFF

JEFFERSON A. McGEE'S:

- Complaint
- Notice and Motion for Temporary Restraining Order
- Memorandum in Support of Motion for Temporary Restraining Order
- Declaration Detailing Irreparable Harm and Exhibits
- Declaration Detailing the Notice or Efforts to Effect Notice to the Affected Parties
- Standing Order of Judge D. Drozd
- Proposed Temporary Restraining Order
- Notice of Related Cases
- ~~Certification of Defendant response thereto~~

to be served on the counsel of record at the address listed below by placing said documents in

regular mail through the U.S. mail:

The State of California                      Little League Baseball
c/o California Attorney General              6707 Little League Drive,
P.O. Box 944255                              San Bernardino, Calif. 92407
Sacramento, CA 94244-2550

I further certify that all parties required to be served have been served.

_Jeffery A. Nasca_
Jeffery A. Nasca
10124 Passaro Way Elk Grove, CA 95757